JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
  *jakro@kslaw.com*
AARON S. CRAIG (Bar No. 204741)
  *acraig@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone:    (213) 443-4355
Facsimile:    (213) 443-4310

Attorneys for Defendants NSO GROUP TECHNOLOGIES LTD.
and Q CYBER TECHNOLOGIES LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CARLOS DADA, SERGIO ARAUZ, GABRIELA CÁCERES GUTIÉRREZ, JULIA GAVARRETE, ROMAN GRESSIER, GABRIEL LABRADOR, ANA BEATRIZ LAZO ESCOBAR, EFREN LEMUS, DANIEL LIZÁRRAGA, CARLOS LÓPEZ SALAMANCA, CARLOS MARTÍNEZ, ÓSCAR MARTÍNEZ, MARÍA LUZ NÓCHEZ, VÍCTOR PEÑA, NELSON RAUDA ZABLAH, DANIEL REYES MARTÍNEZ, MAURICIO SANDOVAL SORIANO, and JOSÉ LUIS SANZ,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LTD. and Q CYBER TECHNOLOGIES LTD.,<br><br>Defendants. | Case No. 3:22-cv-07513-JD<br>[*Honorable James Donato*]<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANTS TO DISMISS FIRST AMENDED COMPLAINT [FED. R. CIV. P. 12(B)(2), (B)(6), FORUM NON CONVENIENS]; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Filed Concurrently with Declarations of Yaron Shohat and Roy Blecher and [Proposed] Order]*<br><br>Date:    May 25, 2023<br>Time:    10:00 a.m.<br>Ctrm:    11<br><br>Action Filed:  11/30/2022 |

1    TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

2    PLEASE TAKE NOTICE that on May 25, 2023, at 10:00 a.m., or as soon thereafter as the

3    matter may be heard, Defendants NSO Group Technologies LTD. ("NSO") and Q Cyber

4    Technologies LTD. ("Q Cyber") will move the Court, the Honorable James Donato, U.S. District

5    Court Judge, for an order dismissing Plaintiffs' First Amended Complaint ("Complaint" or

6    "Compl.") for *forum non conveniens* and under Federal Rules of Civil Procedure 12(b)(2) and

7    12(b)(6).

8    This motion is based on this Notice of Motion and Motion, the attached Memorandum of

9    Points and Authorities, the Declarations of Yaron Shohat and Roy Blecher submitted herewith, the

10   pleadings, papers and records on file in this case, and such oral argument as may be presented at

11   any hearing on this motion.

12
13   DATED: April 14, 2023

KING & SPALDING LLP

By: */s/Joseph N. Akrotirianakis*
14
15       JOSEPH N. AKROTIRIANAKIS
         AARON S. CRAIG
16       Attorneys for Defendants NSO GROUP
         TECHNOLOGIES LTD. and Q CYBER
17       TECHNOLOGIES LTD.

18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND .................................................................................................. 2

       A.     NSO's technology and its use in preventing terrorism and other crimes. ................................................................................................. 2

       B.     Plaintiffs and their allegations against NSO. ...................................... 2

III.    PLAINTIFFS' CLAIMS CANNOT BE BROUGHT IN CALIFORNIA OR THE UNITED STATES ............................................................................ 4

       A.     NSO is not subject to general personal jurisdiction in California. ................. 4

       B.     Specific personal jurisdiction may not be exercised over NSO in this action. ............................................................................................ 4

       C.     Exercising personal jurisdiction over NSO would be unreasonable. ...................................................................................... 8

            1.     NSO's alleged "purposeful interjection" into California is negligible. ............................................................................... 9

            2.     Defending this action in California would be inefficient and burdensome, and any competing interest Plaintiffs have is trivial. ............................................................................ 9

            3.     Maintaining this action in California conflicts with Israeli sovereignty. ........................................................................... 9

            4.     California, as a forum, has no interest in adjudicating this lawsuit. ......................................................................... 10

            5.     Israel presents an adequate alternative forum. ................................ 10

       D.     NSO is not subject to jurisdiction under Rule 4(k)(2). ............................... 10

       E.     The Complaint should be dismissed for *forum non conveniens*. .................. 11

            1.     Israel is an adequate alternative forum. ........................................... 11

            2.     The "private factors" favor dismissal. ............................................. 12

            3.     The "public factors" also favor dismissal. ....................................... 13

IV.    THE COMPLAINT DOES NOT STATE A CLAIM AGAINST NSO. ................... 14

       A.     Plaintiffs do not state a CFAA claim. ............................................. 14

1.    Plaintiffs lack statutory standing to bring a private CFAA claim .................................................................................. 14

2.    The CFAA does not authorize aiding and abetting liability. .............................................................................. 18

B.    Plaintiffs' California law claims fail ......................................... 20

1.    Plaintiffs cannot sue NSO under California law .............................. 20

2.    Plaintiffs do not state a CDAFA or trespass to chattels claim .................................................................................. 22

V.    CONCLUSION ........................................................................... 24

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Advanced Fluid Sys., Inc. v. Huber*,
   28 F. Supp. 3d 306 (M.D. Pa. 2014) ...................................................................19

5

*Alcabes v. Capella Hotel Grp. LLC*,
6   2015 WL 12697714 (C.D. Cal. July 8, 2015) ........................................................5

7

*Alternate Health USA Inc. v. Edalat*,
8   2022 WL 767573 (C.D. Cal. Mar. 14, 2022) ...................................................13, 14

9

*Amoco Egypt Oil Co. v. Leonis Nav. Co.*,
   1 F.3d 848 (9th Cir. 1993) ..................................................................................9

10

*Andrews v. Sirius XM Radio Inc.*,
11   932 F.3d 1253 (9th Cir. 2019) ...........................................................................15

12

*Arabian v. Sony Elec. Inc.*,
13   2007 WL 627977 (S.D. Cal. Feb. 22, 2007) ....................................................20, 22

14

*Atl. Recording Corp. v. Serrano*,
   2007 WL 4612921 (S.D. Cal. Dec. 28, 2007) ......................................................24

15

*Better Holdco, Inc. v. Beeline Loans, Inc.*,
16   2021 WL 3173736 (S.D.N.Y. July 26, 2021) .......................................................17

17

*BMW v. Gore*,
   517 U.S. 559 (1996) .........................................................................................21

18

19

*Bose v. Interclick, Inc.*,
   2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011) ......................................................14

20

*Brodsky v. Apple Inc.*,
21   445 F. Supp. 3d 110 (N.D. Cal. 2020) ................................................................15

22

*Broidy Cap. Mgmt., LLC v. Qatar*,
   2018 WL 9943551 (C.D. Cal. Aug. 22, 2018) ........................................................7

23

24

*Broidy Cap. Mgmt. v. Qatar*,
   982 F.3d 582 (9th Cir. 2020) .............................................................................10

25

*Calendar Research LLC v. StubHub, Inc.*,
26   2020 WL 4390391 (C.D. Cal. May 13, 2020) ......................................................15

27

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.*,
   334 F.3d 390 (4th Cir. 2003) ......................................................................7, 9, 21

28

*Carijano v. Occidental Petrol. Corp.*,
   643 F.3d 1216 (9th Cir. 2011) ....................................................11, 12, 13

*Casillas v. Berkshire Hathaway Homestate Ins. Co.*,
   79 Cal. App. 5th 755 (2022) ...................................................................23

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
   511 U.S. 164 (1994)..........................................................................18, 19

*Churchill Vill., LLC v. Gen. Elec. Co.*,
   169 F. Supp. 2d 1119 (N.D. Cal. 2000) ...................................................22

*Contact Lumber Co. v. P.T. Moges Shipping Co.*,
   918 F.2d 1446 (9th Cir. 1990) ..........................................................13, 14

*Core-Vent Corp. v. Nobel Indust. AB*,
   11 F.3d 1482 (9th Cir. 1993) ....................................................................9

*Corrie v. Caterpillar, Inc.*,
   403 F. Supp. 2d 1019 (W.D. Wash. 2005).................................................12

*Cottle v. Plaid Inc.*,
   536 F. Supp. 3d 461 (N.D. Cal. 2021) ......................................................22

*Creative Computing v. Getloaded.com LLC*,
   386 F.3d 930 (9th Cir. 2004) ............................................................14, 16

*CrossFit, Inc. v. Fitness Trade sp. z o.o.*,
    2020 WL 6449155 (S.D. Cal. Nov. 2, 2020) ..............................................7

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)..................................................................................4

*Del Vecchio v. Amazon.com, Inc.*,
   2011 WL 6325910 (W.D. Wash. Dec. 1, 2011) .........................................15

*DHI Grp. v. Kent*,
   2017 WL 1088352 (S.D. Tex. Mar. 3, 2017)..............................................19

*Doyle v. Taylor*,
   2010 WL 2163521 (E.D. Wash. May 24, 2010) .........................................15

*Facebook, Inc. v. Studivz Ltd.*,
   2009 WL 1190802 (N.D. Cal. May 4, 2009) ..............................................13

*FAS Techs., Ltd. v. Dainippon Screene Mfg. Co.*,
   2001 WL 1159776 (N.D. Cal. Sept. 21, 2001) ..........................................20

*Fields v. Wise Media, LLC*,
   2013 WL 5340490 (N.D. Cal. Sept. 24, 2013) ..........................................23

*Flynn v. Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP*,
2011 WL 2847712 (D. Nev. July 15, 2011) ................................................19

