1   JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
      *jakro@kslaw.com*
2   AARON S. CRAIG (Bar No. 204741)
      *acraig@kslaw.com*
3   KING & SPALDING LLP
    633 West Fifth Street, Suite 1700
4   Los Angeles, CA 90071
    Telephone:    (213) 443-4355
5   Facsimile:    (213) 443-4310

6   Attorneys for Defendants NSO Group Technologies LTD.
    And Q Cyber Technologies LTD.

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                       SAN FRANCISCO DIVISION

11

12   CARLOS DADA, SERGIO ARAUZ,              Case No. 3:22-cv-07513-JD
     GABRIELA CÁCERES GUTIÉRREZ, JULIA       [*The Honorable James Donato*]
13   GAVARRETE, ROMAN GRESSIER,
     GABRIEL LABRADOR, ANA BEATRIZ           **CORRECTED NOTICE OF MOTION**
14   LAZO ESCOBAR, EFREN LEMUS,              **AND MOTION OF DEFENDANTS TO**
     DANIEL LIZÁRRAGA, CARLOS LÓPEZ          **DISMISS FIRST AMENDED**
15   SALAMANCA, CARLOS MARTÍNEZ,             **COMPLAINT [FED. R. CIV. P. 12(B)(2),**
     ÓSCAR MARTÍNEZ, MARÍA LUZ               **(B)(6), FORUM NON CONVENIENS];**
16   NÓCHEZ, VÍCTOR PEÑA, NELSON             **MEMORANDUM OF POINTS AND**
     RAUDA ZABLAH, DANIEL REYES              **AUTHORITIES**
17   MARTÍNEZ, MAURICIO SANDOVAL
     SORIANO, and JOSÉ LUIS SANZ,            *[Filed Concurrently with Declarations of*
18                                           *Yaron Shohat and Roy Blecher and*
                 Plaintiffs,                 *[Proposed] Order]*
19
            v.                               Date:    May 25, 2023
20                                           Time:    10:00 a.m.
     NSO GROUP TECHNOLOGIES LTD.             Ctrm:    11
21   And Q CYBER TECHNOLOGIES LTD.,

22                                           Action Filed:  11/30/2022
                 Defendants.
23

24

25

26

27

28

---

TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 25, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard, Defendants NSO Group Technologies LTD. ("NSO") and Q Cyber Technologies LTD. ("Q Cyber" and, collectively, "NSO") will move the Court, the Honorable James Donato, U.S. District Judge, for an order dismissing Plaintiffs' First Amended Complaint ("Complaint" or "FAC") for *forum non conveniens* and under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declarations of Yaron Shohat ("Shohat Decl.") and Roy Blecher ("Blecher Decl.") submitted herewith, the pleadings, papers and records on file in this case, and such oral argument as may be presented at any hearing on this motion.

DATED:  April 21, 2023

KING & SPALDING LLP

By:  */s/Joseph N. Akrotirianakis*
JOSEPH N. AKROTIRIANAKIS
Attorneys for Defendants NSO and Q Cyber

# TABLE OF CONTENTS

Page(s)

I.      BACKGROUND ................................................................................................ 1

II.     PLAINTIFFS' CLAIMS CANNOT BE BROUGHT IN CALIFORNIA
OR THE U.S. .................................................................................................... 2

     A.     NSO is not subject to specific personal jurisdiction in California.................. 2

     B.     Exercising personal jurisdiction over NSO would be
unreasonable. ................................................................................................ 5

     C.     NSO is not subject to jurisdiction under Rule 4(k)(2). ................................. 6

     D.     The Complaint should be dismissed for *forum non conveniens*. .................... 7

III.    THE COMPLAINT DOES NOT STATE A CLAIM AGAINST NSO. .................... 9

     A.     Plaintiffs lack statutory standing to bring a private CFAA claim................... 9

     B.     The CFAA does not authorize aiding and abetting liability. ........................ 12

     C.     Plaintiffs cannot sue NSO under California law............................................ 13

     D.     Plaintiffs do not state a CDAFA or trespass to chattels claim...................... 14

IV.    CONCLUSION............................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adv. Fluid Sys. v. Huber*,
   28 F. Supp. 3d 306 (M.D. Pa. 2014) ...................................................................13

*Alcabes v. Capella Hotel Grp. LLC*,
   2015 WL 12697714 (C.D. Cal. July 8, 2015) .........................................................3

*Alternate Health USA Inc. v. Edalat*,
   2022 WL 767573 (C.D. Cal. Mar. 14, 2022) .......................................................8, 9

*Amoco Egypt Oil Co. v. Leonis Nav. Co.*,
   1 F.3d 848 (9th Cir. 1993) .....................................................................................6

*Andrews v. Sirius XM Radio Inc.*,
   932 F.3d 1253 (9th Cir. 2019) ...........................................................................9, 10

*Arabian v. Sony Elec. Inc.*,
   2007 WL 627977 (S.D. Cal. Feb. 22, 2007) .........................................................13

*Atl. Recording Corp. v. Serrano*,
   2007 WL 4612921 (S.D. Cal. Dec. 28, 2007) .......................................................15

*Better Holdco, Inc. v. Beeline Loans, Inc.*,
   2021 WL 3173736 (S.D.N.Y. July 26, 2021) ........................................................11

*Bose v. Interclick, Inc.*,
   2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011) .........................................................9

*Brodsky v. Apple Inc.*,
   445 F. Supp. 3d 110 (N.D. Cal. 2020) ..................................................................10

*Broidy Cap. Mgmt., LLC v. Qatar*,
   2018 WL 9943551 (C.D. Cal. Aug. 22, 2018) .........................................................4

*Calendar Res. LLC v. StubHub, Inc.*,
   2020 WL 4390391 (C.D. Cal. May 13, 2020) .........................................................9

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.*,
   334 F.3d 390 (4th Cir. 2003) .............................................................................4, 14

*Carijano v. Occidental Petrol. Corp.*,
   643 F.3d 1216 (9th Cir. 2011) ............................................................................7, 8

*Casillas v. Berkshire Hathaway Homestate Ins. Co.*,
   79 Cal. App. 5th 755 (2022) .................................................................................15

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
   511 U.S. 164 (1994)...................................................................................................12

*Contact Lumber Co. v. P.T. Moges Shipping Co.*,
   918 F.2d 1446 (9th Cir. 1990) ...............................................................................8, 9

*Core-Vent Corp. v. Nobel Indust. AB*,
   11 F.3d 1482 (9th Cir. 1993) ......................................................................................6

*Corrie v. Caterpillar, Inc.*,
   403 F. Supp. 2d 1019 (W.D. Wash. 2005)..................................................................7

*Cottle v. Plaid Inc.*,
   536 F. Supp. 3d 461 (N.D. Cal. 2021) .....................................................................14

*Creative Computing v. Getloaded.com LLC*,
   386 F.3d 930 (9th Cir. 2004)...............................................................................9, 10

