# EXHIBIT A

# Defense Export Control Law, 5766-2007

Unofficial Translation

## Office of the General Counsel

## Ministry of Defense

October 2007

UNOFFICIAL TRANSLATION (October 29th, 2007)

## Defense Export Control Law, 5766-2007

### Chapter A: Objective

**Objective** 1. The objective of this law is to regulate state control of the export of defense equipment, the transfer of defense know-how and the provision of defense services, for reasons of national security considerations, foreign relations considerations, international obligations and other vital interests of the State.

### Chapter B: Definitions

**Definitions** 2. In this law –

| | |
|---|---|
| **"Defense export control division"** | The defense export control division at the ministry of defense; |
| **"Israeli citizen"** | as implied in the Law of Citizenship, 5712 – 1952; |
| **"Means of control"** | In a corporation - each one of the following - |

(1) The right to vote at a general assembly of a company or analogous entity of another corporation;

(2) The right or the capacity to appoint, alone or with another entity, a Director or Director General, and similar officers in a corporation which is not a company;

(3) The right to hold a share granting the rights specified in paragraphs (1) or (2) or a similar right in a corporation which is not a company;

| | |
|---|---|
| **"Foreign entity"** | A foreign state, including a person located in a foreign state; |
| **"The director general"** | The Director General of the Ministry of Defense; |
| **"Wassenaar Arrangement"** | Wassenaar Arrangement on Export Controls for Conventional Arms and Dual-use Goods and Technologies; |
| **"Transfer of defense know-how"** | As applied in section 15(a)(2); |
| **"The licensing authority"** | The Director General or the Head of the Defense Export Control Division as authorized by the Director General for the purpose of this law, partially or fully, and, with regard to export licenses for defense equipment in transit and transfer licenses to the Palestinian Civil jurisdiction areas  - the Director General or the Head of the Defense Export Control Division, or anyone authorized by them; |
| **"Criminal law"** | The Criminal Law, 5736-1977; |
| **"Defense know-how"** | (1) Information that is required for the development or production of defense equipment or its use, including information referring to design, assembly, inspection, upgrade and modification, training, maintenance, operation and  repair of defense equipment or it's handling in any other way as well as technology included in the order under paragraph (1) of |

Unofficial Translation -   MOD, Office of the General Counsel

the "Controlled Dual-use Equipment" definition and in the orders under the "Missile Technology" and "Defense Equipment" definitions; for this purpose, information – including technical data or technical assistance;

(2) Know-how relating to defense forces, including know-how concerning their organization, build-up and operation, combat doctrine or training and drill methods defense policy or their methods of action, as well as know-how relating to defense policy anti-terror combat and security methods;

**"Export of defense equipment"**

Transfer outside of Israel, including transfer to the Palestinian Civil Jurisdiction areas, as well as the transfer within Israel to a diplomatic or consular representation of a foreign state;

**"Defense export"**

Each of the following:

(1) Export of defense equipment;

(2) Transfer of defense know-how;

(3) Provision of defense services;

**"Production"**

Including production engineering, integration, assembly, inspection, trials and quality assurance.

| | |
|---|---|
| **"Defense forces"** | Military forces or police forces of a state, as well as other entities of a state engaging in defense, internal security or intelligence; |
| **"Basic scientific research"** | Trial or theoretical work mainly intended to obtain new knowledge regarding basic principles of observable phenomena and facts, and which is not aimed at a particular goal or target; |
| **"Information in the public domain"** | Information in the public domain, which was legally made available to the public, without restrictions on its further dissemination; intellectual property ristrictions do not exempt information from being in the public domain; |
| **"Defense export registry"** | As applied in section 3; |
| **"Interim user"** | Anyone in possession of defense equipment or defense know-how, during the period of time from leaving the holder of a defense export license until transferred to the end-user; |
| **"End-user"** | The final entity that is destined to receive the defense equipment, defense know-how or defense service, regarding which a license is requested under chapter D or was such granted; |
| **"Technical data"** | Prototypes, plans, sketches, models, formulas, tables, engineering content and specifications, written operating instruction manuals or manuals |

| | |
|---|---|
| | documented on magnetic, optic or any other media; |
| **"Technical assistance"** | Instruction, qualification, training, consultation, transmission of proficiency or technical data; |
| **"Defense export transaction"** | A transaction involving a defense export; |
| **"Development"** | Including all the pre-production stages, including design, design study and its analysis, design perception, assembly and prototype trial, experimental production sequences and design data, process of transforming the design data into a product, configuration design, integration and layout sketches; |
| **"Defense marketing action"** | As applied in section 14; |
| **"Defense equipment"** | **M**issile equipment, combat equipment and controlled dual-use equipment; |
| **"Defense equipment in transit"** | As applied in section 19; |
| **"Dual-use equipment"** | Materials and equipment initially intended for civilian use and which are also compatible for defense use" |
| **"Controlled dual-use equipment"** | One of the following: |
| | (1)   Dual-use equipment listed in the Wassenaar Arrangement Dual-Use Goods and Technologies list, as periodically |

