| | |
|---|---|
| Jennifer Bennett (State Bar No. 296726) | Jonathan E. Taylor* |
| **GUPTA WESSLER PLLC** | **GUPTA WESSLER PLLC** |
| 100 Pine Street, Suite 1250 | 2001 K Street NW, Suite 850 North |
| San Francisco, CA 94111 | Washington, DC 20006 |
| (415) 573-0336 | (202) 888-1741 |
| jennifer@guptawessler.com | jon@guptawessler.com |
| | |
| *Counsel for Amici Curiae Legal Scholars* | *\*Pro hac vice application forthcoming* |

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| CARLOS DADA, SERGIO ARAUZ, GABRIELA C. GUTIERREZ, JULIA GAVARRETE, ROMAN GRESSIER, GABRIEL LABRADOR, ANA B. LAZO ESCOBAR, EFREN LEMUS, CARLOS MARTINEZ, OSCAR MARTINEZ, MARIA L. NOCHEZ, VICTOR PENA, NELSON R. ZABLAH, MAURRICIO S. SARIANO, JOSE L. SANZ, DANIEL R. MARTINEZ, DANIEL LIZARRAGA, and CARLOS L. SALAMANCA,<br><br>*Plaintiffs*,<br>v.<br><br>NSO GROUP TECHNOLOGIES LTD, and Q CYBER TECHNOLOGIES LTD,<br><br>*Defendants*. | Case No. 3:22-cv-07513<br><br>Hon. James Donato<br><br>Hearing date not set<br><br>**BRIEF OF AMICI CURIAE LEGAL SCHOLARS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

**INTEREST OF AMICI CURIAE**

Amici are legal scholars at law schools throughout the United States who specialize in civil procedure and other issues related to this case. They have no personal interest in the outcome of the case, but they write to share their professional views regarding the arguments advanced by defendant NSO Group in moving to dismiss the claims for lack of personal jurisdiction. A complete list of amici and their relevant professional experience is included in the motion accompanying this brief.

Amici are filing this brief to respond to two arguments that NSO makes in contesting the exercise of specific personal jurisdiction. NSO argues, first, that the traditional three-part "minimum contacts" inquiry is inapplicable to tort cases and that the plaintiffs must instead satisfy the "effects test" derived from *Calder v. Jones*, 465 U.S. 783 (1984). NSO then argues that jurisdiction is proper under that test only if the plaintiffs were injured in the forum state. Both arguments are wrong and conflict with precedent from the Supreme Court and Ninth Circuit, as well as the law of other circuits.

**ARGUMENT**

**I. Plaintiffs are not required to satisfy *Calder*'s "effects test"—as opposed to the traditional minimum-contacts test—just because this is a tort case.**

The Supreme Court has repeatedly explained that, for the exercise of specific personal jurisdiction to comport with due process, three requirements—known as the minimum-contacts test—must be satisfied. *First*, the defendant "must take 'some act by which it purposefully avails itself of the privilege of conducting activities within the forum State.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (cleaned up). *Second*, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation'"—a requirement that is often reformulated as a rule that the suit "arise out of or relate to the defendant's contacts with the forum." *Id.* at 1025 (cleaned up). *Third*, the exercise of personal jurisdiction must be reasonable. *Id.*

In moving to dismiss the plaintiffs' claims for lack of personal jurisdiction, NSO resists the application of this traditional test. It agrees with the second and third requirements, but it seeks to impose a different standard for the first requirement (purposeful availment). Quoting from a 2004 Ninth Circuit decision, NSO claims that, "[i]n a 'tort' case like this one," the purposeful-availment requirement disappears and is replaced by a separate three-part test—a test that (in NSO's view) provides the exclusive route to exercising specific personal jurisdiction over tort defendants. NSO Br. 3 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802–03 (9th Cir. 2004)). Under that test, the defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.*

What NSO fails to mention, however, is that the Ninth Circuit recently rejected this exact argument. In 2018, it made clear that this test—known as "the *Calder* effects test"—serves a specialized purpose. *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 605 (9th Cir. 2018). It "focuses on conduct that takes place *outside* the forum state and that has effects inside the forum state," and it allows for the exercise of jurisdiction in that scenario. *Id.* at 604. The test does not apply "where, as here, part of the alleged tort occurred in the forum," *id.* at 606 (cleaned up)—a clarification that subsequent panels have begun to heed. *See Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) ("We generally focus our inquiry on purposeful availment when the underlying claims sound in contract and on purposeful direction when they arise from alleged tortious conduct *committed outside the forum*." (emphasis added)). Hence, as the Ninth Circuit has long recognized, "the commission of a tort within the forum state usually supports the exercise of personal jurisdiction" without the need to consider other factors, such as where the plaintiff was injured. *Freestream*, 905 F.3d at 606; *see Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984) ("[B]ecause torts involve wrongful conduct which a state seeks to deter, and against which it attempts to afford protection," a "state has an especial interest in exercising judicial jurisdiction over those who commit torts within its territory." (cleaned up)).

