1  JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
    *jakro@kslaw.com*
2  AARON S. CRAIG (Bar No. 204741)
    *acraig@kslaw.com*
3  KING & SPALDING LLP
   633 West Fifth Street, Suite 1700
4  Los Angeles, CA 90071
   Telephone:   (213) 443-4355
5  Facsimile:   (213) 443-4310

6  Attorneys for Defendants NSO GROUP TECHNOLOGIES
   LIMITED and Q CYBER TECHNOLOGIES LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CARLOS DADA, SERGIO ARAUZ, GABRIELA CÁCERES GUTIÉRREZ, JULIA GAVARRETE, ROMAN GRESSIER, GABRIEL LABRADOR, ANA BEATRIZ LAZO ESCOBAR, EFREN LEMUS, DANIEL LIZÁRRAGA, CARLOS LÓPEZ SALAMANCA, CARLOS MARTÍNEZ, ÓSCAR MARTÍNEZ, MARÍA LUZ NÓCHEZ, VÍCTOR PEÑA, NELSON RAUDA ZABLAH, DANIEL REYES MARTÍNEZ, MAURICIO SANDOVAL SORIANO, and JOSÉ LUIS SANZ, <br><br> Plaintiffs, <br><br> v. <br><br> NSO GROUP TECHNOLOGIES LTD. and Q CYBER TECHNOLOGIES LTD., <br><br> Defendants. | Case No. 3:22-cv-07513-JD <br><br> [*Honorable James Donato*] <br><br> **REPLY IN SUPPORT OF MOTION FOR ENTRY OF [PROPOSED] PROTECTIVE ORDER** <br><br><br> Action Filed:  11/30/2022 |

## I. INTRODUCTION

While the materials Defendants seek to provide the Court and Plaintiffs' counsel are unusual and extraordinary, the entry of a protective order should be routine. In Defendants' counsel's experience, reasonable counsel can almost always reach agreement as to a confidentiality protective order that closely tracks the Court's model order. Here, Plaintiffs' counsel not only objects to the entry of Defendants' proposed protective order, they suggest that standard language found in both of this District's civil model protective orders exceeds the Court's power and violates the First Amendment. Plaintiffs are wrong on all fronts.

While Defendants were initially amenable to the concept of a limited protective order tracking this District's model order for litigation involving highly sensitive confidential information, Plaintiffs' intransigence has led Defendants to conclude that having to file two separate motions for protective orders would not serve the interests of judicial economy. While a limited protective order that hews to the model order would satisfy Defendants' immediate need, a fulsome protective order will still be needed if the case proceeds to the discovery phase, and the parties will likely be back before the Court with the same dispute. Defendants ask the Court to simply enter their proposed order, which tracks the model order.

## II. ARGUMENT

### A. The Court May Enter a Protective Order at This Stage

Plaintiffs start with a hyper-technical argument that Rule 26(c) only allows for a party *from whom discovery is sought* to move for a protective order, and Plaintiffs have not yet sought discovery from Defendants. That is not what Rule 26(c) says. Rule 26(c) states that "a party *or any person from whom discovery is sought* may move for a protective order." Fed R. Civ. P. 26(c) (emphasis added). The natural—and only sensible—reading of that language is that "a party" may move for a protective order at any time, while other "person[s]" should await a discovery request (since a non-party would have no reason to seek a protective order before

receiving a discovery request).[1] As the Motion sets forth, Defendants intend to provide certain materials to Plaintiffs in advance of receiving a discovery request. Rule 26(c) was plainly intended to allow protective orders to protect materials exchanged between the parties.  None of the cases cited by Plaintiffs involves such an exchange. *See Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1080 (9th Cir. 1988) (addressing documents obtained plaintiff's counsel in separate litigation against the same defendant on behalf of another client, not documents exchanged between the litigants as part of pending proceedings); *Zia Land & Water Conservation, LLC v. EOR Operating Co.*, No. CIV 22-00515 DHU/JFR, 2022 WL 17978840, at *2 (D.N.M. Dec. 28, 2022) (declining to issue a protective order to prohibit a party's informal investigations before start of discovery); *In re BofI Holding, Inc. Sec. Litig.*, 318 F.R.D. 129, 133 (S.D. Cal. 2016) (same).

Whether Defendants' providing materials to Plaintiff at this stage should be properly considered "discovery" may be an interesting academic question,[2] but the Court does not need to decide it.