*FPK Servs. LLC v. Does 1-10*,
2020 WL 5982061 (N.D. Cal. Oct. 8, 2020)..................................................7

*Freeman v. DirecTV, Inc.*,
457 F.3d 1001 (9th Cir. 2006) ..............................................................18, 19

*Garland-Sash v. Lewis*,
2011 WL 6188712 (S.D.N.Y. Dec. 6, 2011) ...............................................16

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
284 F.3d 1114 (9th Cir. 2002) ....................................................................9

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
972 F.3d 1101 (9th Cir. 2020) ...................................................................11

*Goodman v. Goodman*,
2022 WL 17826390 (S.D.N.Y. Dec. 21, 2022) ......................................15, 18

*GreatFence.com v. Bailey*,
726 F. App'x 260 (5th Cir. 2018) .................................................................7

*Hancock v. Cty. of Rensselaer*,
2014 WL 12961140 (N.D.N.Y. Sept. 24, 2014) ...........................................16

*Healy v. Beer Inst., Inc.*,
491 U.S. 324 (1989).................................................................................22

*hiQ Labs, Inc. v. LinkedIn Corp.*,
31 F.4th 1180 (9th Cir. 2022) ...................................................................15

*Holland Am. Line Inc. v. Wartsila N.A., Inc.*,
485 F.3d 450 (9th Cir. 2007) ....................................................................11

*Hungerstation LLC v. Fast Choice LLC*,
2020 WL 137160 (N.D. Cal. Jan. 13, 2020) ............................................7, 10

*Hungerstation LLC v. Fast Choice LLC*,
857 F. App'x 349 (9th Cir. 2021) ........................................................ *passim*

*Intel Corp. v. Hamidi*,
30 Cal. 4th 1342 (2003) ..................................................................22, 23, 24

*In re iPhone App. Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...........................................15, 16, 17

*Israel Discount Bank Ltd. v. Schapp*,
505 F. Supp. 2d 651 (C.D. Cal. 2007) ........................................................10

*Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*,
    2015 WL 1289984 (N.D. Cal. Mar. 20, 2015)........................................................19

*Lueck v. Sundstrand Corp.*,
    236 F.3d 1137 (9th Cir. 2001) .........................................................................12

*M Seven Sys. Ltd. v. Leap Wireless Int'l, Inc.*,
    2013 WL 12072526 (S.D. Cal. June 26, 2013)...........................................20, 21

*Motu Novu, LLC v. Percival*,
    2017 WL 7243462 (N.D. Cal. Dec. 1, 2017) ..........................................................6

*Mount v. PulsePoint, Inc.*,
    2016 WL 5080131 (S.D.N.Y. 2016).....................................................................23

*MSC Safety Sols., LLC v. Trivent Safety Consulting, LLC*,
    2020 WL 7425874 (D. Colo. Dec. 18, 2020).......................................................17

*Norwest Mortg., Inc. v. Super. Ct.*,
    72 Cal. App. 4th 214 (1999) ................................................................................20

*NovelPoster v. Javitch Canfield Grp.*,
    140 F. Supp. 3d 938 (N.D. Cal. 2014) ...........................................................18, 22

*Nowak v. Xapo, Inc.*,
    2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ........................................20, 21, 22

*Oman v. Delta Air Lines, Inc.*,
    889 F.3d 1075 (9th Cir. 2018) .............................................................................20

*Oracle Corp. v. SAG AG*,
    734 F. Supp. 2d 956 (N.D. Cal. 2010) ...........................................................20, 21

*Paccar Int'l, Inc. v. Comm. Bank of Kuwait, S.A.K.*,
    757 F.2d 1058 (9th Cir. 1985) ...........................................................................9, 10

*Phillips Petrol. Co. v. Shutts*,
    472 U.S. 797 (1985)..............................................................................................22

*Pimentel v. Aloise*,
    2018 WL 6025613 (N.D. Cal. Nov. 16, 2018) .....................................................19

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981)..............................................................................................11

*Podium Corp. Inc. v. Chekkit Geolocation Servs., Inc.*,
    2021 WL 5772269 (D. Utah Dec. 6, 2021)...........................................................19

*Precision Transducer Sys. v. STFO Trading LLC*,
    2009 WL 10700319 (C.D. Cal. Oct. 15, 2009).......................................................6

*Prevail Legal, Inc., v. Gordon*,
 2021 WL 1947578 (N.D. Cal. May 14, 2021) ....................................................................6, 7

*Ratha v. Phatthana Seafood Co.*,
 35 F.4th 1159 (9th Cir. 2022) .................................................................................................5

*Reflex Media, Inc. v. Chan*,
 2020 WL 6694316 (C.D. Cal. Oct. 30, 2020)..........................................................................6

*Rosen v. Terapeak, Inc.*,
 2015 WL 12724071 (C.D. Cal. Apr. 28, 2015) .......................................................................7

*Saffron Rewards, Inc. v. Rossie*,
 2022 WL 2918907 (N.D. Cal. July 25, 2022).........................................................................17

*Sajfr v. BBG Comms.*, Inc.,
 2012 WL 398991 (S.D. Cal. Jan. 10, 2012)...........................................................................21

*Schwarzenegger v. Fred Martin Motor Co.*,
 374 F.3d 797 (9th Cir. 2004) ....................................................................................4, 5, 6, 8

*Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*,
 277 F. Supp. 3d 521 (S.D.N.Y. 2017)....................................................................................10

*STM Grp., Inc. v. Gilat Satellite Networks Ltd.*,
 2011 WL 2940992 (C.D. Cal. July 18, 2011)........................................................................14

*StratusLive, LLC v. Wimr Grp.*,
 2020 WL 6305875 (E.D. Va. Oct. 14, 2020) ..........................................................................7

*Sullivan v. Oracle Corp.*,
 51 Cal. 4th 1191 (2011) .........................................................................................................20

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
 313 F. Supp. 3d 1056 (N.D. Cal. 2018) ...........................................................................15, 23

*Terpin v. AT&T Mobility, LLC*,
 399 F. Supp. 3d 1035 (C.D. Cal. 2019) .................................................................................20

*Turner v. Hubbard Sys., Inc.*,
 2016 WL 1046949 (D. Mass. Mar. 10, 2016).........................................................................16

*Umeda v. Tesla, Inc.*,
 2022 WL 18980 (9th Cir. Jan. 3, 2022) .................................................................................12

*United Fed'n of Churches, LLC v. Johnson*,
 598 F. Supp. 3d 1084 (W.D. Wash. 2022)........................................................................16, 17

*Van Buren v. United States*,
 141 S. Ct. 1648 (2021)........................................................................................................15, 16

*Vertkin v. Vertkin*,
   2007 WL 4287512 (N.D. Cal. Dec. 6, 2007) .......................................................23

*Walsh v. Microsoft Corp.*,
   63 F. Supp. 3d 1312 (W.D. Wash. 2014) ............................................................18

*Wesch v. Yodlee, Inc.*,
   2021 WL 1399291 (N.D. Cal. Feb. 16, 2021) ....................................................18

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
   472 F. Supp. 3d 649 (N.D. Cal. 2020) ......................................................... *passim*

*Zellerino v. Roosen*,
   2016 WL 10988763 (C.D. Cal. Aug. 22, 2016) ....................................................4

**Statutes and Rules**

Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ........................................... *passim*

Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502 ................. *passim*

Fed. R. Civ. P. 4(k)(2) .................................................................10, 11

**Other Authorities**

Kay Wiggins & Anna Gross, *Berkeley Research Group Lined Up to Take Control
   of Private Equity Owner of NSO*, Financial Times (July 31, 2021),
   https://on.ft.com/406abVL .............................................................5

Mary Zhang, *Apple's Data Center Locations: Enabling Growth in Services* (Sept.
   15, 2022), https://dgtlinfra.com/apple-data-center-locations/ ....................................6

*Project Torogoz*, Citizen Lab Research Report No. 148 (Jan. 12, 2022),
   https://bit.ly/3zLUiJD. ..............................................................3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

In this action, Plaintiffs—a collection of Salvadoran journalists—effectively ask a single U.S. district court judge to serve as privacy police for the entire world, enforcing U.S. and California law against actions allegedly taken by foreign actors against foreign plaintiffs in foreign countries. Defendants NSO and Q Cyber (collectively, "NSO"), both Israeli companies, were not involved in what Plaintiffs claim happened to them. But if, as Plaintiffs claim, their Apple devices were unlawfully accessed by El Salvador *in* El Salvador, then Plaintiffs may exercise their rights to seek relief in Salvadoran or Israeli courts under Salvadoran or Israeli law. But Plaintiffs' claims have nothing to do with the United States, let alone California, and they have no place in this Court.

First, Plaintiffs cannot establish NSO is subject to personal jurisdiction in this Court. Plaintiffs do not identify any case-related contacts that NSO intentionally created with California or the United States, and they do not allege any of NSO's alleged conduct injured them in California or the United States. Second, California is an improper forum under the doctrine of *forum non conveniens*. This lawsuit involves purely foreign plaintiffs, purely foreign defendants, and purely foreign alleged conduct, and substantially all of the relevant evidence is located overseas. There is no reason for a California (or U.S.) court to involve itself in this foreign dispute.