*CrossFit, Inc. v. Fitness Tradesp.*
   *z o.o.*, 2020 WL 6449155 (S.D. Cal. Nov. 2, 2020)..................................................4

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)....................................................................................................3

*Del Vecchio v. Amazon.com, Inc.*,
   2011 WL 6325910 (W.D. Wash. Dec. 1, 2011) .......................................................10

*DHI Grp. v. Kent*,
   2017 WL 1088352 (S.D. Tex. Mar. 3, 2017)...........................................................13

*Doyle v. Taylor*,
   2010 WL 2163521 (E.D. Wash. May 24, 2010) ......................................................10

*Facebook, Inc. v. Studivz Ltd.*,
   2009 WL 1190802 (N.D. Cal. May 4, 2009) .............................................................8

*FAS Techs., Ltd. v. Dainippon Screene Mfg. Co.*,
   2001 WL 1159776 (N.D. Cal. Sept. 21, 2001) ........................................................13

*Fields v. Wise Media, LLC*,
   2013 WL 5340490 (N.D. Cal. Sept. 24, 2013) ........................................................15

*Flynn v. Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP*,
   2011 WL 2847712 (D. Nev. July 15, 2011) ......................................................12, 13

*FPK Servs. LLC v. Does 1-10*,
   2020 WL 5982061 (N.D. Cal. Oct. 8, 2020)..............................................................4

*Freeman v. DirecTV, Inc.*,
   457 F.3d 1001 (9th Cir. 2006) .................................................................................12

*Garland-Sash v. Lewis*,
   2011 WL 6188712 (S.D.N.Y. Dec. 6, 2011) ..................................................................10

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
   284 F.3d 1114 (9th Cir. 2002) ......................................................................................6

*Glob. Commodities Trading Grp. v. Beneficio de Arroz Choloma, S.A.*,
   972 F.3d 1101 (9th Cir. 2020) ......................................................................................7

*Goodman v. Goodman*,
   2022 WL 17826390 (S.D.N.Y. Dec. 21, 2022) ....................................................10, 12

*GreatFence.com v. Bailey*,
   726 F. App'x 260 (5th Cir. 2018) ................................................................................4

*Hancock v. Cty. of Rensselaer*,
   2014 WL 12961140 (N.D.N.Y. Sept. 24, 2014) ..........................................................10

*hiQ Labs, Inc. v. LinkedIn Corp.*,
   31 F.4th 1180 (9th Cir. 2022) ......................................................................................9

*Holland Am. Line Inc. v. Wartsila N.A., Inc.*,
   485 F.3d 450 (9th Cir. 2007) ......................................................................................7

*Hungerstation LLC v. Fast Choice LLC*,
   2020 WL 137160 (N.D. Cal. Jan. 13, 2020) ............................................................4, 5

*Hungerstation LLC v. Fast Choice LLC*,
   857 F. App'x 349 (9th Cir. 2021) ........................................................................ *passim*

*Intel Corp. v. Hamidi*,
   30 Cal. 4th 1342 (2003) ........................................................................................14, 15

*In re iPhone App. Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................................10, 11

*Israel Discount Bank Ltd. v. Schapp*,
   505 F. Supp. 2d 651 (C.D. Cal. 2007) ........................................................................6

*Koninklijke Philips N.V. v. Elec-Tech Int'l*,
   2015 WL 1289984 (N.D. Cal. Mar. 20, 2015)............................................................13

*Lueck v. Sundstrand Corp.*,
   236 F.3d 1137 (9th Cir. 2001) ......................................................................................8

*M Seven Sys. Ltd. v. Leap Wireless Int'l, Inc.*,
   2013 WL 12072526 (S.D. Cal. June 26, 2013)......................................................13, 14

*Motu Novu, LLC v. Percival*,
   2017 WL 7243462 (N.D. Cal. Dec. 1, 2017)................................................................4

*Mount v. PulsePoint, Inc.*,
   2016 WL 5080131 (S.D.N.Y. 2016) ............................................................................15

*MSC Safety Sols. v. Trivent Safety Consulting*,
   2020 WL 7425874 (D. Colo. Dec. 18, 2020) .............................................................11

*Norwest Mortg., Inc. v. Super. Ct.*,
   72 Cal. App. 4th 214 (1999) .......................................................................................13

*NovelPoster v. Javitch Canfield Grp.*,
   140 F. Supp. 3d 938 (N.D. Cal. 2014) ..............................................................12, 14

*Nowak v. Xapo, Inc.*,
   2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ..................................................13, 14

*Oman v. Delta Air Lines*,
   889 F.3d 1075 (9th Cir. 2018) ....................................................................................13

*Oracle Corp. v. SAG AG*,
   734 F. Supp. 2d 956 (N.D. Cal. 2010) ..............................................................13, 14

*Paccar Int'l v. Comm. Bank of Kuwait*,
   757 F.2d 1058 (9th Cir. 1985) ......................................................................................6

*Pimentel v. Aloise*,
   2018 WL 6025613 (N.D. Cal. Nov. 16, 2018) ..........................................................12

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) .......................................................................................................7

*Podium Corp. v. Chekkit Geolocation Servs.*,
   2021 WL 5772269 (D. Utah Dec. 6, 2021) ...............................................................13

*Precision Transducer Sys. v. STFO Trading LLC*,
   2009 WL 10700319 (C.D. Cal. Oct. 15, 2009) ...........................................................4

*Prevail Legal, Inc., v. Gordon*,
   2021 WL 1947578 (N.D. Cal. May 14, 2021) ............................................................4

*Ratha v. Phatthana Seafood Co.*,
   35 F.4th 1159 (9th Cir. 2022) ......................................................................................3

*Reflex Media, Inc. v. Chan*,
   2020 WL 6694316 (C.D. Cal. Oct. 30, 2020) ............................................................4

*Rosen v. Terapeak, Inc.*,
   2015 WL 12724071 (C.D. Cal. Apr. 28, 2015) .........................................................4

*Saffron Rewards, Inc. v. Rossie*,
   2022 WL 2918907 (N.D. Cal. July 25, 2022) ..........................................................11

*Sajfr v. BBG Comms., Inc.*,
    2012 WL 398991 (S.D. Cal. Jan. 10, 2012)..................................................................14

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) .........................................................................2, 3, 5

*Sonterra Cap. Master Fund v. Credit Suisse Grp.*,
    277 F. Supp. 3d 521 (S.D.N.Y. 2017)..............................................................................7

*StratusLive, LLC v. Wimr Grp.*,
    2020 WL 6305875 (E.D. Va. Oct. 14, 2020) ...................................................................4

*Sullivan v. Oracle Corp.*,
    51 Cal. 4th 1191 (2011) ..................................................................................................13

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
    313 F. Supp. 3d 1056 (N.D. Cal. 2018) ....................................................................9, 15