|  | updated, intended for a defense use, or other dual-use equipment, as shall be set forth in the Minister's order; |
|---|---|
|  | (2)     Regarding section 20 – dual-use equipment as shall be set forth in the Minister's order; |
| **"Missile equipment"** | Equipment and software regarding missiles, set forth in the appendix on equipment, software and technologies of the International Missile Technology Control Regime (MTCR), periodically updated, as shall be set forth in the Minister's order; |
| **"Combat equipment"** | Equipment included in the Munitions List of the Wassenaar Arrangement, as periodically updated, or other equipment initially intended for a defense use, as shall be set forth in the Minister's order; |
| **"Transfer license to the Palestinian Civil Jurisdiction areas"** | As applied in section 20; |
| **"Re-transfer license"** | As applied in section 17; |
| **"Defense export license"** | As applied in section 15; |
| **"License for defense equipment in transit"** | As applied in section 19; |
| **"Defense marketing license"** | As applied in section 14; |

| | |
|---|---|
| **"End-use modification license"** | As applied in section 18; |
| **"Brokering license"** | As applied in section 21; |
| **"Palestinian Civil Jurisdiction areas"** | Judea and Samaria, excluding the settlements and military compounds as implied in the agreement, as well as the complete area of the Gaza Strip; "agreement" – the Israeli-Palestinian Interim Agreement regarding the West Bank and the Gaza Strip that was signed in Washington between the State of Israel and the Palestinian Liberation Organization, on the 4th of Tishrei 5756 (28th of September 1995), including its appendices and related documents; |
| **"Use"** | Including operation, installation, maintenance, repair and renovation. |
| **"Defense use"** | Use made by defense forces or intended for them; |
| **"End-use"** | Use of the defense equipment, defense know-how or reception of defense services, by the end-user; |
| **"Defense service"** | As applied in section 15(a)(3); |
| **"Control"** | With regard to a corporation - the capacity, whether on one's own or along with others, to steer the corporation's activity, with the exception of the capacity which derives only from the fulfillment |

of the position of Director or of another officer in the corporation; Without derogating from the generality of the aforesaid -

(1) A person shall be considered to be in control of the corporation if he/she holds half or more of a certain type of means of control in the corporation;

(2) It is held that the person controls the corporation if one of the following is fulfilled:

(a) He/she holds the largest part of any kind of means of control in the corporation at any time, or there is no other entity, which individually owns or owns with others a means of control of any kind, at a share that exceeds his/her holdings of the same kind of means of control;

(b) He/she has the capacity to prevent business decision making in the corporation by virtue of a provision in the code or in the contract, with the exception of the power to prevent decision making regarding the issuing of means of control in the

|  | corporation or the power to prevent decision making regarding the sale or liquidation of most of the corporation business or a material change therein; |
|---|---|
| **"Israeli resident "** | As defined in the Population Registry Law, 5725-1965[2]; |
| **"Foreign corporation"** | A corporation other than an Israeli corporation; |
| **"Israeli corporation"** | One of the following: |
|  | (1) A corporation incorporated in Israel; |
|  | (2) A corporation that has its center of business in Israel, and which the control over it is, directly or indirectly, by an Israeli citizen or resident; |
| **"The Minister"** | The Minister of Defense. |

### Chapter C: Defense Export Registry

| **Registration obligation with the defense export registry** | 3. | (a) | (1) | No person shall be entitled to receive a defense marketing license or a defense export license, unless he/she is registered with the registry administered by the licensing authority (in this law - defense export registry). |
|---|---|---|---|---|

(2) No person shall be entitled to receive a license for brokering between foreign entities, unless he/she is registered with the defense export registry as a broker between foreign entities.

(b) The licensing authority is authorized to request, from a person wishing to register with the defense export registry, any relevant information or document that it requires for the purpose of reaching a decision regarding registering.

**Refusal to register and removal of existing registration** 4. (a) The licensing authority is authorized to refuse to register a person in the defense export registry, to approve the registration under conditions, as well as to remove his/her registration from the defense export registry or to suspend the registration, and in so doing may take into account, amongst others, the following considerations:

(1) The applicant's criminal record;

(2) The applicant's violation of the provisions of this law or the violation of the terms of a license that was issued under Chapter D, or the violation by the applicant of an order under law or of the terms of a license given before the entry into force of this law, regarding an action regulated under this law;

(3) If the applicant has not met the rules set by the Minister in the regulations;

(4) If the applicant is a corporation, the licensing authority is entitled to take into account considerations that are enumerated in sections (1) to (3) above also with regard to the controlling shareholder, interested party and officers in the said corporation. For this purpose, "interested party", "officer" – as defined in the Corporations Law, 5758 – 1999.