The facts of *Calder* help to illustrate this distinction. *Calder* involved libel claims brought in California against a magazine publisher and two individuals who worked on the allegedly libelous story. Although the individual defendants did not control the magazine's distribution or directly benefit from its circulation in California, the Supreme Court held that the effect of their out-of-state acts in California was enough to support jurisdiction in the state because "their intentional, and allegedly tortious, actions were expressly aimed at California," and because "they knew that the brunt of that injury" would be felt there. *Calder*, 465 U.S. at 788–90. But the Court did not suggest that this was the *only* way to establish minimum contacts in tort cases. To the contrary, personal jurisdiction over the publisher was uncontested based on its commercial activity in the state—quite apart from any "effects" that were felt there. *Id.* at 784.

*Calder* is thus best understood as a case where the Supreme Court recognized an *additional* theory for establishing personal jurisdiction in cases where the defendant's intentional tort was expressly aimed at the forum state and caused injury there. *See Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) ("*Calder* stands for the proposition that purposeful availment is satisfied even by a defendant 'whose only "contact" with the forum state is the "purposeful direction" of a foreign act having effect in the forum state.'"). In doing so, however, *Calder* did not purport to restrict personal jurisdiction by eliminating purposeful availment in all tort cases going forward (and least of all, in cases involving tortious conduct committed within the state).[1]

Other circuits have understood *Calder* in this way. The Eleventh Circuit, for example, has held that in cases "involving an intentional tort, two applicable tests can determine whether purposeful availment occurred: the effects test and the traditional minimum-contacts test," and

---

[1] In 2014, the Supreme Court clarified that, given "the nature of the libel tort," *Calder*'s focus on the "effects" of the defendants' conduct made particular sense there because it meant that "the defendants' intentional tort actually occurred *in* California." *Walden v. Fiore*, 571 U.S. 277, 287 (2014).

"either test suffices." *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1230 (11th Cir. 2023). The Seventh Circuit has done the same. *See, e.g.*, *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 427 n.1 (7th Cir. 2010) (finding resort to *Calder*'s effects test unnecessary to exercise specific jurisdiction in case involving tort-like claims); *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019) (Barrett, J.) ("The defendant's contacts with the forum state must show that it purposefully availed itself of the privilege of conducting business in the forum state *or* purposefully directed its activities at the state." (cleaned up, emphasis added)). As these courts have explained: "The 'effects test' provides an additional means, unavailable in contract cases, of determining the appropriateness of personal jurisdiction—one that is based on a plaintiff's ties to the forum state and the harm suffered by the plaintiff. The 'effects test,' however, does not supplant the traditional minimum contacts test for purposeful availment applicable in contract and tort cases alike." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1357 (11th Cir. 2013).

The Second Circuit has likewise noted that the *Calder* "effects test is a theory of personal jurisdiction typically invoked where (unlike here) the conduct that forms the basis for the controversy occurs entirely out-of-forum, and the only relevant jurisdictional contacts with the forum are therefore in-forum effects harmful to the plaintiff." *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 173 (2d Cir. 2013). But when "the conduct on which the alleged personal jurisdiction is based occurs within the forum," as the plaintiffs argue here, the Second Circuit (like the Ninth Circuit) does not demand "the existence of in-state effects sufficient to satisfy the 'effects test'" as a jurisdictional "prerequisite." *Id.* Nor does any other circuit impose such a requirement. *See, e.g.*, *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999) ("When a nonresident defendant commits a tort within the state, or an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant."). In short, the other circuits' rules operate in much the same way as the Ninth Circuit's rule: If a tort plaintiff can satisfy the requirements of the traditional minimum-contacts test, personal jurisdiction follows.

If there were any doubt on that score, the Supreme Court's recent decision in *Ford* should resolve it. That case involved tort claims against Ford, yet the Court left no hint that the *Calder* effects test had somehow displaced the traditional minimum-contacts test. Quite the opposite: The Supreme Court reiterated the applicability of the traditional minimum-contacts test and its requirement of "purposeful availment"—without discussing purposeful direction at all. 141 S. Ct. at 1024–25. That test is thus fully applicable here.