*First*, confidentiality orders are permitted prior to the start of formal discovery and have been entered by courts in this District.  *See Brado v. Vocera Comm's, Inc.*, 14 F. Supp. 3d 1316 (N.D. Cal. 2014) (ordering entry of a protective order before the start of discovery to govern the confidentiality of documents obtained by the plaintiffs' investigator from a former employee of defendant before the filing of the complaint).  The Court has authority to enter a confidentiality

---

[1] This is a straightforward application of the "rule of the last antecedent," which "provides that a limiting clause or phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Lockhart v. United States*, 577 U.S. 347, 351 (2016).  In Rule 26(c), therefore, the limiting clause "from whom discovery is sought" modifies only "other person," not "a party."

[2] Plaintiffs' argument that such an exchange should not be considered "discovery" relies on Rule 26(d).  Rule 26(d) does not state that no discovery can be produced prior to a Rule 26(f) conference—only that no discovery requests can be propounded.  Comments to the Rule make clear that it was not intended to limit "informal discovery" between the parties. Fed. R. Civ. P. 26 Advisory Committee Notes, 1993 Amendment, Subdivision (d). Plaintiffs' cramped reading of Rules 26(c) and (d) would essentially eliminate litigants' ability to informally exchange information—which courts encourage—while also maintaining confidentiality.

protective order at this stage pursuant to Rule 26(c).

*Second*, even assuming otherwise, Plaintiffs recognize that courts have inherent authority to enter a protective order outside of discovery. Opp. at 3:9. Plaintiffs' own authority confirms that the Court has inherent authority to control "proceedings pending before the court." *See Wharton v. Calderon*, 127 F.3d 1201, 1207 (9th Cir. 1997). The Court may thus regulate the exchange of documents between litigants appearing before it as part of those proceedings. Plaintiffs provide no authority to the contrary. *See id.* at 1202 (addressing the application of inherent authority to regulate a party's interviews with potential non-party witnesses). While Defendants are constrained to provide a fulsome explanation to the Court and Plaintiffs as to why this Court should invoke that inherent authority and enter a protective order at this stage, Defendants note that in another case currently pending before this Court, Judge Seeborg entered a protective order,[3] reviewed the very materials at issue, and granted NSO and Q Cyber's motion to seal them. *See Corallo v. NSO Group Tech. Ltd.,* United States District Court Northern District of California, Case No. 3:22-cv-05229-RS, ECF Nos. 86, 95. Judge Seeborg agreed that the materials were "traditional nonpublic sensitive information for which there is no constitutional right of access" and found that "international comity counsels that the Documents to be Sealed be kept confidential." *See id.* ECF No. 95 at 2:11-15. The Court can, and should, enter a protective order here.

        B.       <u>The Court Should Enter Defendants' Protective Order to Avoid Further Motion Practice</u>

While Defendants do not have a strong objection to the Court modifying their proposed protective order by limiting its scope to the discrete materials currently at issue, doing so would not serve the interests of judicial economy. Defendants should not have to bring two separate and duplicative motions for a protective order, and there is little indication that Plaintiffs' counsel will

---

[3] While the plaintiff had requested jurisdictional discovery at the time Judge Seeborg entered the protective order, Judge Seeborg subsequently ruled that no jurisdictional discovery would be had, and did not withdraw his protective order; to the contrary, he entered an order granting Defendants' request to seal their highly sensitive materials pursuant to his protective order.

agree next time that the District's model order for matters involving highly confidential information would be appropriate for this case.

Plaintiffs are incorrect that the parties had only one dispute over "one clause" in trying to agree to the form of the order. Even in the much shorter version of the order proposed by Plaintiffs there were two serious disputes, and in both cases, the protections of the model order are necessary.

*First*, Plaintiffs insisted on the right to publish information designated by Defendants under the protective order, provided that they received the same information from a third party not in violation of the specific order *in this case*. Their language eliminates the need for the information to be obtained "lawfully" and from a source that was not "under an obligation of confidentiality to the Designating Party." Plaintiffs' proposed language is not found in either of this District's two model protective orders for use in civil litigation, while the language Defendants seek is found in both the "standard litigation" model order and the "highly sensitive confidential information" model order.

The highly sensitive confidential information at issue here has been provided (subject to confidentiality protective orders) to several law firms representing various plaintiffs suing NSO in this District. If Plaintiffs were to obtain the highly sensitive confidential information from an employee of one of those law firms in violation of the protective order in their cases, or from some other source in violation of an obligation of confidentiality to Defendants, Plaintiffs could publish it to the world with no consequences. This is untenable to Defendants and other stakeholders. This District's model orders only allow for the publication of Protected Material if obtained "from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party," and that protection is necessary here. Plaintiffs should not be permitted to evade the protective order based on vague claims that they may have received similar information from "whistleblowers and other confidential sources."