Even if this action could be brought in this Court, however, Plaintiffs have not pleaded any claim for relief. They do not state a claim under the federal Computer Fraud and Abuse Act ("CFAA") because they do not allege they suffered the sort of economic "damage" or "loss" necessary to support a CFAA claim. And they do not plead any claim under California law, which cannot be applied to NSO's purely foreign alleged conduct. That aside, Plaintiffs' claim under California's Comprehensive Computer Data Access and Fraud Act ("CDAFA") fails for the same reason as their CFAA claim, and they do not plead the essential elements of their claims for trespass to chattels and intrusion upon seclusion.

For all these reasons, the Court should dismiss Plaintiffs' Complaint with prejudice.

---

NSO'S MOTION TO DISMISS                                              Case No. 3:22-cv-07513

## II.     BACKGROUND

### A.     NSO's technology and its use in preventing terrorism and other crimes.

Defendant NSO is an Israeli technology company that designs, markets, and licenses—exclusively to foreign governments—a highly regulated technology used to investigate terrorism and serious crimes. (Declaration of Yaron Shohat ("Shohat Decl.") ¶¶ 5-9; Compl. ¶ 32.) Defendant Q Cyber, also an Israeli company, is NSO's shareholder. (Shohat Decl. ¶ 1; Compl. ¶ 13.) The export of NSO's "Pegasus" technology is regulated under Israel's Defense Export Control Law, and the Israeli Ministry of Defense determines the nations to which NSO may market or license its technology. (Shohat Decl. ¶¶ 5-6 & Exh. A.)

NSO does not operate its Pegasus technology. Instead, it simply licenses the technology to foreign government agencies and assists with the training, setup, and installation of the technology. (*Id.* ¶ 10; *see* Compl. ¶¶ 36, 44.) NSO's government customers—not NSO—operate the technology and make all decisions about how to do so. (Shohat Decl. ¶ 10.) NSO's license agreements prohibit its government customers from using the technology against anyone who is not a suspected terrorist or criminal. (*Id.* ¶¶ 8, 10-11.) If a government ever misused the technology to monitor anyone other than criminals or terrorists, NSO has no knowledge of that misuse, which would be a violation of that government's contract with NSO. (*Id.* ¶ 11)

### B.     Plaintiffs and their allegations against NSO.

Plaintiffs allege they are Salvadoran "journalists and others who write, produce, and publish El Faro, a digital newspaper based in El Salvador." (Compl. ¶¶ 4, 14-31.) El Faro itself is not a plaintiff. Almost every Plaintiff currently resides in El Salvador. (*Id.* ¶¶ 14-16, 19-22, 23-27, 29-30.) Plaintiff Roman Gressier is allegedly "a dual citizen of the United States and France" who does not clearly allege where he resides. (*Id.* ¶ 18.) Since he alleges he works for El Faro, he likely resides in El Salvador. (*Id.*; *accord id.* ¶ 53.) Plaintiff Julia Gavarrete "currently lives in Berlin, Germany, while on a four-month fellowship," but she apparently lived in El Salvador before that time. (*Id.* ¶¶ 17, 53.) Plaintiff Daniel Lizárraga currently "lives in Mexico City, Mexico," but he apparently lived in El Salvador until August 2021. (*Id.* ¶¶ 22, 53.) Plaintiff Nelson Rauda Zablah "currently lives in New York City while pursuing a master's degree," but he appears to have lived

in El Salvador until August 2022. (*Id.* ¶¶ 28, 53, 120-21, 123.) Plaintiff José Luis Sanz "currently lives in Washington, D.C.," but he does not allege when he moved there or where he lived previously. (*Id.* ¶ 31.) No Plaintiff alleges he or she has ever lived in California. (*Id.* ¶¶ 14-31.)

Plaintiffs allege that one of NSO's government customers used NSO's Pegasus technology to access their Apple devices "[b]etween June 2020 and November 2021." (*Id.* ¶ 53.) Plaintiffs do not allege they or their devices were in California during that (or any other) timeframe. To the contrary, Plaintiffs allege they were "working in and around El Salvador." (*Id.*.) The only alleged connection between NSO's alleged conduct and California is that Apple servers allegedly "facilitate the delivery and operation of Pegasus," and, "on information and belief," "some" of those servers "are located in California." (*Id.* ¶ 3.) Plaintiffs allege no factual basis for that belief.

Plaintiffs allege they discovered the access to their Apple devices as a result of an analysis by the third-party entity Citizen Lab. (*Id.* ¶¶ 41, 60-61.) The Citizen Lab report Plaintiffs attach to and incorporate into their Complaint linked the alleged access to a supposed "Pegasus customer operating almost exclusively in El Salvador." John Scott-Railton et al., *Project Torogoz*, Citizen Lab Research Report No. 148 at 1 (Jan. 12, 2022), https://bit.ly/3zLUiJD. Citizen Lab concluded it was "very likely" this operator "represents the Salvadoran government." *Id.* at 4-5; *accord id.* at 8-9 (outlining "evidence pointing to a strong El Salvador government nexus"). That is also the only reasonable inference from Plaintiffs' allegations. (*See, e.g.*, Compl. ¶¶ 58, 63, 73, 77, 105 (linking alleged hacking to current president and government of El Salvador).) Plaintiffs do not claim El Salvador's alleged use of Pegasus violated Salvadoran law.

Of the devices Citizen Lab analyzed, it allegedly concluded El Salvador "obtained data from" eleven Plaintiffs' devices. (*Id.* ¶ 144.) As for the other Plaintiffs, they speculate that El Salvador "obtained data" from their devices. (*Id.*) Plaintiffs do not allege their Apple devices were damaged by this alleged access. They do not allege, for instance, that El Salvador deleted or corrupted any of their files or otherwise prevented them from accessing or using any of the information on their devices. They merely allege they "alter[ed]" how they use their devices, suffered "mental anguish," and spent time (though not money) assisting El Faro and Citizen Lab's investigation. (*E.g.*, *id.* ¶¶ 67, 71.)

III.   **PLAINTIFFS' CLAIMS CANNOT BE BROUGHT IN CALIFORNIA OR THE UNITED STATES.**

This is an action by foreign plaintiffs against foreign defendants for alleged acts committed on foreign soil by a foreign government acting under foreign law. Plaintiffs' purely foreign claims have no place in a court in California or anywhere else in the United States. Because Plaintiffs do not allege any relevant conduct by NSO with a connection to California or the United States, the Court lacks personal jurisdiction over NSO. The Court should also dismiss this action under the doctrine of *forum non conveniens*.

A.   **NSO is not subject to general personal jurisdiction in California.**

Plaintiffs do not appear to claim NSO is subject to general jurisdiction, and for good reason. (*See* Compl. ¶ 10.) General jurisdiction exists only when a defendant's contacts with the forum state "are so constant and pervasive as to render it essentially at home" there. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (cleaned up). NSO is "at home" only in Israel, its "place of incorporation" and "principal place of business." *Id.* at 137; (*see* Compl. ¶¶ 32-33).

B.   **Specific personal jurisdiction may not be exercised over NSO in this action.**

In the absence of general jurisdiction, Plaintiffs must establish specific jurisdiction by alleging facts showing that NSO "purposefully directed its activities toward California." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). In a "tort" case like this one, that standard requires factual allegations showing NSO "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 802–03. Plaintiffs' claims must also "arise[] out of or relate[] to" NSO's "forum-related activities." *Id.* at 802. Finally, the Court cannot exercise specific jurisdiction over NSO if doing so "would not be reasonable." *Id.*

Plaintiffs do not plead any facts showing that NSO directed its alleged activities toward California. To begin with, none of NSO's alleged activities can support specific jurisdiction because Plaintiffs do not claim NSO harmed them "in the forum state." *Id.* at 803. No Plaintiff resides in California. (Compl. ¶¶ 14-31.) Therefore, any harm Plaintiffs allegedly suffered occurred in their foreign residences, not in California. *See Zellerino v. Roosen*, 2016 WL

10988763, at *6–7 (C.D. Cal. Aug. 22, 2016) (holding harm from "invasion of privacy" could "*only* be felt" in plaintiff's residence of Michigan, not California); *Alcabes v. Capella Hotel Grp. LLC*, 2015 WL 12697714, at *4 (C.D. Cal. July 8, 2015) (holding "harm was not suffered in California" when "injury occurred in Indonesia").

That aside, Plaintiffs do not allege any case-related conduct NSO "expressly aimed" at California. *Schwarzenegger*, 374 F.3d at 803. All of NSO's alleged conduct took place overseas and, even taking Plaintiffs' allegations as true, was directed at Plaintiffs in El Salvador, not California. (*E.g.*, Compl. ¶ 53.) Plaintiffs allege three contacts they claim support personal jurisdiction in California. According to Plaintiffs, NSO: (1) "has been principally funded and controlled by California-based companies, including Francisco Partners and Berkeley Research Group" (*id.* ¶ 34); (2) allegedly marketed its technology "to law enforcement agencies across the United States" through an alleged "U.S. sales arm called Westbridge Technologies" (*id.*); and, "[o]n information and belief," allegedly "interact[ed] extensively with Apple's U.S.-based servers, many of which are in California" (*id.* ¶ 41). These allegations do not support specific jurisdiction in California, either individually or collectively.