*Terpin v. AT&T Mobility, LLC*,
    399 F. Supp. 3d 1035 (C.D. Cal. 2019) ..........................................................................13

*Turner v. Hubbard Sys.*,
    2016 WL 1046949 (D. Mass. Mar. 10, 2016)..................................................................10

*United Fed'n of Churches v. Johnson*,
    598 F. Supp. 3d 1084 (W.D. Wash. 2022)................................................................10, 11

*Van Buren v. United States*,
    141 S. Ct. 1648 (2021)..................................................................................................9, 10

*Vertkin v. Vertkin*,
    2007 WL 4287512 (N.D. Cal. Dec. 6, 2007) ..................................................................15

*Walsh v. Microsoft Corp.*,
    63 F. Supp. 3d 1312 (W.D. Wash. 2014)..........................................................................12

*Wesch v. Yodlee, Inc.*,
    2021 WL 1399291 (N.D. Cal. Feb. 16, 2021) ................................................................12

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
    472 F. Supp. 3d 649 (N.D. Cal. 2020) ..................................................................... *passim*

*Zellerino v. Roosen*,
    2016 WL 10988763 (C.D. Cal. Aug. 22, 2016)..................................................................3

**Statutes**

Comprehensive Computer Data Access and Fraud Act,
    Cal. Penal Code § 502(e)(1)............................................................................................14

Computer Fraud and Abuse Act,
    18 U.S.C. § 1030 ........................................................................................ *passim*

Fed. R. Civ. P. 4(k)(2) ..................................................................................6, 7

**Other Authorities**

Kay Wiggins & Anna Gross, *Berkeley Research Group Lined Up to Take Control
    of Private Equity Owner of NSO*, Financial Times (July 31, 2021) .........................................3

John Scott-Railton *et al.*, *Project Torogoz*, Citizen Lab Research Report No. 148
    (Jan. 12, 2022) ................................................................................................2

## MEMORANDUM OF POINTS AND AUTHORITIES

A collection of Salvadoran journalists ask a single federal judge to serve as privacy police for the entire world, enforcing U.S. and California law against actions allegedly taken by foreign actors against foreign plaintiffs in foreign countries. Defendants, both Israeli entities, were not involved in what Plaintiffs claim happened to them. If, as Plaintiffs claim, their Apple devices were unlawfully accessed in El Salvador, Plaintiffs may exercise their rights to seek relief in Israeli or Salvadoran courts under Israeli or Salvadoran law. But Plaintiffs' claims have nothing to do with the U.S., let alone California, and have no place in this Court. ***First***, NSO is not subject to personal jurisdiction in this Court. Plaintiffs do not identify any case-related contacts that NSO intentionally created with California or the U.S., and they do not allege any of NSO's alleged conduct injured them in California. ***Second***, California is an improper forum under the doctrine of *forum non conveniens*. This lawsuit involves purely foreign plaintiffs, defendants, and alleged conduct, and the relevant evidence is located overseas. ***Third***, Plaintiffs do not state a claim for relief. They do not state a claim under the Computer Fraud and Abuse Act ("CFAA") because they do not allege they suffered the "damage" or "loss" the CFAA requires. California law cannot be applied to NSO's alleged foreign conduct. Plaintiffs' claim under California's Comprehensive Computer Data Access and Fraud Act ("CDAFA") fails for the same reason as their CFAA claim, and they do not plead the essential elements of their tort claims. The Court should dismiss the Complaint.

## I.      BACKGROUND

NSO designs and licenses to foreign governments a highly regulated technology used to investigate terrorism and serious crimes. (Shohat Decl. ¶¶ 5-9; FAC ¶ 32.) The export of NSO's "Pegasus" technology is regulated under Israel's Defense Export Control Law, and the Israeli Government determines the nations to which NSO may license its technology. (Shohat Decl. ¶¶ 5-6 & Exh. A.) NSO does not operate Pegasus; its government customers operate the technology and make all decisions about how to do so. (*Id.* ¶ 10.) NSO's license agreements prohibit the use of its technology against anyone who is not a suspected terrorist or criminal. (*Id.* ¶¶ 8, 10-11.)

Plaintiffs allege they are Salvadoran "journalists and others who write, produce, and publish El Faro, a digital newspaper based in El Salvador." (FAC ¶¶ 4, 14-31.) El Faro itself is not

a plaintiff. Almost every Plaintiff currently resides in El Salvador, and no Plaintiff alleges he or she has ever lived in California. (*Id.* ¶¶ 14-31.) Plaintiffs allege one of NSO's government customers used Pegasus to access their Apple devices "[b]etween June 2020 and November 2021," when all Plaintiffs were "working in and around El Salvador." (*Id.* ¶ 53.) The only alleged connection between NSO's alleged conduct and California is that Apple servers allegedly "facilitate the delivery and operation of Pegasus" and, "on information and belief," "some" of those servers "are located in California." (*Id.* ¶ 3.)

Plaintiffs allege they discovered the access to their Apple devices through an analysis by the third-party entity Citizen Lab. (*Id.* ¶¶ 41, 60-61.) The Citizen Lab report Plaintiffs incorporate into their Complaint linked the alleged access to a supposed "Pegasus customer operating almost exclusively in El Salvador," which "very likely … represents the Salvadoran government." John Scott-Railton *et al.*, *Project Torogoz*, Citizen Lab Research Report No. 148 at 1, 4-5 (Jan. 12, 2022), https://bit.ly/3zLUiJD; *see id.* at 8-9 (finding "a strong El Salvador government nexus"); (FAC ¶¶ 58, 63, 73, 77, 105 (linking alleged hacking to Salvadoran government).) Plaintiffs do not claim El Salvador's alleged use of Pegasus violated Salvadoran law or  technologically damaged their Apple devices. Plaintiffs do not allege El Salvador deleted, corrupted, or prevented them from accessing any of their files.

## II.   PLAINTIFFS' CLAIMS CANNOT BE BROUGHT IN CALIFORNIA OR THE U.S.

This is an action by foreign plaintiffs against foreign defendants for alleged acts committed on foreign soil by a foreign government acting under foreign law. Plaintiffs' purely foreign claims have no place in a court in California or the United States. The Court lacks personal jurisdiction over NSO and should dismiss the action for *forum non conveniens*.

### A.   NSO is not subject to specific personal jurisdiction in California.

To support specific jurisdiction over NSO, Plaintiffs must allege facts showing NSO "purposefully directed its activities toward California." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).[1] In a "tort" case like this one, that requires allegations

---

[1] Plaintiffs do not appear to claim NSO is subject to general jurisdiction, and for good reason. (FAC ¶ 10.) General jurisdiction exists only when a defendant's is "essentially at home" in the

showing NSO "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 802-03. Plaintiffs' claims must also "arise[] out of or relate[] to" NSO's "forum-related activities." *Id.* at 802.