(b) The licensing authority shall not make its decision under this section, prior to giving the

Unofficial Translation -   MOD, Office of the General Counsel

person regarding whom the decision is made the opportunity to voice his/her arguments.

**Contestation**     5.     The person regarding whom a decision was taken under section 4, by the director general in his capacity as licensing authority, may demand a review of the decision by the director general, and regarding such decision taken by the director of the defense export control division,  - before the director general – all as set forth in the minister's order.

## Chapter D: Licensing

### Sign A: General Provisions regarding Licenses

**License application** 6.     (a)     An applicant for a license under this chapter, will include in his/her application, details, declarations and documents as set forth by the minister in regulations.

(b)     The licensing authority may, in addition to the details and documents set forth in section (a) above, demand any information, document or defense equipment required for its decision regarding the license application, and, amongst others –

(1) The applicant's declaration regarding the identity of the end-user and the interim users, and the intended end-use of the defense equipment, defense know-how or defense service regarding which the license is requested;

(2) A declaration by the end-user regarding the intended end-use of the defense equipment, defense know-how or defense service regarding which the license is requested;

(3) A certificate by the government of the state where the end-user is located, regarding the identity of the end-user and the intended end-use of the defense equipment, defense know-how or defense service regarding which the license is requested;

(4) A certificate by the government of state where the end-user is located, authorizing the import of the defense equipment, defense know-how or defense service regarding which the license is requested, to that state.

**License stipulations** 7. (a) The licensing authority may include stipulations in a license issued under this chapter, including stipulations to be fulfilled prior to the activity included in the license and including stipulations intended to increase oversight on the license holder, and is also authorized, at all times, to add stipulations to a license, to remove or amend stipulations, for the purpose of fulfilling the objectives of this law and its provisions.

(b) Without derogating from the above, a license under this chapter may include the following stipulations:

(1) The technical characteristics and scope of the defense equipment, defense know-how or defense service provided under the license, and the scope of the licensed transaction;

(2) The intended end-use of the defense equipment, defense know-how or defense service regarding which the license is requested, and the identity of the end-user or the interim users of the said equipment, know-how or service.

**Refusal to grant licenses** 8. The licensing authority is authorized to refuse to grant a license under this chapter or to condition the granting of a license under certain stipulations, taking into account, amongst others, the following considerations:

(1) The applicant's criminal record;

(2) The applicant's violation of the provisions of this law or the violation of the terms of a license that was issued under Chapter D, or the violation by the applicant of an order under law or of the terms of a license given before the entry into force of this law, regarding an action regulated under this law;

Unofficial Translation -   MOD, Office of the General Counsel

(3)     If the applicant has not met the rules set by the Minister in the regulations;

(4)     If the applicant is a corporation, the licensing authority is entitled to take into account considerations that are enumerated in sections (1) to (3) above also with regard to the controlling shareholder, interested party and officers in the said corporation. For this purpose, "interested party", "officer" – as defined in the Corporations Law, 5758 – 1999;

(5)     The end-users' observance of the obligations undertaken under section 6(2);

(6)     Considerations regarding the type of defense equipment, defense know-how or defense service for which the license is required;

(7)     Considerations regarding the end-user or the end-use.

An announcement regarding a decision by the licensing authority under this section will be made known to the applicant in a manner and time period as set forth by the minister in regulations.

**License revocation and suspension or restriction of a license**

9.    (a)     The licensing authority is authorized to revoke a license that is granted pursuant to this chapter or to suspend it including on probation or according to stipulations it shall set forth, as well as to restrict the license, taking into account, amongst others, the considerations listed in section 8 above.

(b)     The licensing authority shall not cancel, suspend or restrict a license, prior to affording the license holder the opportunity to voice his/her arguments.

(c)     Despite the provisions in section (b), under special circumstances and due to urgency, the licensing authority may suspend or restrict a license prior to affording the license holder to voice his/her arguments.

(d)     Reasons of state security, foreign relations considerations or international obligations will

not constitute as an argument against the licensing authority's decision under this section.

(e)  An announcement regarding a decision by the licensing authority under this section will be made known to the applicant in a manner and time period as set forth by the minister in regulations.

**Contesting the refusal to issue a license, or its revocation, suspension or restriction**

10.  (a)  In case of refusal to grant a license under section 8, or revocation, suspension or restriction of a license under section 9, the applicant or license holder may contest such decision of the licensing authority in a manner as set forth in section (b) below.

(b)  A decision on the contest will be taken after consultation with the advisory committee, by one of the following as detailed below, in a manner and time period as set forth by the minister in regulations:

(1) Regarding a decision taken by the director-general – through a review before the director-general;

(2) Regarding a decision by the director of the defense export control division – by the director-general;

(3) Regarding a decision on an export license for defense equipment in transfer, or regarding a transfer license to the Palestinian Civil Jurisdiction areas, taken by the person authorized by the director-general or the director of the defense export control division – by a person authorized by the director-general.