**II.    Plaintiffs are not required to have been injured in the forum state for there to be specific personal jurisdiction in a tort case.**

NSO's second argument compounds the errors of its first argument. After staking out the position that *Calder*'s effects test invariably displaces purposeful availment in tort cases, NSO claims (at 3) that the test cannot be satisfied in this case "because Plaintiffs do not claim NSO harmed them 'in the forum state.'" But even if this Court were to insist on a test rooted in purposeful direction rather than purposeful availment, there is no basis for requiring the plaintiffs to have been injured in the forum state for the defendant to have formed sufficient contacts with that state.

The Supreme Court has been emphatic on this point: "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290; *see also Ford*, 141 S. Ct. at 1031 ("*Walden* held [that] the place of a plaintiff's injury and residence cannot create a defendant's contact with the forum State" (cleaned up)). That's because the due-process inquiry focuses on the *defendant's* contacts with the forum state; it does not focus on *the plaintiffs'* contacts with the forum. *See, e.g.*, *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017) ("The primary focus of our personal jurisdiction inquiry is the defendant's relationship to the forum State."). To hold otherwise—and insist that a tort plaintiff have been injured in the forum state as a prerequisite to exercising specific jurisdiction—would be tantamount to requiring tort plaintiffs to establish not only that the defendants have minimum contacts with the forum, but that the plaintiffs do as well. As the Supreme Court pointed out in *Calder*

-5-

itself, however, "[t]he plaintiff's lack of 'contacts' will not defeat otherwise proper jurisdiction." 465 U.S. at 788; *see also Keeton*, 465 U.S. at 779 ("[W]e have not to date required a plaintiff to have 'minimum contacts' with the forum State before permitting that State to assert personal jurisdiction over a nonresident defendant. On the contrary, we have upheld the assertion of jurisdiction where such contacts were entirely lacking."). Or as the Court put it in a case decided on the same day as *Calder*: "The victim of a libel, like the victim of *any other tort*, may choose to bring suit in *any* forum with which the defendant has certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice"—regardless of whether (or the extent to which) the plaintiff suffered an injury in that state. *Keeton*, 465 U.S. at 780–81 (cleaned up, emphasis added). That statement of the law is no less true today.

Indeed, even the defendant in *Ford*—which advocated for an unduly narrow view of specific jurisdiction—conceded that personal jurisdiction would be proper in numerous states where the plaintiffs in the case had suffered no injury. *See Ford* 141 S. Ct. at 1026 ("[T]he case is not over even if, as Ford argues, a causal test would put jurisdiction in only the States of first sale, manufacturer, and design," because a "different State's courts may yet have jurisdiction."). NSO Group's argument in this case is thus even more extreme than the argument that the Supreme Court rejected in *Ford*.

So the governing rule is clear: The plaintiffs may establish specific personal jurisdiction under the traditional minimum-contacts test. And if they plausibly allege that part of NSO's tortious acts took place in California, "the first two prongs of the minimum contacts test are satisfied." *Freestream*, 905 F.3d at 603; *see also Ayla*, 11 F.4th at 983 n.5 ("[O]ur precedents permit but do not require a showing of but-for causation to satisfy the nexus requirement…. A narrower test is foreclosed by … *Ford*."); *Keeton*, 465 U.S. at 780 (holding that the exercise of personal jurisdiction is proper "when the cause of action arises out of the very activity being conducted, in part, in [the forum state].").

| | |
|---|---|
| Dated: May 26, 2023 | Respectfully submitted, |
| | */s/ Jennifer D. Bennett* |
| | Jennifer Bennett (State Bar No. 296726) |
| | **GUPTA WESSLER PLLC** |
| | 100 Pine Street, Suite 1250 |
| | San Francisco, CA 94111 |
| | (415) 573-0336 |
| | jennifer@guptawessler.com |
| | |
| | Jonathan E. Taylor* |
| | **GUPTA WESSLER PLLC** |
| | 2001 K Street NW, Suite 850 North |
| | Washington, DC 20006 |
| | (202) 888-1741 |
| | jon@guptawessler.com |
| | |
| | *\*pro hac vice application forthcoming* |
| | |
| | *Counsel for Amici Curiae Legal Scholars* |

-7-
Brief of Amici Curiae Legal Scholars in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss (Case No. 3:22-cv-07513)