*Second*, Plaintiffs insist on the right to disclose documents designated under the protective order to any expert they choose who signs the Exhibit A form, without providing Defendants an opportunity to oppose the disclosure. (DeCell Decl. Exhs. A, C, ECF Nos. 59-2, 59-4.) That

protection is both customary and critical. (*See* Model Order ¶ 7.4, "Procedures for Approving or Objecting to Disclosure of HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Information or Items to . . . Experts".) This case involves highly sensitive technology that is subject to Israel's Defense Export Control Law and that has been licensed to sovereign governments, intelligence agencies, and law enforcement bodies around the world. Discovery in this case will inevitably involve technical documents regarding this technology, as well as highly sensitive information regarding other governments and government agencies. Plaintiffs, for example, might seek discovery of Defendants' source code, as have plaintiffs in other litigation against Defendants. Defendants need a process to be able to challenge attempts by Plaintiffs to share Protected Material, under the auspices of some "expert" role, with recipients who have no business seeing it.

Defendants respectfully ask the Court to enter a protective order governing the entirety of the case. If the Court enters a limited scope protective order, and a subsequent order is needed, Defendants will of course make every effort to work with Plaintiffs to reach a stipulation as to the form of that order.

### C. Plaintiffs Will Suffer No Undue Prejudice

Entering the model protective order used in cases with highly sensitive confidential information will not unduly prejudice Plaintiffs. Plaintiffs argue that the "standard litigation" protective order is sufficient here. (Opp. 5:6-8.) If ever there was a civil case warranting the "highly sensitive confidential information" protective order, it is this one. The Complaint's description of the technology at issue in this case, and its use by foreign sovereigns to apprehend terrorists and other serious criminals, is overwhelming evidence that discovery in this case will involve highly sensitive confidential information and trade secrets. Moreover, the information Defendants seek to provide to the Court and Plaintiffs immediately is of the utmost sensitivity. The "standard litigation" protective order makes no mention of source code and lacks several other necessary provisions. Just because Plaintiffs would prefer language from the model "standard litigation" protective order does not mean that they will be prejudiced if the proper model order is used.

Plaintiffs argue next that Defendants' proposed order would unfairly restrict their reporting and impede their prosecution of this case. As to the first argument about reporting, like any litigant, Plaintiffs will be restricted from publishing to the world information that is properly designated as protected material. Plaintiffs should not have more rights than other parties simply because they work as Internet journalists. As to the second argument, Plaintiffs do not explain how entry of Defendants' proposed order will impede their prosecution of this case. Defendants fail to see how it would.

Finally, Plaintiffs suggest that certain language from the Northern District's model protective orders exceeds the Court's jurisdiction. This would be remarkable if true, but it is not. Neither of Plaintiffs' cited authorities permit them to publicly release documents exchanged under a confidentiality order because they illegally or improperly obtained some of the information set forth in those documents elsewhere. In *Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 946 (2d Cir. 1983), the Second Circuit overturned a district court's order enjoining use or publication by the plaintiff of the defendant's customer list and price list that the plaintiff itself compiled before filing suit. This is completely inapposite to the situation here, in which Plaintiffs would be obtaining Defendants' highly sensitive information illegally or from a source who was violating an independent obligation of confidentiality to Defendants. Indeed, the *Bridge C.A.T. Scan Associates* court expressly found that there was "no evidence that Bridge had come by the information by other than legitimate means." *Id.* at 946. Plaintiffs also cite *Kirshner v. Uniden Corp. of America*, 842 F.2d 1074, 1081 (9th Cir. 1988). *Kirshner* addressed documents properly and legally obtained in a separate litigation. *See id.* at 1079. In that case, the plaintiff's counsel was prosecuting two actions for two clients against the same defendant. In the second case, the district court ordered plaintiff's counsel to return to the defendant certain documents plaintiff's counsel had obtained in the first case that were the subject of a privilege dispute. The Ninth Circuit reversed the Order as procedurally improper and held that defendant had to seek return of the documents in the litigation where the documents were produced. This also has nothing to do with the parties' dispute over the proper scope of the protective order.

### III. CONCLUSION

For the reasons stated above, Defendants request that the Court grant their Motion and enter the Proposed Protective Order submitted with the Motion.

DATED: August 28, 2023

KING & SPALDING LLP

By: /s/ Joseph N. Akrotirianakis
JOSEPH N. AKROTIRIANAKIS
AARON S. CRAIG

Attorneys for Defendants NSO GROUP TECHNOLOGIES LTD. and Q CYBER TECHNOLOGIES LTD.