*First*, NSO's past receipt of financing from California investors cannot support specific jurisdiction. In the Ninth Circuit, courts must "measure the extent of a defendant's contacts with a forum 'at the time of the events underlying the dispute.'" *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1171 (9th Cir. 2022). Plaintiffs do not allege NSO received financing from California during the relevant time period (Compl. ¶ 34), and in fact it did not. NSO's financing from Francisco Partners ended in February 2019, *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 675 (N.D. Cal. 2020), while the events underlying Plaintiffs' claims allegedly began in June 2020 (*id.* ¶ 53). Berkeley Research Group does not fund NSO; it *manages* the investment fund that used to own a majority stake in NSO, and it began doing so in July 2021, well after the events underlying Plaintiffs' claims allegedly began. Kay Wiggins & Anna Gross, *Berkeley Research Group Lined Up to Take Control of Private Equity Owner of NSO*, Financial Times (July 31, 2021), https://on.ft.com/406abVL. NSO's alleged California financing is thus not a relevant contact for specific jurisdiction. Even if it were, Plaintiffs' claims do not "arise out of or relate to" NSO's

financing. *Schwarzenegger*, 374 F.3d at 802. Plaintiffs do not allege any facts suggesting otherwise. *See WhatsApp Inc.*, 472 F. Supp. 3d at 675 (rejecting personal jurisdiction based on NSO's alleged California financing).

**Second**, NSO's alleged marketing of its "technology to U.S. government agencies," such as the FBI, CIA, DEA, and Secret Service, shows no connection to California. (Compl. ¶ 34.) And Plaintiffs' alleged marketing to "the Los Angeles and San Diego Police Departments" is irrelevant to Plaintiffs' claims. (*Id.*) Plaintiffs do not allege NSO tried to sell Pegasus (the only relevant technology) to those police departments, that either department purchased Pegasus, or that either department was somehow involved in El Salvador's alleged access to Plaintiffs' devices. (*Id.*) Similarly, Plaintiffs do not allege the FBI used the "version of Pegasus" it allegedly purchased from NSO to access any of Plaintiffs' devices. (*Id.*) Therefore, Plaintiffs' claims do not arise out of or relate to any of NSO's alleged U.S. marketing activities.

**Third**, any use of Apple servers in California cannot support specific jurisdiction over NSO in California. For one thing, Plaintiffs do not plead any facts plausibly suggesting that NSO *did* use Apple's California-based servers. Plaintiffs do not identify any particular California-based Apple server or allege what NSO used it for. Plaintiffs simply assert, without elaboration and entirely "[o]n information and belief," that some of Apple's servers are in California. (*Id.* ¶¶ 3, 41.) Plaintiffs do not, however, plead *any* factual basis for their supposed "belief."[1] Absent any factual predicate, Plaintiffs' "jurisdictional allegations based on information and belief are insufficient to confer jurisdiction." *Reflex Media, Inc. v. Chan*, 2020 WL 6694316, at *3 (C.D. Cal. Oct. 30, 2020); *see Motu Novu, LLC v. Percival*, 2017 WL 7243462, at *1 (N.D. Cal. Dec. 1, 2017); *Precision Transducer Sys. v. STFO Trading LLC*, 2009 WL 10700319, at *4 (C.D. Cal. Oct. 15, 2009).

In any event, courts uniformly reject Plaintiffs' theory that specific jurisdiction can be based on a defendant's alleged use of third-party servers in the forum state. *E.g.*, *Prevail Legal,*

---

[1] In fact, Apple's California data center is the smallest of its five U.S. data centers. Apple also has data centers in Denmark and China. *See* Mary Zhang, *Apple's Data Center Locations: Enabling Growth in Services* (Sept. 15, 2022), https://dgtlinfra.com/apple-data-center-locations/. Plaintiffs' Complaint provides no basis to believe any NSO communication passed through a server in Apple's California data center specifically.

*Inc., v. Gordon*, 2021 WL 1947578, at *5–6 (N.D. Cal. May 14, 2021); *Hungerstation LLC v. Fast Choice LLC*, 2020 WL 137160, at *5 (N.D. Cal. Jan. 13, 2020), *aff'd*, 857 F. App'x 349 (9th Cir. 2021); *Broidy Cap. Mgmt., LLC v. Qatar*, 2018 WL 9943551, at *7 (C.D. Cal. Aug. 22, 2018). In *Hungerstation*, for example, the plaintiff sued the defendants under the CFAA for stealing data the plaintiff stored on third-party servers in California. 2020 WL 137160, at *1-2. The court held "the mere presence of servers in California . . . is insufficient to find that [d]efendants expressly aimed their conduct at California." *Id.* at *5. Because the plaintiff itself did "not have a server in California" and neither "part[y] ha[d] control over where the identified third parties located their servers," the California location of those servers was "pure happenstance" that could not support specific jurisdiction. *Id.* The Ninth Circuit went even further when affirming that decision on appeal, holding the defendants were not subject to specific jurisdiction *anywhere in the United States* because the "location of the servers" they accessed "was fortuitous." *Hungerstation*, 857 F. App'x at 351. Personal jurisdiction is not "proper over a private foreign entity solely because that entity engaged in tortious foreign conduct from a location outside the United States by remotely accessing servers located in the United States." *Id.* Other decisions reaching the same conclusion are almost too numerous to list.[2]

That rule forecloses Plaintiffs' reliance on the "pure happenstance" that Apple allegedly chose to locate some of its servers in California. *Hungerstation*, 2020 WL 137160, at *5. Nothing in the Complaint suggests NSO knew or cared where Apple's servers were, or that NSO had any control over where Apple places its servers. (*See* Shohat Decl. ¶ 14.) Plaintiffs thus argue specific jurisdiction exists over NSO, a "private foreign entity," merely because it allegedly "engaged in tortious foreign conduct from a location outside the United States by remotely accessing servers

---

[2] *E.g.*, *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 402 (4th Cir. 2003); *GreatFence.com v. Bailey*, 726 F. App'x 260, 261 (5th Cir. 2018); *CrossFit, Inc. v. Fitness Trade sp. z o.o.*, 2020 WL 6449155, at *5 (S.D. Cal. Nov. 2, 2020); *Prevail Legal*, 2021 WL 1947578, at *5; *WhatsApp*, 472 F. Supp. 3d at 671; *FPK Servs. LLC v. Does 1-10*, 2020 WL 5982061, at *1–2 (N.D. Cal. Oct. 8, 2020); *StratusLive, LLC v. Wimr Grp.*, 2020 WL 6305875, at *4 (E.D. Va. Oct. 14, 2020); *Broidy*, 2018 WL 9943551, at *7; *Rosen v. Terapeak, Inc.*, 2015 WL 12724071, at *9 (C.D. Cal. Apr. 28, 2015).

located in the United States." *Hungerstation*, 857 F. App'x at 351. That is not enough to establish specific jurisdiction. *Id.*

Contrary to Plaintiffs' assertion, the court in *WhatsApp* did not "exercise[] personal jurisdiction over Defendants based on substantially similar facts." (Compl. ¶ 10.) The plaintiff there was WhatsApp, and the court interpreted the complaint to allege that NSO intentionally "sought out specific [California-based] servers" *owned by WhatsApp*, with knowledge of "where they were located." 472 F. Supp. 3d at 671–72. The court found it "critical" that "the servers in question [were] not owned by third parties" but were WhatsApp's own servers. *Id.* at 671.[3]  That distinguished the case from *Hungerstation* and other decisions, which the court followed to hold that "the mere location of a third party or its servers is insufficient to give rise to personal jurisdiction." *Id.* (cleaned up). Here, unlike in *WhatsApp*, Plaintiffs do not claim NSO accessed *their* computers in California. Rather, they allege NSO used a *third party's* California servers in connection with the design of technology used entirely in foreign countries by foreign government agencies. (Compl. ¶ 38.) Even under *WhatsApp*, the alleged location of Apple's third-party servers "is fortuitous" and thus cannot support jurisdiction. 472 F. Supp. 3d at 671.

## C.   Exercising personal jurisdiction over NSO would be unreasonable.

Separate from the "purposeful direction" analysis, due process requires a court's exercise of specific jurisdiction to "not be unreasonable." *Schwarzenegger*, 374 F.3d at 802. Here, even if Plaintiffs had alleged facts establishing purposeful direction, the Court's exercise of jurisdiction would be unreasonable. Courts "consider seven factors" when deciding the reasonableness of personal jurisdiction:

> (1) [T]he extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

---

[3] NSO disagrees with the *WhatsApp* court's reading of WhatsApp's complaint and its personal jurisdiction analysis, but that disagreement is irrelevant here because even if the court's decision were correct, it turns on factors that do not exist in this case.

*Hungerstation*, 857 F. App'x at 352. In *Hungerstation*, the Ninth Circuit found personal jurisdiction in California would be unreasonable in circumstances not meaningfully distinguishable from those present here. This Court should do likewise and dismiss Plaintiffs' claims against NSO.

### 1. NSO's alleged "purposeful interjection" into California is negligible.

The *first* factor favors dismissal. First, no Plaintiff is a California resident, so NSO's alleged "contacts with the United States are less significant." *Hungerstation*, 857 F. App'x at 352; *see Paccar Int'l, Inc. v. Comm. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1064–65 (9th Cir. 1985) (holding defendant's "purposeful interjection into California [is] negligible" when alleged conduct is "aimed at a nonresident"). Second, as in *Hungerstation*, NSO's only alleged conduct in California is its "fortuitous" use of California-based servers. 857 F. App'x at 351. That "level of contact" is "de minimis." *Carefirst*, 334 F.3d at 402.

### 2. Defending this action in California would be inefficient and burdensome, and any competing interest Plaintiffs have is trivial.