Here, none of NSO's alleged conduct can support specific jurisdiction because Plaintiffs do not claim NSO harmed them "in the forum state." *Id.* at 803. No Plaintiff resides in California. (FAC ¶¶ 14-31.) Any harm Plaintiffs allegedly suffered occurred in their foreign residences, not California. *Zellerino v. Roosen*, 2016 WL 10988763, at *6-7 (C.D. Cal. Aug. 22, 2016); *Alcabes v. Capella Hotel Grp. LLC*, 2015 WL 12697714, at *4 (C.D. Cal. July 8, 2015).

That aside, Plaintiffs do not allege any case-related conduct NSO "expressly aimed" at California. *Schwarzenegger*, 374 F.3d at 803. All of NSO's alleged conduct took place overseas and, even taking Plaintiffs' allegations as true, was directed at Plaintiffs in El Salvador. (FAC ¶ 53.) Plaintiffs allege NSO (1) received funding from "California-based companies" (*id.* ¶ 34); (2) marketed its technology "to law enforcement agencies across the United States" through "Westbridge Technologies" (*id.*); and, "[o]n information and belief," "interact[ed] extensively with Apple's U.S.-based servers, many of which are in California" (*id.* ¶ 41). These allegations do not support specific jurisdiction in California, either individually or collectively.

***First***, NSO's past receipt of financing from California investors cannot support specific jurisdiction. Courts "measure the extent of a defendant's contacts with a forum 'at the time of the events underlying the dispute.'" *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1171 (9th Cir. 2022). Plaintiffs do not allege NSO received financing from California companies in June 2020 (FAC ¶ 34), and it did not. NSO's financing from Francisco Partners ended in February 2019, *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 675 (N.D. Cal. 2020). Berkeley Research Group does not fund NSO; it *manages* the investment fund that used to own a majority stake in NSO, and it began doing so after July 2021.[2] Anyway, Plaintiffs' claims do not relate to

_____

forum  state. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). NSO is "at home" only in Israel, its "place of incorporation" and "principal place of business." *Id.* at 137; (see FAC ¶¶ 32-33).

[2] Kay Wiggins & Anna Gross, *Berkeley Research Group Lined Up to Take Control of Private Equity Owner of NSO*, Financial Times (July 31, 2021), https://on.ft.com/406abVL.

NSO's financing. *WhatsApp*, 472 F. Supp. 3d at 675. Plaintiffs do not allege otherwise.

**Second**, NSO's alleged marketing of its "technology to U.S. government agencies" shows no connection to California, and Plaintiffs do not allege the FBI used the "version of Pegasus" it allegedly purchased from NSO to access any of Plaintiffs' devices. (FAC ¶ 34.) Plaintiffs' alleged marketing to "the Los Angeles and San Diego Police Departments" is likewise irrelevant to Plaintiffs' claims. (*Id.*) Plaintiffs do not allege NSO sold Pegasus to those departments or that either department was involved in El Salvador's alleged access to Plaintiffs' devices. Therefore, Plaintiffs' claims do not arise out of or relate to any of NSO's alleged U.S. marketing activities.

**Third**, any use of Apple servers in California cannot support specific jurisdiction. Plaintiffs do not plead any facts plausibly suggesting that NSO *did* use Apple's California-based servers. Plaintiffs simply assert, entirely "[o]n information and belief," that some of Apple's servers are in California. (*Id.* ¶¶ 3, 41.) Plaintiffs do not plead *any* factual basis for that assertion, and such "jurisdictional allegations based on information and belief are insufficient to confer jurisdiction." *Reflex Media, Inc. v. Chan*, 2020 WL 6694316, at *3 (C.D. Cal. Oct. 30, 2020).[3]

In any event, courts uniformly reject Plaintiffs' theory that specific jurisdiction can be based on a defendant's use of third-party servers in the forum state. *E.g.*, *Hungerstation LLC v. Fast Choice LLC*, 2020 WL 137160, at *5 (N.D. Cal. Jan. 13, 2020), *aff'd*, 857 F. App'x 349 (9th Cir. 2021).[4] In *Hungerstation*, the plaintiff sued the defendants under the CFAA for stealing data the plaintiff stored on third-party California servers. 2020 WL 137160, at *1-2. The court held the "presence of servers in California" was "insufficient to find that [d]efendants expressly aimed their conduct at California." *Id.* at *5. Because the plaintiff itself did "not have a server in California"

---

[3] *Accord Motu Novu, LLC v. Percival*, 2017 WL 7243462, at *1 (N.D. Cal. Dec. 1, 2017); *Precision Transducer Sys. v. STFO Trading LLC*, 2009 WL 10700319, at *4 (C.D. Cal. Oct. 15, 2009).

[4] *Accord Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 402 (4th Cir. 2003); *GreatFence.com v. Bailey*, 726 F. App'x 260, 261 (5th Cir. 2018); *Prevail Legal, Inc., v. Gordon*, 2021 WL 1947578, at *5-6 (N.D. Cal. May 14, 2021); *Broidy Cap. Mgmt., LLC v. Qatar*, 2018 WL 9943551, at *7 (C.D. Cal. Aug. 22, 2018); *CrossFit, Inc. v. Fitness Trade sp. z o.o.*, 2020 WL 6449155, at *5 (S.D. Cal. Nov. 2, 2020); *Prevail Legal*, 2021 WL 1947578, at *5; *WhatsApp*, 472 F. Supp. 3d at 671; *FPK Servs. LLC v. Does 1-10*, 2020 WL 5982061, at *1-2 (N.D. Cal. Oct. 8, 2020); *StratusLive, LLC v. Wimr Grp.*, 2020 WL 6305875, at *4 (E.D. Va. Oct. 14, 2020); *Broidy*, 2018 WL 9943551, at *7; *Rosen v. Terapeak, Inc.*, 2015 WL 12724071, at *9 (C.D. Cal. Apr. 28, 2015).

and neither "part[y] ha[d] control over where the identified third parties located their servers," the location of those servers was "pure happenstance." *Id.* The Ninth Circuit affirmed, holding the defendants were not subject to jurisdiction *anywhere in the United States* because "the location of the servers was fortuitous." *Hungerstation*, 857 F. App'x at 351. Jurisdiction is not "proper over a private foreign entity solely because that entity engaged in tortious foreign conduct from a location outside the United States by remotely accessing servers located in the United States." *Id.*

That rule forecloses Plaintiffs' reliance on the "pure happenstance" that Apple located some of its servers in California. *Hungerstation*, 2020 WL 137160, at *5. Contrary to the Complaint, the *WhatsApp* court did not "exercise[] personal jurisdiction over [NSO] based on substantially similar facts." (FAC ¶ 10.) The court interpreted WhatsApp's complaint to allege NSO intentionally "sought out specific [California-based] servers" *owned by WhatsApp*. 472 F. Supp. 3d at 671-72. The court found it "critical" that "the servers in question [were] not owned by third parties" because, under *Hungerstation*, "the mere location of a third party or its servers is insufficient to give rise to personal jurisdiction." *Id.* at 671 (cleaned up). Plaintiffs, in contrast, do not allege NSO accessed *their* computers in California. They allege NSO used a *third party's* servers while designing technology used entirely in foreign countries by foreign governments. (FAC ¶ 38.) Even under *WhatsApp*, then, the alleged location of Apple's servers "is fortuitous" and thus cannot support jurisdiction. 472 F. Supp. 3d at 671.