(c)  Reasons of state security, foreign relations considerations or international obligations will not constitute as an argument against the licensing authority's decision under this section.

**General licenses or specific licenses**

11.  Licenses pursuant to this chapter may be general, or granted for types of activities or transactions involving defense equipment, defense     know-how or defense

services or specific activities, transactions, equipment, know-how or services.

**Prohibition against transfer, lien or seizure of the license**
12. A license granted under this chapter, including any rights vested in it, is non-transferable, and may not be liened or seized.

### Sign B: Licenses

**Actions requiring licensing**
13. Actions listed under this sign require a license from the licensing authority, and any such action shall be in accordance with the stipulations in the license, unless otherwise set forth under this law.

**Defense marketing license**
14. (a) An Israeli citizen, an Israeli resident or an Israeli corporation shall not conduct a defense marketing activity without a marketing license (hereinafter – defense marketing license) that is granted pursuant to this law, and pursuant to the conditions of the marketing license; in this law –

"Defense marketing activity" - An activity aimed at promoting a defense export transaction, including brokering activity towards a defense export transaction, whether in Israel or outside of Israel,  in writing or orally or via any other means, directly or indirectly, in exchange for remuneration or not, whether transfer of defense know-how occurs or not, or the holding of negotiations towards such transaction; the activity can be geared toward a certain customer or toward a general public,  and may or may not result in a defense export transaction.

"Brokering activity towards a defense export transaction" – one of the following activities:

(1) Forging ties between parties to contract in a defense export transaction;

(2) Participating in negotiations toward a contract between the parties involved in the defense export transaction;

Unofficial Translation -   MOD, Office of the General Counsel

21

(3) Representation of a party involved in the defense export transaction;

(b) The licensing authority is authorized to exempt an applicant from the obligation of receiving a defense marketing license under this section, for categories of defense marketing activities or for certain defense marketing activities, as set forth in regulations.

(c) If a defense marketing license was granted to a corporation included in the Minister's order issued under item 3 of the first annex of the Security Regulation in Public Bodies Law, 5757-1998, an individual license for each employee of that corporation shall not be required, regarding the licensed defense marketing activity.

**Defense export license** 15. (a) A person as listed below shall not be involved in the following activities, unless he/she received a license for such activity from the licensing authority (in this law – defense export license) and pursuant to the provisions of that license:

(1) Export of defense equipment;

(2) Transfer of defense know-how through any means, including orally - from Israel to outside of Israel, or in Israel to a person who is neither an Israeli citizen or an Israeli resident, or to a foreign corporation; however, transfer of defense know-how relating to equipment included in section (1) of the "controlled dual-use equipment" definition that is information in the public domain as well as basic scientific research, does not require a defense export license, unless the licensing authority requires, in regulations, that transfer of such defense know-how or such type of defense know how or such basic scientific research requires a defense export license.

(3) Provision of a defense service - if the service provider is an Israeli citizen or an Israeli corporation - outside of Israel, or

within Israel to a person who is not an Israeli citizen or an Israeli resident, or to a foreign corporation; in this law, "defense service" – a service relating to defense equipment, including its design, development, production, assembly, review, upgrade, modification, repair, maintenance, operation and packaging, as well as instruction related to said equipment, and service regarding defense know-how, including instruction, training and consulting regarding said know-how.

(b) The licensing authority may exempt an applicant from the requirement to obtain a defense export license under this section, with regard to types of defense exports or a certain defense export, as set forth in regulations.

**Defense marketing license required to obtain a defense export license**

16. The licensing authority shall not grant a defense export license for a defense export transaction unless the applicant obtained a defense marketing license for that transaction, unless an exemption from the requirement to obtain a defense marketing license was set forth pursuant to section 14(b); a defense marketing license that was granted does not obligate the licensing authority to grant a defense export license for the same transaction.

**Re–transfer license**

17. A defense export license holder whose license includes a stipulation with regard to the identity of the end-user, shall not allow the end-user to transfer the defense equipment or the defense know-how in his possession to a different person, unless the defense export license holder obtains a license for such transfer from the licensing authority (in this law – re-transfer license), and in accordance with the provisions of said license.

**End-use modification license**

18. A defense export license holder whose license includes a stipulation with regard to the end-use, shall not allow the end-user to modify the end-use of the defense equipment or the defense know-how in his possession, unless the defense export license holder obtains a license for such modification from the licensing

authority (in this law – end-use modification license), and in accordance with the provisions of said license.

**License for defense equipment in transit**  19.  (a)  A person shall not export equipment in transit without obtaining a license from the licensing authority (in this law – license for export of defense equipment in transit), and in accordance with the provisions of said license; in this law, "defense equipment in transit" - defense equipment originating from outside of Israel, through one of the border stations as implied in section 7 of the Entry Into Israel Law, 5711-1952, on its way outside of Israel, as well as said defense equipment entering into Israel or intended to enter into Israel in other ways, on its way outside of Israel, as long as it is unloaded from its means of transportation prior to its departing from Israel.