The *second* and *fifth* factors favor dismissal because NSO "is incorporated in [Israel], owns no property in the forum, and has no employees or persons authorized to act on its behalf there." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1125–26 (9th Cir. 2002). NSO's "potential witnesses and evidence" are "half a world away." (Shohat Decl. ¶ 4). In addition, as to the *sixth* factor specifically, the convenience of Plaintiffs is an "insignificant" factor in every case. *Core-Vent Corp. v. Nobel Indust. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993). And it is particularly trivial here, where no Plaintiff lives in California. (Compl. ¶¶ 14-31.)

### 3. Maintaining this action in California conflicts with Israeli sovereignty.

The *third* factor favors dismissal because exercising personal jurisdiction over Israeli corporations that do no business in California conflicts with Israel's sovereignty. The Ninth Circuit has held that whenever "the defendant is from a foreign nation rather than another state, the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction." *Amoco Egypt Oil Co. v. Leonis Nav. Co.*, 1 F.3d 848, 852 (9th Cir. 1993). That is even more true here because of Israel's own regulation and review of NSO's operations, details of which would need

1   to be disclosed for NSO to defend this action. (Shohat Decl. ¶¶ 3, 5-9.)[4] Israel has a strong national-

2   security interest in preventing the disclosure of that information, which Israel's export control laws

3   prohibit NSO from disclosing without prior government approval. (*Id.*)

### 4.   California, as a forum, has no interest in adjudicating this lawsuit.

5   The ***fourth*** factor also favors dismissal because California has no interest in resolving a

6   dispute brought by nonresident plaintiffs against two Israeli companies related to conduct entirely

7   in and by foreign nations. *See Paccar*, 757 F.2d at 1065.

### 5.   Israel presents an adequate alternative forum.

9   Finally, the ***seventh*** factor favors dismissal because Israel is an adequate alternative forum.

10  *WhatsApp*, 472 F. Supp. 3d at 677. "Courts routinely hold that Israel is a proper forum and dismiss

11  cases on the grounds that it would be more appropriate to hear a case in Israel." *Israel Discount*

12  *Bank Ltd. v. Schapp*, 505 F. Supp. 2d 651, 659 (C.D. Cal. 2007) (citing cases).

### D.   NSO is not subject to jurisdiction under Rule 4(k)(2).

14  Perhaps recognizing that NSO is not subject to specific jurisdiction in California, Plaintiffs

15  assert as a fallback that nationwide jurisdiction is appropriate under Rule 4(k)(2). (Compl. ¶ 11.)

16  But "[t]he Ninth Circuit has urged cautious application of Rule 4(k)(2)," *Hungerstation*, 2020 WL

17  137160, at *7, and it does not apply here.

18  Just as Plaintiffs' allegations do not show NSO "purposefully direct[ed]" any case-related

19  activity toward California, they do not show NSO did so toward the United States. *Hungerstation*,

20  847 F. App'x at 351. The Ninth Circuit in *Hungerstation* already rejected Plaintiffs' theory that

21  Rule 4(k)(2) permits personal jurisdiction "over a private foreign entity solely because that entity

22  engaged in tortious conduct from a location outside of the United States by remotely accessing

23  servers located in the United States." *Id.*; *see also Sonterra Cap. Master Fund Ltd. v. Credit Suisse*

24  *Grp. AG*, 277 F. Supp. 3d 521, 590 (S.D.N.Y. 2017) ("[T]he happenstance that the electronic

---

26  [4] Plaintiffs' suit would also conflict with the sovereignty of El Salvador since Plaintiffs' devices
27  were allegedly accessed by the government of El Salvador. This lawsuit would therefore require
    the Court to scrutinize another nation's "peculiarly sovereign" investigatory activities. *Broidy Cap.*
28  *Mgmt. v. Qatar*, 982 F.3d 582, 595 (9th Cir. 2020).

communications of defendants acting abroad were routed through a server in the United States cannot substantially contribute to a finding of sufficient contacts with the United States."). NSO's only other alleged U.S. contacts—its alleged marketing activities (Compl. ¶ 34)—do not give rise or relate to Plaintiffs' claims. Finally, Plaintiffs do not and cannot establish their alleged "harm" was "likely to be suffered in" the United States, *Hungerstation*, 847 F. App'x at 351, because they are all foreign citizens who did not live in the United States when their devices were allegedly accessed. (Compl. ¶ 53.) Therefore, Plaintiffs cannot show NSO has sufficient "minimum contacts" with the United States to support jurisdiction under Rule 4(k)(2). *Id.* at 351–52; *see Holland Am. Line Inc. v. Wartsila N.A., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007) (rejecting Rule 4(k)(2) jurisdiction based on "scant, fleeting, and attenuated" U.S. contacts).

Moreover, exercising personal jurisdiction over NSO in the United States would be unreasonable for the same reasons that it is unreasonable in California. *Hungerstation*, 847 F. App'x at 352. Jurisdiction under Rule 4(k)(2) is improper for that reason as well.

### E.   The Complaint should be dismissed for *forum non conveniens.*

The Complaint should be dismissed even if NSO were subject to personal jurisdiction in California because there is no good reason for this case, in which foreign plaintiffs assert claims against foreign defendants based on foreign conduct, to proceed in this District. Dismissal for *forum non conveniens* is appropriate because there is "an adequate alternative forum" and the balance of "private" and "public" factors favors dismissal. *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1110 (9th Cir. 2020).

### 1.   Israel is an adequate alternative forum.

A court in this District has already found that Israel is an adequate alternative forum for claims against NSO. *WhatsApp*, 472 F. Supp. 3d at 677. For good reason: a foreign jurisdiction is adequate "when the defendant is 'amenable to process'" there. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981). As a citizen of Israel, NSO is amenable to process in Israel. (Compl. ¶¶ 10, 13.) Israel can also "provide 'some remedy'" for Plaintiffs' claims, *Carijano v. Occidental Petrol. Corp.*, 643 F.3d 1216, 1225-26 (9th Cir. 2011), because "Israeli tort law provides adequate

remedies for plaintiffs injured as a result of tortious conduct," *Corrie v. Caterpillar, Inc.*, 403 F. Supp. 2d 1019, 1026 (W.D. Wash. 2005).

### 2.   The "private factors" favor dismissal.

The "private" *forum non conveniens* factors favor dismissal. Those factors are "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Carijano*, 643 F.3d at 1229; *Umeda v. Tesla, Inc.*, 2022 WL 18980, at *1 (9th Cir. Jan. 3, 2022).

### a.   The burden and inconvenience of litigating in California is great, and substantially all evidence and witnesses are abroad.

The burden on NSO to litigate in California is great—it is located in Israel and has no property or employees in California. (Shohat Decl. ¶ 4.) Plaintiffs are also all located outside of California—and almost entirely in El Salvador. (Compl. ¶ 14-31.) Consequently, the key witnesses and evidence related to Plaintiffs' claims against NSO would almost all be located in El Salvador, Israel, and other foreign jurisdictions.

### b.   Access to evidence is limited by Israeli law, and unwilling witnesses cannot be compelled to come to the U.S. to testify.

Much of that foreign evidence may also prove unavailable in this Court. *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1147 (9th Cir. 2001) (concluding "private interest factors weigh[ed] in favor of dismissal" where evidence located abroad was not fully under parties' control). Israel's export control laws impose strict limits on the information NSO and its employees may disclose outside of Israel. (Shohat Decl. ¶¶ 5-9.) Depositions of witnesses in Israel are possible, although they are very rare. (Blecher Decl. ¶ 2.) If deposition questions call for information subject to export control restrictions, a witness who provides restricted information would be subject to criminal penalties. (*Id.* ¶ 3.) If these circumstances arose in Israeli court proceedings, procedures would be available that could allow a witness to answer questions without fear of prosecution, but those procedures would not be available in a deposition taken for use outside of Israel. (*Id.* ¶¶ 4-6.)

Therefore, Israeli witnesses could testify if this case were litigated in Israel, but they could not give the same testimony for use in this Court. (*Id.* ¶¶ 3-6.)

Israeli witnesses, including NSO's employees and former employees, also may be unable (based on Israeli law) or unwilling to testify in the United States, and they cannot be compelled to appear before this Court. *See Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1451 (9th Cir. 1990) (holding foreign defendant could not "compel [foreign] witnesses to appear before U.S. courts"); *Alternate Health USA Inc. v. Edalat*, 2022 WL 767573, at *8-9 (C.D. Cal. Mar. 14, 2022) (holding Canadian defendant could not compel Canadian witnesses to "to testify in American courts").

### c.   Any judgment would be more easily enforced if the case were litigated in Israel.

Any potential judgment against NSO could be more easily enforced in Israel, where NSO's assets and operations are located. See *Edalat*, 2022 WL 767573, at *9 (holding judgment against Canadian defendant "would be easier to enforce if that judgment was rendered by a Canadian court," which "weighs strongly in favor of dismissal").

In sum, the "private" *forum non conveniens* factors all support dismissal. *See Facebook, Inc. v. Studivz Ltd.*, 2009 WL 1190802, at *3 (N.D. Cal. May 4, 2009) (finding "private interest factors" favored dismissal where foreign witnesses were more important than U.S.-based witnesses, testimony of foreign-resident witnesses could likely not "be compelled in this Court," and foreign judgment would be "more effective" than U.S. judgment (cleaned up)).