**B.    Exercising personal jurisdiction over NSO would be unreasonable.**

Separate from the "purposeful direction" analysis, due process requires a court's exercise of specific jurisdiction to "not be unreasonable." *Schwarzenegger*, 374 F.3d at 802. Courts "consider seven factors" when deciding the reasonableness of personal jurisdiction:

> (1) [T]he extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Hungerstation*, 857 F. App'x at 352. In *Hungerstation*, the Ninth Circuit found personal jurisdiction in California would be unreasonable in circumstances not meaningfully distinguishable from those

present here. This Court should do likewise because every factor favors dismissal.

The *first* factor favors dismissal. Plaintiffs are "nonresident[s]," so NSO's alleged interjection into California [is] negligible." *Paccar Int'l v. Comm. Bank of Kuwait*, 757 F.2d 1058, 1064-65 (9th Cir. 1985). NSO's only alleged conduct in California is its "fortuitous" use of Apple servers, which does not make personal jurisdiction reasonable. *Hungerstation*, 857 F. App'x at 351. The *second* and *fifth* factors favor dismissal because NSO "is incorporated in [Israel], owns no property in the forum, and has no employees … there." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1125-26 (9th Cir. 2002); (*see* Shohat Decl. ¶ 4). As to the *sixth* factor, Plaintiffs' convenience is always "insignificant," *Core-Vent Corp. v. Nobel Indust. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993), and is particularly trivial when no Plaintiff lives in California.

The *third* factor favors dismissal because exercising jurisdiction over Israeli corporations with no presence in California conflicts with Israel's sovereignty. Whenever a "defendant is from a foreign nation rather than another state, the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction." *Amoco Egypt Oil Co. v. Leonis Nav. Co.*, 1 F.3d 848, 852 (9th Cir. 1993). That is even more true here because of Israel's own regulation and review of NSO's operations, details of which would need to be disclosed for NSO to defend this action. (Shohat Decl. ¶¶ 3, 5-9.) Israel has a strong national-security interest in preventing the disclosure of that information, which Israel's export control laws prohibit NSO from disclosing without prior government approval. (*Id.*) In contrast, under the *fourth* factor, California has no interest in resolving a dispute brought by nonresident plaintiffs against two Israeli companies related to conduct entirely in and by foreign nations. *See Paccar*, 757 F.2d at 1065.

Finally, the *seventh* factor favors dismissal because Israel is an adequate alternative forum. *WhatsApp*, 472 F. Supp. 3d at 677. "Courts routinely hold that Israel is a proper forum and dismiss cases on the grounds that it would be more appropriate to hear a case in Israel." *Israel Discount Bank Ltd. v. Schapp*, 505 F. Supp. 2d 651, 659 (C.D. Cal. 2007) (citing cases).

### C.     NSO is not subject to jurisdiction under Rule 4(k)(2).

As a fallback, Plaintiffs assert nationwide jurisdiction under Rule 4(k)(2). (FAC ¶ 11.) But just as Plaintiffs do not show NSO "purposefully direct[ed]" case-related activity at California,

they do not show NSO did so toward the United States. *Hungerstation*, 847 F. App'x at 351. *Hungerstation* rejected Plaintiffs' theory that Rule 4(k)(2) allows jurisdiction "over a private foreign entity solely because that entity engaged in tortious conduct from a location outside of the United States by remotely accessing servers located in the United States." *Id.*; *accord Sonterra Cap. Master Fund v. Credit Suisse Grp.*, 277 F. Supp. 3d 521, 590 (S.D.N.Y. 2017). NSO's alleged U.S. marketing activities (FAC ¶ 34) do not give rise or relate to Plaintiffs' claims. Finally, Plaintiffs cannot allege their "harm" was "suffered in" the United States, *Hungerstation*, 847 F. App'x at 351, because none of them lived there when their devices were allegedly accessed. (FAC ¶ 53.) Plaintiffs thus cannot show NSO has "minimum contacts" with the United States under Rule 4(k)(2). *Id.* at 351-52; *Holland Am. Line Inc. v. Wartsila N.A., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007) (rejecting Rule 4(k)(2) jurisdiction based on "scant, fleeting, and attenuated" U.S. contacts). Moreover, exercising personal jurisdiction over NSO in the United States would be unreasonable for the same reasons it is unreasonable in California. *Hungerstation*, 847 F. App'x at 352.

**D.    The Complaint should be dismissed for *forum non conveniens*.**

The Complaint should be dismissed for *forum non conveniens* even if NSO were subject to personal jurisdiction Dismissal is appropriate because Israel is "an adequate alternative forum" and the "private" and "public" factors favor dismissal. *Glob. Commodities Trading Grp. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1110 (9th Cir. 2020).

1.  A court in this District has already found that Israel is an adequate alternative forum for claims against NSO. *WhatsApp*, 472 F. Supp. 3d at 677. A foreign jurisdiction is adequate "when the defendant is 'amenable to process'" there. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981). As a citizen of Israel, NSO is amenable to process in Israel. Israel can also "provide 'some remedy'" for Plaintiffs' claims, *Carijano v. Occidental Petrol. Corp.*, 643 F.3d 1216, 1225-26 (9th Cir. 2011), because "Israeli tort law provides adequate remedies for plaintiffs injured as a result of tortious conduct," *Corrie v. Caterpillar, Inc.*, 403 F. Supp. 2d 1019, 1026 (W.D. Wash. 2005).

2.  The "private" *forum non conveniens* factors—"(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of

1   bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical

2   problems that make trial of a case easy, expeditious and inexpensive"—favor dismissal. *Carijano*,

3   643 F.3d at 1229; *see Facebook, Inc. v. Studivz Ltd.*, 2009 WL 1190802, at *3 (N.D. Cal. May 4,

4   2009) (finding "private interest factors" favored dismissal where foreign witnesses were more

5   important than U.S. witnesses, testimony of foreign witnesses could likely not "be compelled in

6   this Court," and foreign judgment would be "more effective" than U.S. judgment (cleaned up)).