(b)  The licensing authority may exempt an applicant from the requirement to obtain a license for export of defense equipment in transit under this section, with regard to types of defense equipment in transit or a specific defense equipment in transit, as set forth in regulations.

(c)  The provisions of section 15 shall not apply to an export of equipment as described in this section.

**License for transfer to Palestinian Civil Jurisdiction areas**  20.  (a)  A person shall not transfer controlled dual-use equipment included in an order pursuant to paragraph (2) of the "controlled dual-use equipment" definition unless he has obtained a license for such transfer from the licensing authority, (in this law – transfer license to the Palestinian Civil Jurisdiction areas), and in accordance with the provisions of said license.

(b)  Section 7 of this law shall not apply to the transfer pursuant to this paragraph.

**License for Brokering Between Foreign Entities**  21.  (a)  An Israeli resident or an Israeli corporation shall not engage in a brokering activity between foreign entities, unless they have obtained a license from the licensing authority (in this law – license for brokering between foreign entities),

and in accordance with the provisions of that license; however, the provisions of this section do not derogate from the provisions of section 15 of the Criminal Law; for this purpose –

"brokering between foreign entities activity" - one of the following activities, taking place in Israel or outside of Israel, whether the combat equipment or the defense equipment regarding to which the said activity occurs leaves Israel before the activity or not:

(1) Forging ties between parties to contract in a transaction regarding the transfer of combat equipment or missile equipment; from one foreign state to another foreign state;

(2) Participating in negotiations toward a contract between parties in a transaction as described in paragraph (1) above;

(3) Representation of a party to a transaction as described in paragraph (1) above;

(4) Purchasing of defense equipment or defense know-how for the purpose of of contracting in a transaction as described in paragraph (1) above;

(5) Assisting activities aimed to realize a transaction as described in paragraph (1) above, as set forth by the minister in regulations.

"combat equipment or missile equipment" – including defense know-how or a defense service regarding such equipment.

(b) The licensing authority may exempt an applicant from the requirement to obtain a license for brokering between foreign entities under this section, with regard to types of brokering between foreign entities activities or with regard to types of combat equipment and missile equipment, or with regard to brokering activities between certain foreign entities, as set forth in regulations.

**Brokering between foreign entities subject to Security Council resolution** 22. (a) Without derogating from the provisions of section 21, no Israeli citizen, Israeli resident or Israeli corporation shall engage in brokering activities between foreign entities in violation of a resolution of the Security Council of the United Nations (in this law – the security council) forbidding or limiting the transfer of combat equipment or missile equipment to those entities.

(b) Security council resolutions as described in section (a) shall be published on the Licensing Authority's website and in the official gazette.

### Chapter E: The Licensing Authority and Advisory Committees

**Tasks of the licensing authority** 23. The licensing authority shall control defense export according to the provisions of this law, shall administer the defense export registry according to the provisions of chapter C, shall decide on license applications submitted under chapter D, and shall conduct other activities it requires under this law.

**Advisory committees** 24. (a) The minister shall appoint advisory committees to make recommendations to the licensing authority with regards to the granting of defense marketing licenses, re-transfer licenses, licenses for end-use modification, licenses for export of defense equipment in transit and licenses for brokering between foreign entities (in this law – advisory committees):

(b) And these are the members of the advisory committees:

(1) Employees of the ministry of defense appointed by the minister, one of whom shall serve as chairperson;

(2) Two employees of the ministry of foreign affairs;

(3) In advisory committees regarding controlled dual-use equipment – an employee of the ministry of industry,

|  | | trade and labor appointed by the minister of industry, trade and labor; |
|--|--|--|
|  | (4) | Employees of defense forces, as determined by the minister, authorized for the purpose of this section by the head of the defense force where they are employed; for this purpose, "defense forces" – each of the following: Israel Defense Forces, Israel Security Agency, Mossad, Israel Police and the Penitentiary Service. |
|  | (c) | A member of an advisory committee can be appointed only after it was determined by the authorized official under the Israel Security Agency Law, 5761-2002, that he holds the required security clearance for that position. |

### Chapter F: Coordination with the Ministry of Foreign Affairs

| **Participation of the Ministry of Foreign Affairs in the advisory committees** | 25. | Each of the advisory committees shall include as its members employees of the ministry of foreign affairs, as set forth in section 24. |
|--|--|--|
| **Coordination with The Ministry of Foreign Affairs regarding granting of licenses** | 26. (a) | Should the representative of the minister of foreign affairs voice his/her reservation regarding an advisory committee's recommendation and the advisory committee considered not to take into account this reservation, or should the advisory committee recommend the granting or the refusal to grant a defense marketing license, a re-transfer license, an end-use modification license, a license for export of defense equipment in transit or a license for brokering between foreign entities, and the licensing authority should decide after consideration not to accept this recommendation, the reservation or committee recommendation, as appropriate, will be brought before the director of the defense export control division at the ministry of defense and the director of the strategic affairs division at the |

Unofficial Translation -   MOD, Office of the General Counsel

ministry of foreign affairs for their joint deliberation.