### 3.   The "public factors" also favor dismissal.

The "public factors" also favor dismissal. They are "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Carijano*, 643 F.3d at 1232.

There is no meaningful "local interest" in a dispute between Plaintiffs and NSO. Plaintiffs and NSO are foreign residents, and California has no interest in being the forum for foreign plaintiffs' claims against foreign defendants based on foreign conduct. Israel, in contrast, has

strong national-security interests in a lawsuit against an Israeli defense-technology company, including protecting information governed by Israel's export control laws or related to the Israeli government's decisions whether to approve particular NSO customers. (Shohat Decl. ¶¶ 5-9). For the same reason, Israel's courts "would likely have a greater understanding of the circumstances surrounding the dispute" and a greater interest in the action. *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1453 (9th Cir. 1990).

Likewise, local courts and the parties would both incur substantial costs if this dispute were to be litigated in California, which costs are out of proportion to any *de minimis* interest California may have in the case. Transporting all the necessary witnesses and evidence to California from foreign countries would be unnecessarily "inconvenient and expensive." *STM Grp., Inc. v. Gilat Satellite Networks Ltd.*, 2011 WL 2940992, at *9 (C.D. Cal. July 18, 2011). In a case like this one, "[w]here the local interest in [the] controversy is weak as compared to the alternative forum's interest," the "burden on local courts and juries, and the related costs, are not justified." *Edalat*, 2022 WL 767573, at *11 (C.D. Cal. Mar. 14, 2022).

## IV.   THE COMPLAINT DOES NOT STATE A CLAIM AGAINST NSO.

Even if this case could proceed in California, Plaintiffs do not adequately plead their claims.

### A.   Plaintiffs do not state a CFAA claim.

#### 1.   Plaintiffs lack statutory standing to bring a private CFAA claim.

Plaintiffs' CFAA claim fails because they do not plead facts showing they have statutory standing to bring their claim. To assert a CFAA claim, a private plaintiff must *both* have "suffere[d] damage or loss" *and* establish that the defendant's "conduct involve[d]" one of five enumerated "factors." 18 U.S.C. § 1030(g). The only potentially relevant factor here applies when the plaintiffs incur a "loss . . . aggregating at least $5,000 in value." *Id.* § 1030(c)(4)(A)(i)(I). In a suit under that section, "[d]amages . . . are limited to *economic* damages." *Id.* § 1030(g) (emphasis added); *see Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 935 (9th Cir. 2004). Therefore, "[o]nly economic damages or loss can be used to meet the $5,000.00 threshold." *Bose v. Interclick, Inc.*, 2011 WL 4343517, at *4 (S.D.N.Y. Aug. 17, 2011).

1    Plaintiffs do not satisfy this provision because they do not adequately allege they suffered

2    any economic "damage" or "loss," as the CFAA defines those terms, let alone an economic "loss"

3    totaling $5,000 or more. Plaintiffs cannot plead "damage" or "loss" through their allegations that El

4    Salvador used NSO's technology to access data on their devices. The CFAA's definitions of "damage"

5    and "loss" are limited. *Van Buren v. United States*, 141 S. Ct. 1648, 1659–60 (2021); *Andrews v.*

6    *Sirius XM Radio Inc.*, 932 F.3d 1253, 1262–63 (9th Cir. 2019). "[D]amage" requires "impairment

7    to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8).

8    "The term 'loss' likewise relates to costs caused by harm to computer data, programs, systems, or

9    information services." *Van Buren*, 141 S. Ct. at 1659–60 (citing 18 U.S.C. § 1030(e)(11)).

10   "Damage" and "loss" are thus both "[l]imit[ed]" to "technological harms—such as the corruption

11   of files." *Id.*; *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1195 n.12 (9th Cir. 2022).[5]  The

12   "mere copying of data" does not satisfy that definition. *Calendar Research LLC v. StubHub, Inc.*,

13   2020 WL 4390391, at *22 (C.D. Cal. May 13, 2020) (citing cases); *accord Synopsys, Inc. v.*

14   *Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1071–72 (N.D. Cal. 2018); *In re iPhone App. Litig.*,

15   844 F. Supp. 2d 1040, 1068 (N.D. Cal. 2012). Neither does the "value" of that data. *Andrews*, 932

16   F.3d at 1262–63; *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 130–31 (N.D. Cal. 2020).

17   Plaintiffs do not allege any actual "damage" to their devices or data. They do not claim

18   NSO's technology deleted, corrupted, or impaired any data on their devices, or caused "any

19   difference whatsoever in the performance of [their] computer[s]." *In re iPhone App.*, 844 F. Supp.

20   2d at 1066. Plaintiffs instead claim their devices were "infected . . . with spyware" (Compl. ¶ 140),

21   but the "install[ation of] third-party utilities which extracted data" is not "damage" to a computer

22   unless the computer "was actually impaired" or "its systems were otherwise harmed" by the

23   removal of data. *Goodman v. Goodman*, 2022 WL 17826390, at *7 (S.D.N.Y. Dec. 21, 2022)

24   (cleaned up).[6] Plaintiffs also claim "the attacks disabled certain Apple iOS features on the devices"

---

26   [5] The CFAA, as a criminal statute, is further limited by the "rule of lenity," which requires a
     "narrow interpretation" even in "civil actions." *hiQ Labs*, 31 F.4th at 1200–01.

27   [6] *See also Del Vecchio v. Amazon.com, Inc.*, 2011 WL 6325910, at *4 (W.D. Wash. Dec. 1, 2011)
28   (holding "transfer of cookies to [p]laintiffs' computers" was not damage or loss without a
     noticeable "difference . . . in the performance of his or her computer"); *Doyle v. Taylor*, 2010 WL

(Compl. ¶ 140), but their other allegations make clear that did not injure *Plaintiffs*. They allege only that "Pegasus disables crash reporting to Apple" (*id.* ¶ 40), which would have no effect on Plaintiffs' ability to use their devices or access their data. Plaintiffs do not allege otherwise.

Nor do Plaintiffs plead they suffered any "loss" within the CFAA's definition. They allege they have "alter[ed] how [they] use[] [their] device[s]," which "diminished the value of [their] devices." (*E.g.*, *id.* ¶ 67.) But that subjective loss of personal value *to Plaintiffs*—stemming from Plaintiffs' own decisions about how to use their devices—is not economic loss or "technological harm[]" *to the devices*, so it does not constitute "loss" under the CFAA. *Van Buren*, 141 S. Ct. at 1659–60; *see In re iPhone App.*, 844 F. Supp. 2d at 1067 (holding allegation that access "diminished the value of [plaintiff's] computer" does not establish loss (quoting *Bose*, 2011 WL 4343517, at *4)); *United Fed'n of Churches, LLC v. Johnson*, 598 F. Supp. 3d 1084, 1097 (W.D. Wash. 2022) (holding plaintiff's "'lost ability to communicate' with its members" was not "cognizable under the CFAA"). Similarly, Plaintiffs' alleged "mental anguish" (*e.g.*, Compl. ¶ 71), is not "loss" under the CFAA because it is not economic harm or a "cost[] actually related to computers." *Garland-Sash v. Lewis*, 2011 WL 6188712, at *4 (S.D.N.Y. Dec. 6, 2011) (holding "emotional injury" not "loss" under CFAA).[7]

Plaintiffs also cannot plead loss through their assertions they "incurred significant costs in investigating and remediating the attacks" because they do not allege they *paid* for any investigation or remediation. (*E.g.* Compl. ¶ 67.) They allege they spent time assisting the investigation, but they do not allege any facts from which the Court could assign a monetary value

---

2163521, at *2 (E.D. Wash. May 24, 2010) (holding defendant's theft of file from plaintiff's thumb drive was not damage or loss unless the "drive itself was somehow damaged or impaired by Defendant's act of accessing the drive").

[7] *See also Hancock v. Cty. of Rensselaer*, 2014 WL 12961140, at *5–6 (N.D.N.Y. Sept. 24, 2014) (same, for "pain, suffering, [and] emotional harm"); *Turner v. Hubbard Sys., Inc.*, 2016 WL 1046949, at *12 (D. Mass. Mar. 10, 2016) (same, for "emotional distress"); *cf. Creative Computing*, 386 F.3d at 935 (holding "[t]he statutory restriction, 'limited to economic damages,' precludes damages for . . . mental distress"). For the same reason, certain Plaintiffs' alleged medical expenses (*e.g.*, Compl. ¶ 87) do not constitute CFAA "loss." Medical expenses resulting from alleged mental distress or physical injury are not "technological harms," *Van Buren*, 141 S. Ct. at 1659–60, and are not "incurred because of interruption of service," 28 U.S.C. § 1030(e)(11).

1   to that alleged lost time or conclude it constitutes *economic* loss. Without such allegations,

2   Plaintiffs cannot show their "alleged lost time was a CFAA-qualifying loss." *MSC Safety Sols., LLC*

3   *v. Trivent Safety Consulting, LLC*, 2020 WL 7425874, at *9 (D. Colo. Dec. 18, 2020) (cleaned up).