7          The burden on NSO to litigate in California is great—it is located in Israel and has no

8   property or employees in California. (Shohat Decl. ¶ 4.) Plaintiffs are also all located outside of

9   California, almost entirely in El Salvador. (FAC ¶ 14-31.) Consequently, the key witnesses and

10  evidence related to Plaintiffs' claims against NSO would be located in El Salvador, Israel, and

11  other foreign jurisdictions. Much of that evidence may prove unavailable in this Court. Israeli

12  witnesses cannot be compelled to appear in the United States. *Contact Lumber Co. v. P.T. Moges*

13  *Shipping Co.*, 918 F.2d 1446, 1451 (9th Cir. 1990) (holding defendant could not "compel [foreign]

14  witnesses to appear before U.S. courts"); *Alternate Health USA Inc. v. Edalat*, 2022 WL 767573, at

15  *8-9 (C.D. Cal. Mar. 14, 2022) (holding defendant could not compel Canadian witnesses "to testify in

16  American courts"). And Israeli law imposes strict limits on the information NSO and its employees

17  may disclose outside of Israel. (Shohat Decl. ¶¶ 3, 5-9 & Exh. A.) Israeli witnesses could thus testify

18  if this case were litigated in Israel, but they could not give the same testimony for use in this Court.

19  *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1147 (9th Cir. 2001) (holding "private interest

20  factors weigh in favor of dismissal" when foreign evidence is not fully under parties' control).

21         Finally, any potential judgment against NSO "would be easier to enforce" in Israel. *Edalat*,

22  2022 WL 767573, at *9. That "weighs strongly in favor of dismissal." *Id.*

23         3.  The "public factors"—"(1) the local interest in the lawsuit, (2) the court's familiarity

24  with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and

25  (5) the costs of resolving a dispute unrelated to a particular forum"—also favor dismissal.

26  *Carijano*, 643 F.3d at 1232. There is no meaningful "local interest" in this case; California has no

27  interest in foreign plaintiffs' claims against foreign defendants based on foreign conduct. Israel, in

28  contrast, has strong national-security interests, including protecting information governed by

Israel's export control laws or related to the Israeli government's decisions whether to approve particular NSO customers. (Shohat Decl. ¶¶ 5-9). For the same reason, Israel's courts would have a greater interest in and "understanding of the circumstances surrounding the dispute." *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1453 (9th Cir. 1990). And because "the local interest … is weak as compared to the alternative forum's interest," the "burden on local courts and juries, and the related costs, are not justified." *Edalat*, 2022 WL 767573, at *11.

## III.   THE COMPLAINT DOES NOT STATE A CLAIM AGAINST NSO.

Even if this case could proceed in California, Plaintiffs do not adequately plead their claims.

### A.   Plaintiffs lack statutory standing to bring a private CFAA claim.

A private CFAA plaintiff must *both* have "suffere[d] damage or loss *and* establish that the defendant's "conduct involve[d]" one of five enumerated "factors." 18 U.S.C. § 1030(g). The only potentially relevant factor here applies when the plaintiffs incur a "loss … aggregating at least $5,000 in value." *Id.* § 1030(c)(4)(A)(i)(I). In a suit under that section, "[d]amages … are limited to economic damages." *Id.* § 1030(g); *Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 935 (9th Cir. 2004). "Only economic damages or loss can be used to meet the $5,000.00 threshold." *Bose v. Interclick, Inc.*, 2011 WL 4343517, at *4 (S.D.N.Y. Aug. 17, 2011).

Plaintiffs do not satisfy this provision because they do not adequately allege they suffered $5,000 in economic "damage" or "loss," as the CFAA defines those terms. The CFAA's definitions of "damage" and "loss" are narrow. *Van Buren v. United States*, 141 S. Ct. 1648, 1659-60 (2021); *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1262-63 (9th Cir. 2019). "[D]amage" requires "impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). "The term 'loss' likewise relates to costs caused by harm to computer data, programs, systems, or information services." *Van Buren*, 141 S. Ct. at 1659-60 (citing § 1030(e)(11)). "Damage" and "loss" are thus both "[l]imit[ed]" to "technological harms—such as the corruption of files." *Id.*[5] The "mere copying of data" does not qualify. *Calendar Res. LLC v. StubHub, Inc.*, 2020 WL 4390391, at *22 (C.D. Cal. May 13, 2020); *see Synopsys, Inc. v. Ubiquiti Networks, Inc.*,

---

[5] The CFAA, as a criminal statute, is further limited by the "rule of lenity." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1200-01 (9th Cir. 2022).

313 F. Supp. 3d 1056, 1071-72 (N.D. Cal. 2018). Neither does the "value" of that data. *Andrews*, 932 F.3d at 1262-63; *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 130-31 (N.D. Cal. 2020).

Plaintiffs do not allege any statutory "damage" to their devices or data. The alleged "install[ation of] third-party utilities which extracted data" is not "damage" to a computer unless the computer "was actually impaired" or "its systems were otherwise harmed" by the removal of data. *Goodman v. Goodman*, 2022 WL 17826390, at *7 (S.D.N.Y. Dec. 21, 2022) (cleaned up).[6] Plaintiffs, however, do not allege NSO's technology deleted, corrupted, or impaired any data on their devices, or caused "any difference whatsoever in the performance of [their] computer[s]." *In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1066 (N.D. Cal. 2012). Plaintiffs claim "the attacks disabled certain Apple iOS features on the devices" (FAC ¶ 140), but their other allegations make clear that did not injure *Plaintiffs*. They allege "Pegasus disables crash reporting to Apple" (*id.* ¶ 40), which would have no effect on Plaintiffs' ability to use their devices or access their data.

Nor do Plaintiffs plead statutory "loss." They say they "alter[ed] how [they] use[] [their] device[s]," which "diminished the[ir] value." (*Id.* ¶ 67.) But that subjective loss of value *to Plaintiffs* is not economic loss or "technological harm[]" *to the devices*, so it does not constitute "loss." *Van Buren*, 141 S. Ct. at 1659-60; *see iPhone*, 844 F. Supp. 2d at 1067 (holding allegation access "diminished the value of [plaintiff's] computer" did not establish loss; *United Fed'n of Churches v. Johnson*, 598 F. Supp. 3d 1084, 1097 (W.D. Wash. 2022) (holding plaintiff's "'lost ability to communicate' with its members" was not "cognizable under the CFAA"). Similarly, Plaintiffs' alleged "mental anguish" or medical expenses (FAC ¶¶ 71, 87), are not "loss" because they are not economic "costs actually related to computers." *Garland-Sash v. Lewis*, 2011 WL 6188712, at *4 (S.D.N.Y. Dec. 6, 2011) (holding "emotional injury" not "loss").[7]

---

[6] *See also Del Vecchio v. Amazon.com, Inc.*, 2011 WL 6325910, at *4 (W.D. Wash. Dec. 1, 2011) (holding "transfer of cookies to [p]laintiffs' computers" not damage or loss without noticeable "difference … in the performance of [the] computer"); *Doyle v. Taylor*, 2010 WL 2163521, at *2 (E.D. Wash. May 24, 2010) (holding theft of file from thumb drive not damage or loss unless the "drive itself was somehow damaged or impaired").