(b)    In case the joint deliberation as described in paragraph (a) did not reach a conclusion, the matter shall be resolved between the director-general and the director general of the ministry of foreign affairs; should no agreement be reached between the director-general and the director general of the ministry of foreign affairs, the matter will be resolved by the sub-committee of the ministerial committee for national security as implied in section 47(c).

**Consultation with The Ministry of Foreign Affairs on export licenses**    27.    The licensing authority shall consult with the representative of the ministry of foreign affairs in a manner set forth in regulations, prior to the issuance of an export license.

## Chapter G:  Reporting Requirements and Inspection Authority

**Reporting obligations**    28.    (a)    A license holder under chapter D shall submit to the licensing authority written reports once a year regarding his activities requiring a license under chapter D, in accordance with forms set forth in regulations.

(b)    The licensing authority may require a person who was exempt from the requirement of obtaining a defense marketing license under chapter D, to submit reports as set forth in section (a) above, regarding his defense marketing activities.

(c)    The aforesaid reports in section (a) and section (b) shall include amongst others details regarding the defense marketing or defense export activities, as applicable, including defense marketing destinations, details regarding the identity of the interim users and the end-user, and regarding the end-use of the defense equipment, defense know-how or the defense service, as applicable.

(c)    A corporation registered in the Defense Export Registry shall notify the licensing authority

about any change in the controlling shareholders of the corporation.

| | | |
|---|---|---|
| **Inspection authority** | 29. | For the purpose of supervision of execution of the provisions of this law, the licensing authority or whom it shall authorize amongst the employees of the ministry of defense, is authorized – |

(1) to demand from any relevant person included in the registry to supply it with information or documents concerning a person conducting an activity requiring a license under chapter D; for this purpose "documents" – including a certification, report or ledger or output as implied in the Computers Law, 5755 – 1995;

(2) to enter any premises if it has reasonable grounds to assume that a person included in the registry or someone on his behalf are keeping defense equipment or defense know-how or are providing a defense service at that locations, in order to check whether the provisions of this law are fulfilled, as long as it does not enter a place that is used for solely for residential purposes unless a court injunction is issued; entry onto a premises under this section will take place with the accompaniment of the holder of the property or his representative, however refusal to the request of the representative of the licensing authority to accompany him, can not hinder the licensing authorities' activity under this section.

| | | |
|---|---|---|
| **Inspecting defense equipment** | 30. | (a) The licensing authority or whom it shall authorize amongst the employees of the ministry of defense for this purpose is authorized to request defense equipment from its owner or holder for the purpose of inspecting whether the defense equipment meets the conditions of the license that has been granted pursuant to this law. |

(b) Inspection of the defense equipment by the licensing authority or whom it has authorized for this purpose under section (a), will be conducted, if possible, in the offices of the holder of the defense equipment or in the offices of the licensing authority provided the defense

equipment will be returned to its holder no later than fifteen days from the day it was taken.

**Obligation to keep records**    31.    (a)    An export license holder shall administer a record of the information concerning any defense export transactions that he/she has conducted. The said record shall include details concerning the licensed defense equipment, defense know-how or defense service, as well as details regarding the interim users and the end-user, and the end-use of the licensed defense equipment, defense know-how or defense service, dates when the defense export was carried out and additional details as shall be set forth in regulations.

(b)    The defense export license holder will keep the record as described in section (a) above, as well as any document related to the executed defense export transaction, for ten years from the date of completion of the defense export; manner of record keeping shall be set forth in regulations.

## Chapter H : Criminal Penalties

**Offences**    32.    (a)    A person who has committed one of the following will be sentenced to – three years' imprisonment or a fine which is thirty times greater than the fine set out in section 61(a)(4) of the Criminal Law:

(1)    Commits an act of defense marketing without holding a defense marketing license or not pursuant to the conditions of the license, contrary to the provisions of section 14;

(2)    Carries out a defense export, without holding a defense export license or not pursuant to the conditions of the license, contrary to provisions of section 15;

(3)    Exports defense equipment in transit without holding a license

for exporting defense equipment in transit or not pursuant to the conditions of the license, contrary to the provisions of section 19.

(4)     Transfers to the Palestinian Civil Jurisdiction areas controlled dual-use equipment included in an order issued under paragraph (2) of the "controlled dual-use equipment" definition without holding a license for transfer to the Palestinian Civil Jurisdiction areas or not pursuant to the conditions of the license, contrary to section 20.