4            In addition, the CFAA limits investigatory and remediation "loss" to costs specifically from

5   "damage assessment[s]" and "restoring the data, program, system, or information to its condition

6   prior to the offense." 18 U.S.C. § 1030(e)(11); *see Saffron Rewards, Inc. v. Rossie*, 2022 WL

7   2918907, at *8 (N.D. Cal. July 25, 2022) (holding investigatory "loss" requires "damages

8   assessments or data restorations"). Plaintiffs do not allege any investigation assessed "damage" to

9   their devices or data (they do not identify any such "damage") or "restor[ed]" data to their devices

10  (they do not allege any data was altered or deleted). They thus do not plead any investigation

11  qualifying as "loss." *See Better Holdco, Inc. v. Beeline Loans, Inc.*, 2021 WL 3173736, at *4

12  (S.D.N.Y. July 26, 2021) (holding investigation into "download[ing] and cop[ying] of [plaintiff's]

13  data" was not "loss" absent "alleg[ation] that [plaintiff] lost service or access to its data, or that its

14  systems were otherwise harmed").

15           In any event, Plaintiffs have not alleged facts establishing that their alleged losses totaled

16  "at least $5,000." 18 U.S.C. § 1030(c)(4)(A)(i)(I). In a case with multiple plaintiffs, the plaintiffs

17  "may aggregate individual damages . . . to meet the [$5,000] damages threshold if the [CFAA]

18  violation can be described as 'one act.'" *In re iPhone App.*, 844 F. Supp. 2d at 1066. That is not

19  the case here, where Plaintiffs' claims are based on multiple alleged "Pegasus attacks" targeting

20  distinct Plaintiffs' distinct devices on many separate occasions over an 18-month period. (*E.g.*,

21  Compl. ¶ 5.) Plaintiffs allege no facts from which the Court could conclude that all of those distinct

22  actions constitute "one act" for purposes of aggregating damages. *In re iPhone App.*, 844 F. Supp.

23  2d at 1066; *see Johnson*, 598 F. Supp. 3d at 1094 (holding "alleged intrusions into the Facebook,

24  Google, and Twitter systems must be treated as three separate violations" for which plaintiff "must

25  separately . . . allege[] loss of at least $5,000"). And Plaintiffs do not claim any *individual* Plaintiff

26  suffered $5,000 or more in economic losses, so they cannot satisfy the CFAA's damages threshold.

27           Even if Plaintiffs could aggregate their distinct losses, they do not adequately plead the

28  total would equal or exceed $5,000. They make only the conclusory assertion that the "costs

incurred by Plaintiffs *as well as those incurred by El Faro* . . . exceeded $5,000." (Compl. ¶ 139 (emphasis added).) But El Faro is not a plaintiff, so its alleged losses do not count toward the threshold. *See Walsh v. Microsoft Corp.*, 63 F. Supp. 3d 1312, 1320 (W.D. Wash. 2014) (holding "Plaintiffs must meet the [$5,000] damages requirement themselves, and cannot rely on absent" parties). Plaintiffs do not claim *their* losses, separate from El Faro's, exceeded $5,000. They do not allege they paid for any investigation and do not plead facts from which the Court could find that their alleged lost time has a monetary value or quantify that value.[8] As explained above, their alleged inability to use their devices in the same way as before and their alleged mental distress do not qualify as "loss" at all—but even if they did, Plaintiffs plead no facts from which the Court could assign a dollar value to those harms. Therefore, Plaintiffs do not plead "loss" exceeding $5,000.[9]

### 2. The CFAA does not authorize aiding and abetting liability.

Because NSO does not operate its technology and thus could not have accessed any of Plaintiffs' devices, Plaintiffs base their CFAA claim in part on an aiding and abetting theory. (Compl. ¶ 149.) The CFAA, however, does not authorize aiding and abetting liability in civil actions. So even if Plaintiffs had statutory standing to bring a CFAA claim, that claim should be dismissed to the extent it depends on aiding and abetting liability.

Whether a federal statute creates civil aiding and abetting liability depends on the specific statutory text. *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176-77, 182-83 (1994); *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004-06 (9th Cir. 2006). "While Congress has enacted a general aiding and abetting statute applicable to all federal criminal offenses, *see* 18 U.S.C. § 2, it has not done so for civil offenses. Instead, it has provided (or not

---

[8] Similarly, the Plaintiffs who allegedly purchased new devices do not quantify the cost of those purchases. (*E.g.*, Compl. ¶ 75.)

[9] *See Wesch v. Yodlee, Inc.*, 2021 WL 1399291, at *7 (N.D. Cal. Feb. 16, 2021) (rejecting "conclusory" allegation that plaintiff incurred $5,000 in loss from "'conducting damage assessments [and] restoring the data to its condition prior to the offense'"); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 949 (N.D. Cal. 2014) (holding complaint's "assessment of loss" inadequate because it was "devoid of any specific details from which a factfinder could calculate an amount of loss" (cleaned up)); *Goodman*, 2022 WL 17826390, at *10 (dismissing claim because plaintiff did not "quantify the costs associated with his alleged losses that actually qualify as cognizable loss under the CFAA").

provided) for such civil liability on a statute-by-statute basis." *Pimentel v. Aloise*, 2018 WL 6025613, at \*21 (N.D. Cal. Nov. 16, 2018). And when Congress "impos[es] aiding and abetting liability," it does so explicitly, "us[ing] the words 'aid' and 'abet' in the statutory text." *Cent. Bank of Denver*, 511 U.S. at 177 (citing examples). Absent such an "explicit provision" providing for "aiding and abetting" liability, "courts should not implicitly read secondary liability into [a] statute." *Freeman*, 457 F.3d at 1006.

The CFAA contains no provision providing for civil aiding and abetting liability. The "statute's plain language sets forth who is liable": "a primary violator, a person who attempts a primary violation, and a co-conspirator of a primary violator." *Flynn v. Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP*, 2011 WL 2847712, at \*3 (D. Nev. July 15, 2011); *see* 18 U.S.C. § 1030(a)-(b). The "language of these statutory sections is unambiguous regarding the question of who may be subject to liability," *Freeman*, 457 F.3d at 1005, and that language does not encompass aiders and abettors, *see Podium Corp. Inc. v. Chekkit Geolocation Servs., Inc.*, 2021 WL 5772269, at \*8-9 (D. Utah Dec. 6, 2021) (holding "[a]iding and abetting is not enumerated as a means of violating the CFAA," so "the court will not read such liability into the statute"). To the contrary, Congress implicitly *excluded* aiding and abetting liability by imposing secondary liability only on co-conspirators. 18 U.S.C. § 1030(b). "The fact that Congress chose to impose some forms of secondary liability, but not others, indicates a deliberate congressional choice with which the courts should not interfere." *Cent. Bank of Denver*, 511 U.S. at 184.

For these reasons, this Court should join the many others that have held the CFAA does not create civil aiding and abetting liability. *E.g.*, *Podium Corp.* 2021 WL 5772269, at \*8-9; *DHI Grp. v. Kent*, 2017 WL 1088352, at \*7 (S.D. Tex. Mar. 3, 2017); *Advanced Fluid Sys., Inc. v. Huber*, 28 F. Supp. 3d 306, 328 (M.D. Pa. 2014); *Flynn*, 2011 WL 2847712, at \*3; *cf. Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*, 2015 WL 1289984, at \*4 (N.D. Cal. Mar. 20, 2015) (holding that "encourag[ing]" a CFAA violation "does not support a theory of liability under the CFAA"). The Court should dismiss Plaintiffs CFAA claim for aiding and abetting.

1

**B.**     **Plaintiffs' California law claims fail.**

2

**1.**     **Plaintiffs cannot sue NSO under California law.**

3        Plaintiffs' CDAFA and California tort claims should be dismissed because California law

4   does not and cannot apply to NSO's alleged conduct. "There is a presumption against California

5   law being given extraterritorial effect when the wrongful act as well as the injury occurred outside

6   California." *Arabian v. Sony Elec. Inc.*, 2007 WL 627977, at *9 (S.D. Cal. Feb. 22, 2007).

7   California law thus "does not apply to out-of-state conduct that does not cause injury in California."

8   *Oracle Corp. v. SAG AG*, 734 F. Supp. 2d 956, 968 (N.D. Cal. 2010).

9        This prohibition against extraterritorial enforcement applies equally to Plaintiffs' CDAFA

10   and tort claims. California statutes cannot apply "to occurrences outside the state" unless a contrary

11   intent is "clearly expressed or reasonably to be inferred from the language of the act or from its

12   purpose, subject matter or history." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011)

13   (cleaned up). The CDAFA "contains no express declaration that it was designed or intended to

14   regulate claims of non-residents arising from conduct occurring entirely outside of California."

15   *Norwest Mortg., Inc. v. Super. Ct.*, 72 Cal. App. 4th 214, 222, (1999). Courts have thus held that

16   CDAFA cannot apply to conduct outside of California. *Nowak v. Xapo, Inc.*, 2020 WL 6822888,

17   at *6 (N.D. Cal. Nov. 20, 2020) (rejecting extraterritorial application of CDAFA); *Terpin v. AT&T*

18   *Mobility, LLC*, 399 F. Supp. 3d 1035, 1047–48 (C.D. Cal. 2019) (same); *M Seven Sys. Ltd. v. Leap*

19   *Wireless Int'l, Inc.*, 2013 WL 12072526, at *3 (S.D. Cal. June 26, 2013) (same). The same

20   restriction applies to Plaintiffs' tort claims because California common law no more applies

21   extraterritorially than do California statutes. *See Oracle*, 734 F. Supp. 2d at 967–68 (dismissing

22   tort claims that lacked a "California nexus"); *FAS Techs., Ltd. v. Dainippon Screene Mfg. Co.*,

23   2001 WL 1159776, at *2 (N.D. Cal. Sept. 21, 2001) (dismissing tort claim because "California's

24   laws do not reach conduct that occurred outside of California").