[7] *See Hancock v. Cty. of Rensselaer*, 2014 WL 12961140, at *5-6 (N.D.N.Y. Sept. 24, 2014) (same, for "emotional harm"); *Turner v. Hubbard Sys.*, 2016 WL 1046949, at *12 (D. Mass. Mar. 10, 2016) ("emotional distress"); *cf. Creative Computing*, 386 F.3d at 935 ("The statutory restriction, 'limited

Plaintiffs also cannot plead loss by claiming they "incurred significant costs in investigating and remediating the attacks" because they do not allege they *paid* for any investigation or remediation. (FAC ¶ 67.) They allegedly spent *time*, but they do not allege any facts from which the Court could assign a monetary value to that time or conclude it constitutes *economic* loss. Plaintiffs thus cannot show their "lost time was a CFAA-qualifying loss." *MSC Safety Sols. v. Trivent Safety Consulting*, 2020 WL 7425874, at *9 (D. Colo. Dec. 18, 2020) (cleaned up).

In addition, the CFAA limits investigatory and remediation "loss" to costs specifically from "damage assessment[s]" and "restoring the data, program, system, or information to its condition prior to the offense." 18 U.S.C. § 1030(e)(11); *see Saffron Rewards, Inc. v. Rossie*, 2022 WL 2918907, at *8 (N.D. Cal. July 25, 2022) (holding investigatory "loss" requires "damages assessments or data restorations"). Plaintiffs do not allege any investigation assessed "damage" to their devices (they do not identify any such "damage") or "restor[ed]" data (they do not allege any data was deleted). They thus do not plead any investigation qualifying as "loss." *Better Holdco, Inc. v. Beeline Loans, Inc.*, 2021 WL 3173736, at *4 (S.D.N.Y. July 26, 2021) (holding investigation into "download[ing] and cop[ying] of … data" was not "loss" absent "alleg[ation] that [plaintiff] lost service or access to its data, or that its systems were otherwise harmed").

At a minimum, Plaintiffs have not alleged facts establishing their alleged losses totaled $5,000. 18 U.S.C. § 1030(c)(4)(A)(i)(I). Plaintiffs "may aggregate individual damages … to meet the [$5,000] damages threshold if the [CFAA] violation can be described as 'one act.'" *iPhone*, 844 F. Supp. 2d at 1066. Here, though, Plaintiffs' claims are based on multiple alleged "attacks" against distinct Plaintiffs' distinct devices on many separate occasions over 18 months. (FAC ¶ 5.) Plaintiffs allege no facts from which the Court could conclude all those distinct actions constitute "one act." *iPhone*, 844 F. Supp. 2d at 1066; *see Johnson*, 598 F. Supp. 3d at 1094 (holding "intrusions into the Facebook, Google, and Twitter systems must be treated as three separate violations" for aggregation). Plaintiffs do not claim any *individual* Plaintiff suffered $5,000 in economic losses, so they cannot satisfy the CFAA's damages threshold.

---

to economic damages,' precludes damages for … mental distress").

Even if Plaintiffs could aggregate their losses, they do not adequately plead the total would equal $5,000. They assert the "costs incurred by Plaintiffs *as well as those incurred by El Faro* … exceeded $5,000." (FAC ¶ 139 (emphasis added).) But El Faro is not a plaintiff, so its alleged losses do not count toward the threshold. *Walsh v. Microsoft Corp.*, 63 F. Supp. 3d 1312, 1320 (W.D. Wash. 2014) ("Plaintiffs must meet the [$5,000] damages requirement themselves"). Plaintiffs do not claim *their* losses, separate from El Faro's, totaled $5,000.[8]

### B. The CFAA does not authorize aiding and abetting liability.

Because NSO does not operate its technology and could not have accessed any of Plaintiffs' devices, Plaintiffs base their CFAA claim in part on an aiding and abetting theory. (FAC ¶ 149.) The CFAA, however, does not authorize aiding and abetting liability in civil actions.

Whether a federal statute creates civil aiding and abetting liability depends on the statutory text. *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176-77, 182-83 (1994); *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004-06 (9th Cir. 2006). "While Congress has enacted a general aiding and abetting statute applicable to all federal criminal offenses," it "has provided (or not provided) for such civil liability on a statute-by-statute basis." *Pimentel v. Aloise*, 2018 WL 6025613, at *21 (N.D. Cal. Nov. 16, 2018). When Congress "impos[es] aiding and abetting liability," it "use[s] the words 'aid' and 'abet' in the statutory text." *Cent. Bank of Denver*, 511 U.S. at 177 (citing examples). Absent such an "explicit provision," a statute does not create civil aiding and abetting liability. *Freeman*, 457 F.3d at 1006.

The CFAA does not provide for civil aiding and abetting liability. The "statute's plain language sets forth who is liable": "a primary violator, a person who attempts a primary violation, and a co-conspirator of a primary violator." *Flynn v. Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP*, 2011 WL 2847712, at *3 (D. Nev. July 15, 2011); *see* 18 U.S.C.

---

[8] *Wesch v. Yodlee, Inc.*, 2021 WL 1399291, at *7 (N.D. Cal. Feb. 16, 2021) (rejecting "conclusory" allegation plaintiff incurred $5,000 from "damage assessments [and] restoring the data"); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 949 (N.D. Cal. 2014) (dismissing complaint "'devoid of any specific details from which a factfinder could calculate an amount of loss'"); *Goodman*, 2022 WL 17826390, at *10 (dismissing claim because plaintiff did not "quantify the costs associated with his alleged losses").

§ 1030(a)-(b). That language does not encompass aiders and abettors. This Court should therefore join the many others that have held the CFAA does not create civil aiding and abetting liability.[9] It should dismiss Plaintiffs' CFAA claim for aiding and abetting.

### C.   Plaintiffs cannot sue NSO under California law.

Plaintiffs' California law claims should be dismissed because "there is a presumption against California law being given extraterritorial effect." *Arabian v. Sony Elec. Inc.*, 2007 WL 627977, at *9 (S.D. Cal. Feb. 22, 2007). California law "does not apply to out-of-state conduct that does not cause injury in California." *Oracle Corp. v. SAG AG*, 734 F. Supp. 2d 956, 968 (N.D. Cal. 2010).

This prohibition applies to Plaintiffs' CDAFA and tort claims. California statutes cannot apply "to occurrences outside the state" unless a contrary intent is "clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) (cleaned up). The CDAFA "contains no express declaration that it was designed or intended to regulate claims of non-residents arising from conduct occurring entirely outside of California." *Norwest Mortg., Inc. v. Super. Ct.*, 72 Cal. App. 4th 214, 222, (1999). Courts have thus held the CDAFA cannot apply to conduct outside of California. *Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *6 (N.D. Cal. Nov. 20, 2020); *Terpin v. AT&T Mobility, LLC*, 399 F. Supp. 3d 1035, 1047-48 (C.D. Cal. 2019); *M Seven Sys. Ltd. v. Leap Wireless Int'l, Inc.*, 2013 WL 12072526, at *3 (S.D. Cal. June 26, 2013). The same restriction applies to Plaintiffs' tort claims. *Oracle*, 734 F. Supp. 2d at 967-68; *FAS Techs., Ltd. v. Dainippon Screene Mfg. Co.*, 2001 WL 1159776, at *2 (N.D. Cal. Sept. 21, 2001).