(5)     Engages in brokering between foreign entities without holding a license for brokering between foreign entities or not pursuant to the conditions of the license, contrary to section 21.

(b)     A person who engages in brokering between foreign entities in violation of a security council resolution as stated in section 22, will be sentenced to 5 years imprisonment or to a fine fifty times the fine set forth in section 61(a)(4) to the Criminal Law.

**Offenses in severe circumstances**     33.     For an offense committed pursuant to section 32(a) in severe circumstances, the sentence will be five years imprisonment or a fine that is fifty times greater than the fine set out in section 61(a)(4) of the Criminal Law. In this section "severe circumstances" – one of the following:

(1)     The defense marketing activity subject as an offence was intended to advance a defense export transaction with the enemy, or the entity destined to receive the defense equipment, defense know-how or defense service regarding which the defense export transaction subject as an offence was carried out is an enemy; in this section, "enemy" - as defined in the Enemy Trade Ordinance, 1939;

(2)     The defense know-how, defense equipment or defense service was classified, according to the determination of

the security entity authorized to make security classifications;

(3) The defense marketing activity subject as an offence was intended to advance a defense export transaction with a foreign entity regarding to whom a security council resolution was adopted as set forth in section 22, or that the defense export subject as an offence was destined to said foreign entity;

(4) The defense marketing activity or defense export activity subject as an offence was in violation to any one of the stipulations of the defense marketing license or the defense export license, as applicable, pertaining to the restriction on marketing or export to certain countries.

(5) The brokering activity between foreign entities was intended to further a transaction with the enemy.

**Responsibility of company officer** 34.

(a) An officer in a corporation must supervise and do everything possible to prevent offenses pursuant to section 32 by the corporation or by any one of its employees; a person who violates this provision, is sentenced to a fine as stated in section 61(a)(4) of the Criminal Law; for this purpose, "an officer"– is an active director, partner, with the exception of a limited partner, or other official whose responsibilities on behalf of the corporation include the areas of responsibility of the committed offense.

(b) Should an offense pursuant to section 32 be committed by the corporation or by any one of its employees, it is held that the officer in the corporation violated his duty pursuant to sub-section(a), unless he/she prove that he/she did their utmost to fulfill his/her duty.

## Chapter I : Civil Fines and Financial Sanctions

**Civil fine** 35. Should the licensing authority have reasonable grounds to assume that an act or a failure to act, that is set out as an offense pursuant to section 32, has occurred, it is authorized to impose a civil fine in the amount of 15% of the fine set out in the same section, upon the person who commits the act or who fails to act.

| | | | |
|---|---|---|---|
| **Financial sanction** | 36. | (a) | Should the licensing authority have reasonable grounds to assume that a person did not fulfill his/her reporting obligation pursuant to section 28(a) and (b), it is authorized to impose a financial sanction upon the person in the amount of 3% of the fine set out in section 61(a)(3) of the Criminal Law for every day in which the violation continues. |
| | | (b) | Should the licensing authority have reasonable grounds to assume that a person did not fulfill his/her reporting obligation pursuant to section 28(d), or did not fulfill his/her obligation to keep records pursuant to section 31 of this law, it is authorized to impose a financial sanction upon the person in the amount of the fine as set forth in section 61(a)(4) of the Criminal Law. |

.

| | | | |
|---|---|---|---|
| **Continued violation and repeated violation** | 37. | (a) | In a continued violation, except for a violation as stated in section 36(a) above, the fiftieth part of the financial sanction or the civil fine that is set out for the same violation, will be added for each day the violation continues. |
| | | (b) | In a repeated violation, a sum that is equal to half the financial sanction or the said fine shall be added to the financial sanction or the civil fine that could have been imposed if it were a first violation; regarding this section "repeated violation" – is the violation of one of the provisions of this law, within two years of the previous violation of the same provision for which a financial sanction or civil fine was imposed upon the violator or for which he/she was convicted. |

| | | | |
|---|---|---|---|
| **Reduced sums** | 38. | (a) | The licensing authority is not authorized to impose a financial sanction or civil fine that is less than the financial sanction or civil fine set out in this chapter unless it is pursuant to sub-section (b). |
| | | (b) | The Minister, with the Minister of Justice's consent, is authorized to set forth in regulations cases, circumstances and considerations, for which a financial sanction or civil fine may be imposed in an amount that is less than that which is set out in this law, and at rates to be determined by him. |