25        Plaintiffs' CDAFA and tort claims would involve an impermissible extraterritorial

26   application of California law because the alleged "liability-creating conduct occur[rred] outside of

27   California." *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018). Plaintiffs do not

28   reside—and thus suffered no injury—in California. (Compl. ¶¶ 14-31.) NSO's alleged conduct

occurred entirely in Israel, where it operates. (*Id.* ¶¶ 32-33.) And El Salvador's alleged use of NSO's technology to investigate Plaintiffs occurred in El Salvador or other foreign countries. (*Id.* ¶ 53.) California law does not reach such "acts of citizens of a foreign jurisdiction that occurred solely in that foreign jurisdiction." *M. Seven Sys.*, 2013 WL 12072526, at *3; *see Oracle*, 734 F. Supp. 2d at 968 (finding California law did not apply to claims by "non-resident" plaintiff that "suffered no injury in California" when defendant's conduct "occurred in Texas and Europe, not in California").

      The only connections to California mentioned in Plaintiffs' complaint are too trivial to change this conclusion. Plaintiffs allege NSO used Apple servers, some of which are located in California. (Compl. ¶¶ 3, 41.) But the "level of contact created by the connection between an out-of-state defendant and a web server located within a forum" is "de minimis." *Carefirst*, 334 F.3d at 402. And, as explained above, any connection between NSO's alleged conduct and California-based Apple servers would be purely "fortuitous," involving no purposeful conduct on NSO's part. *Hungerstation*, 857 F. App'x at 351. Such trivial, incidental contact with California would not "show a sufficient nexus between California and [NSO's] alleged wrongful conduct" to permit application of California law. *Nowak*, 2020 WL 6822888, at *6 (holding CDAFA did not apply to hacking of foreign plaintiff's Bitcoin account even though account was based in California); *see Sajfr v. BBG Comms.*, Inc., 2012 WL 398991, at *4 (S.D. Cal. Jan. 10, 2012) (holding California law did not apply to foreign "telephone calls" even though they were "routed through switches in the United States" and "rated and billed from San Diego").[10]

      California's presumption against extraterritoriality alone suffices to dismiss Plaintiffs' CDAFA and tort claims, but the Due Process and Commerce Clauses of the U.S. Constitution also independently prohibit Plaintiffs from applying California law to NSO's out-of-state conduct. *See BMW v. Gore*, 517 U.S. 559, 571 (1996) (holding "no single state could . . . impose its own policy choice on neighboring States" because "'[n]o state can legislate except with reference to its own

---

[10] In addition, Plaintiffs' CDAFA claim cannot be based on NSO's alleged use of Apple servers. Plaintiffs do not own or lease those servers, and a CDAFA claim may only be brought by "the owner or lessee of the computer, computer system, computer network, computer program, or data." Cal. Penal Code § 502(e)(1). The only "computers" Plaintiffs owned or leased for purposes of their CDAFA claim—their Apple devices—were all located outside of California.

jurisdiction'"); *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989) (holding "the Commerce Clause precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State" (cleaned up)). To apply California law "in a constitutionally permissible manner, [California] must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 818 (1985); *Arabian*, 2007 WL 627977, at *9. As just explained, such contacts are absent here. It would therefore "raise[] significant due process problems" for this Court to "adjudicat[e]" Plaintiffs' claims, which "lack a nexus with California." *Churchill Vill., LLC v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126-27 (N.D. Cal. 2000) (cleaned up).

### 2.   Plaintiffs do not state a CDAFA or trespass to chattels claim.

Extraterritoriality aside, Plaintiffs' CDAFA and trespass to chattels claims should be dismissed because they do not plead the necessary elements of those claims.

*First*, Plaintiffs' CDAFA claim fails for the same reason as their CFAA claim: they do not plead facts establishing any statutory "damage" or "loss." The CDAFA is "California's corollary to the CFAA," so the statutes' "necessary elements . . . do not differ materially." *NovelPoster*, 140 F. Supp. 3d at 950. In particular, the CDAFA, like the CFAA, requires a private plaintiff to establish that he "suffer[ed] damage or loss." Cal. Penal Code § 502(e)(1). Although the CDAFA does not itself define "damage" or "loss," courts in this Circuit have imported into the CDAFA the CFAA's treatment of those terms. *See NovelPoster*, 140 F. Supp. 3d at 950–51; *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 487–88 (N.D. Cal. 2021); *Nowak*, 2020 WL 6822888, at *5. Because Plaintiffs do not plead "damage" or "loss" under the CFAA, they also do not plead "damage" or "loss" under the CDAFA.

*Second*, Plaintiffs' claim for trespass to chattels should be dismissed because Plaintiffs do not plead the essential element that NSO's conduct "damage[d] the recipient computer system" or "interfere[d] with the intended functioning of the system, [such] as by significantly reducing its available memory and processing power" or by "prevent[ing]" Plaintiffs "from using [their] computers for any measurable length of time." *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1347

(2003). The court in *WhatsApp* dismissed a trespass to chattels claim against NSO for that exact reason, 472 F. Supp. 3d at 684–85, and this Court should do the same.

As in *Hamidi* and *WhatsApp*, Plaintiffs do not allege NSO's technology "damage[d], slow[ed], or impair[ed]" their Apple devices. *WhatsApp*, 472 F. Supp. 3d at 684. They allege "the attacks disabled certain Apple iOS features on the devices" (Compl. ¶ 161), but they do not and cannot plausibly claim that "disabl[ing] crash reporting to Apple" (*id.* ¶ 40) impaired *Plaintiffs'* ability to use their devices in any way. *Cf. Mount v. PulsePoint, Inc.*, 2016 WL 5080131, at *10 (S.D.N.Y. 2016) (rejecting argument that "one feature of a particular software application" can be a "chattel for purposes of a trespass claim"). Plaintiffs also allege "the attacks . . . infected the devices with spyware," which allegedly allowed El Salvador "to issue commands to the devices" (*id.* ¶ 161)—but, again, they do not allege that "impaired the *physical* functioning" of their devices. *WhatsApp*, 472 F. Supp. 3d at 684 (emphasis added). Plaintiffs do not allege, as they must, that their devices could no longer make phone calls, create documents, store data, or perform any of the devices' other "basic function[s]." *Hamidi*, 30 Cal. 4th at 1355.

Instead, Plaintiffs simply claim they became less comfortable using their devices for secure communications. (Compl. ¶ 161.) But "trespass to chattels [does] not lie to protect interests in privacy." *Casillas v. Berkshire Hathaway Homestate Ins. Co.*, 79 Cal. App. 5th 755, 765 (2022). So even if Plaintiffs' devices became "less valuable *to Plaintiffs* as tools for private communication" (Compl. ¶ 161 (emphasis added)), that change in Plaintiffs' subjective attitudes toward their devices does not constitute "physical harm *to the chattel*," which is what California law requires. *Hamidi*, 30 Cal. 4th at 1355 (emphasis added); *see Fields v. Wise Media, LLC*, 2013 WL 5340490, at *5 (N.D. Cal. Sept. 24, 2013) (holding plaintiffs could not "assert a claim for trespass to chattels absent actual physical harm or impairment to their phones"). Numerous cases, in addition to *WhatsApp*, have reached the same conclusion. *See Casillas*, 79 Cal. App. 5th at 764 (affirming dismissal of trespass to chattels claim based on defendants' "alleged copying of electronic files"); *Synopsys*, 313 F. Supp. 3d at 1080 (dismissing trespass to chattels claim based on alleged installation of data-gathering software because plaintiffs did not "allege[] facts showing that access *impaired* the intended functioning of [their] systems"); *Vertkin v. Vertkin*, 2007 WL

4287512, at *3 (N.D. Cal. Dec. 6, 2007) (holding allegation that defendant "install[ed] computer programs onto [p]laintiff's computer in order to obtain personal information" did not support trespass to chattels claim).

Finally, it is well-settled that Plaintiffs' alleged "costs incurred investigating and remediating the attacks, loss of professional goodwill, medical expenses and emotional distress" (Compl. ¶ 162) cannot support a claim for trespass to chattels. A trespass to chattels claim cannot be based on "consequential economic damage[s]," *Hamidi*, 30 Cal. 4th at 1347, such as medical expenses, "the expenditure of resources responding to the breach, and the loss of goodwill," *WhatsApp*, 472 F. Supp. 3d at 685. And Plaintiffs' alleged emotional distress obviously is not harm to their devices. *See Hamidi*, 30 Cal. 4th at 1359 (holding "injuries to . . . emotions" are not "protected" by trespass to chattels); *Atl. Recording Corp. v. Serrano*, 2007 WL 4612921, at *5 (S.D. Cal. Dec. 28, 2007) (dismissing trespass to chattels claim based on alleged "anxiety, mental distress, [and] emotional pain and suffering"). Plaintiffs thus have not pleaded that their devices were damaged, and their trespass to chattels claim should be dismissed.

## V.   CONCLUSION

The Court should dismiss Plaintiffs' complaint with prejudice.

DATED:  April 14, 2023

KING & SPALDING LLP

By:  */s/Joseph N. Akrotirianakis*
JOSEPH N. AKROTIRIANAKIS
AARON S. CRAIG
Attorneys for Defendants NSO GROUP
TECHNOLOGIES LTD. and Q CYBER
TECHNOLOGIES LTD.