Plaintiffs' California claims require an impermissible extraterritorial application of California law because NSO's alleged "conduct occur[rred] outside of California." *Oman v. Delta Air Lines*, 889 F.3d 1075, 1079 (9th Cir. 2018). Plaintiffs do not reside—and thus suffered no injury—in California. (FAC ¶¶ 14-31.) NSO's alleged conduct occurred entirely in Israel. (*Id.* ¶¶ 32-33.) And

---

[9] *Podium Corp. v. Chekkit Geolocation Servs.*, 2021 WL 5772269, at *8-9 (D. Utah Dec. 6, 2021); *DHI Grp. v. Kent*, 2017 WL 1088352, at *7 (S.D. Tex. Mar. 3, 2017); *Adv. Fluid Sys. v. Huber*, 28 F. Supp. 3d 306, 328 (M.D. Pa. 2014); *Flynn*, 2011 WL 2847712, at *3; *cf. Koninklijke Philips N.V. v. Elec-Tech Int'l*, 2015 WL 1289984, at *4 (N.D. Cal. Mar. 20, 2015) ("encourag[ing]" a CFAA violation "does not support a theory of liability").

El Salvador's alleged use of NSO's technology to investigate Plaintiffs occurred in El Salvador or other foreign countries. (*Id.* ¶ 53.) California law does not reach such foreign "acts of citizens of a foreign jurisdiction." *M. Seven Sys.*, 2013 WL 12072526, at *3; *see Oracle*, 734 F. Supp. 2d at 968 (finding California law did not apply to claims by "non-resident" plaintiff that "suffered no injury in California" when defendant's conduct "occurred in Texas and Europe"). NSO's alleged use of some California-based Apple servers (FAC ¶ 3) is too "de minimis," *Carefirst*, 334 F.3d at 402, and "fortuitous," *Hungerstation*, 857 F. App'x at 351, to change this conclusion. Such trivial, incidental contact with California would not "show a sufficient nexus between California and [NSO's] alleged wrongful conduct" to apply California law. *Nowak*, 2020 WL 6822888, at *6 (holding CDAFA did not apply to hacking of foreign plaintiff's California Bitcoin account); *see Sajfr v. BBG Comms.*, 2012 WL 398991, at *4 (S.D. Cal. Jan. 10, 2012) (holding California law did not apply to foreign "telephone calls" that were "rated and billed from San Diego").

### D. Plaintiffs do not state a CDAFA or trespass to chattels claim.

Plaintiffs also do not plead the elements of their California claims. ***First***, Plaintiffs' CDAFA claim fails for the same reason as their CFAA claim: they do not plead any statutory "damage" or "loss." The CDAFA, like the CFAA, requires Plaintiffs to plead "damage or loss." Cal. Penal Code § 502(e)(1). Courts have imported into the CDAFA the CFAA's treatment of those terms. *NovelPoster*, 140 F. Supp. 3d at 950-51; *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 487-88 (N.D. Cal. 2021); *Nowak*, 2020 WL 6822888, at *5. Because Plaintiffs do not plead "damage" or "loss" under the CFAA, they also do not plead "damage" or "loss" under the CDAFA.

***Second***, Plaintiffs' claim for trespass to chattels should be dismissed because Plaintiffs do not plead NSO's conduct "damage[d] the recipient computer system" or "interfere[d] with the intended functioning of the system, [such] as by significantly reducing its available memory" or preventing Plaintiffs "from using [their] computers for any measurable length of time." *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1347 (2003). *WhatsApp* dismissed a trespass to chattels claim against NSO for that exact reason, 472 F. Supp. 3d at 684-85, and this Court should do the same.

Plaintiffs do not allege NSO's technology "damage[d], slow[ed], or impair[ed]" their devices. *Id*. They allege "the attacks disabled certain Apple iOS features" (FAC ¶ 161), but they

cannot plausibly claim "disabl[ing] crash reporting to Apple" (*id.* ¶ 40) impaired Plaintiffs' ability to use their devices. *Cf. Mount v. PulsePoint, Inc.*, 2016 WL 5080131, at *10 (S.D.N.Y. 2016) (holding "one feature of a particular software application" is not a "chattel"). They do not allege the "spyware" allegedly installed on their devices (FAC ¶ 161) "impaired the physical functioning" of their devices. *WhatsApp*, 472 F. Supp. 3d at 684; *see Fields v. Wise Media, LLC*, 2013 WL 5340490, at *5 (N.D. Cal. Sept. 24, 2013) (dismissing trespass claim "absent actual physical harm or impairment to [plaintiffs'] phones"). Plaintiffs do not allege their devices could no longer make phone calls, store data, or perform any of the devices' other "basic function[s]." *Hamidi*, 30 Cal. 4th at 1355. Instead, they claim they became less comfortable using their devices for secure communications. (FAC ¶ 161.) But "trespass to chattels [does] not lie to protect interests in privacy." *Casillas v. Berkshire Hathaway Homestate Ins. Co.*, 79 Cal. App. 5th 755, 765 (2022).[10]

Finally, Plaintiffs' alleged "costs incurred investigating and remediating the attacks, loss of professional goodwill, medical expenses and emotional distress" (FAC ¶ 162) cannot support their claim. A trespass to chattels claim cannot be based on such "consequential economic damage[s]." *Hamidi*, 30 Cal. 4th at 1347; *WhatsApp*, 472 F. Supp. 3d at 685. The same is true for Plaintiffs' alleged emotional distress. *Hamidi*, 30 Cal. 4th at 1359; *Atl. Recording Corp. v. Serrano*, 2007 WL 4612921, at *5 (S.D. Cal. Dec. 28, 2007). Plaintiffs have not pleaded their devices were damaged, so their trespass claim should be dismissed.

## IV.    CONCLUSION

The Court should dismiss Plaintiffs' Complaint with prejudice.

DATED:  April 21, 2023

KING & SPALDING LLP

By:  */s/Joseph N. Akrotirianakis*
JOSEPH N. AKROTIRIANAKIS
Attorneys for Defendants NSO and Q Cyber

---

[10] *Synopsys*, 313 F. Supp. 3d at 1080 (dismissing trespass claim based on alleged installation of data-gathering software absent "facts showing that access *impaired* the intended functioning of [plaintiffs'] systems"); *Vertkin v. Vertkin*, 2007 WL 4287512, at *3 (N.D. Cal. Dec. 6, 2007) (holding installation of "computer programs onto [p]laintiff's computer in order to obtain personal information" did not support trespass to chattels claim).