| | | | |
|---|---|---|---|
| **Payment requirement** | 39. | (a) | A financial sanction or civil fine shall be paid, according to a written demand by the licensing authority, within thirty days of its submittal; the demand will be issued following an advance notice to the person to whom the demand is designated, and he/she has been afforded the opportunity to make his/her arguments; such notice shall state that due to continued violation the violator will be imposed an additional civil fine or financial sanction according to section 37. |
| | | (b) | The filing of an appeal to the court for administrative matters against the payment of a civil fine or financial sanction, in accordance with items 21(23) or 32(4) of the first addendum to the Law on the Courts of Administrative Affairs, 5760 – 2000, does not delay the payment of the financial sanction or civil fine, unless the licensing authority has consented to this or the court has instructed so. |
| | | (c) | Should an appeal as stated in section (b) above be accepted, the financial sanction or civil fine shall be returned, with the addition of linkage and interest differentials from the day of its payment until its return. |
| **Updated sum of the financial sanction and civil fine** | 40. | | The financial sanction and civil fine shall be according to the sum updated on the day of the request of payment, and if an appeal has been filed and the court discussing the appeal has instructed upon a delay in its payment – according to its updated sum on the day of the decision of the appeal. |
| **Linkage and interest differentials** | 41. | | Should the financial sanction or civil fine not be paid on time, linkage differentials shall be added thereto for the arrears period until it is paid. |
| **Collection** | 42. | | Financial sanctions and civil fines shall be collected to the State Treasury and the Tax Ordinance (collection) shall apply to their collection. |
| **Maintaining criminal responsibility** | 43. | (a) | A civil fine payment shall not derogate from the criminal responsibility of a person for an offense pursuant to this law. |

(b)      Should an indictment be filed against a person for an offense pursuant to this law, this person shall not be charged with a civil fine. In case a civil fine was already paid - the sum paid shall be reimbursed with the addition of linkage and interest differentials from the day of its payment until its reimbursement.

### Chapter J : Additional Provisions

**Preserving law**      44.      This law does not derogate from the provisions of any other law.

**Implementation and regulations**      45.      The Minister is in charge of implementing this law and is authorized, upon approval of the Knesset foreign relations committee, to establish regulations for its implementation and to issue orders; regulations regarding sections 14(b), 15(b), 19(b) and 21(b) shall be established in consultation with the minister of foreign affairs and regulations regarding sections 27 and 47(c) shall be established with the consent of the minister of foreign affairs.

**Fees**      46.      The Minister may establish in regulations, following authorization by the Knesset Foreign Relations and Defense Committee, fees for license requests and contestation filings pursuant to this law, that shall be paid to the Defense Export Control Division at the Ministry of Defense.

**Applicability to the State**      47.      (a)      The provisions of this law shall not apply to the state, however  they shall apply to defense marketing or defense export activities regarding defense equipment, defense know-how or a defense service, when executed by the party that developed or produced said equipment or know-how  or provided said service, pursuant to an agreement between the State of Israel and another state.

(b)      A procedure overseeing defense exports pursuant to an agreement between the State of Israel and another state, outside the scope of section (a), shall be set forth in a government decision; the minister of defense shall notify the

Knesset foreign relations committee on that procedure.

(c) Defense exports pursuant to an agreement between the State of Israel and another state, of a scope to be determined in regulations, shall be submitted by the minister of defense for the approval of a sub-committee of the ministerial committee for national security; chaired by the Prime minister and with the membership of the minister of defense, the minister for foreign affairs, the minister of justice and the minister of finance.

**Amendment to the Law of the Courts of Administrative Affairs** 48. In the Courts of Administrative Affairs Law, 5760-2000**,** in the first addendum following section 29 the following shall appear:

(1) In item 21, following paragraph 22 shall be written:

"(23) Defense Export Control Law, 5766-2007";

(2) In item 32 –

(a) In the headline, following "financial transaction shall be written "and civil fines";

(b) Following paragraph (3) shall be written:

"(4) The decision of the licensing authority under chapter I of the defense export control law, 5766-2007."

**Entry into force and transition provisions** 49. (a) This law shall enter into force on December 31st, 2007, (in this section – date of entry into force), accept for the following sections, which shall enter into force on a later date as stated below:

(1) Section 19 as well as all other sections in this law relating to licenses for defense exports in transit - 30 days from the day the minister shall publish a notice in the official gazette;

(2) Sections 3(a)(2), 21 and 32(a)(5) and (b) - 30 days from the day the minister shall publish a notice in the official gazette, following consultation with the minister of foreign affairs and with the approval of the Knesset foreign relations committee.

(b)     Initial regulations under this law will be presented to the Knesset foreign relations committee for its approval no later than October 31st, 2007.

(c )    Despite the provisions of this law, a negotiation permit or an export permit,  or a transfer permit to  the Palestinian civilian jurisdiction, which were granted prior to the date of entry into force, pursuant to the Control of Commodities and Services Order (Defense Equipment and Defense know-how Export), 5752 – 1991 shall be deemed as though they were granted pursuant to the provisions of this law and shall continue to be valid until their expiry, unless cancelled under the provisions of this law

<br>

Ehud Olmert                          Ehud Barak
Prime Minister                    Minister of Defense

Shimon Peres                        Dalia Itzik
President of the State of Israel      Speaker of the Knesset

<br>

Unofficial Translation -   MOD, Office of the General Counsel