# Exhibit 1

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
*jakro@kslaw.com*
AARON S. CRAIG (Bar No. 204741)
*acraig@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

Attorneys for Defendants NSO Group Technologies LTD.
And Q Cyber Technologies LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CARLOS DADA, SERGIO ARAUZ, GABRIELA CÁCERES GUTIÉRREZ, JULIA GAVARRETE, ROMAN GRESSIER, GABRIEL LABRADOR, ANA BEATRIZ LAZO ESCOBAR, EFREN LEMUS, DANIEL LIZÁRRAGA, CARLOS LÓPEZ SALAMANCA, CARLOS MARTÍNEZ, ÓSCAR MARTÍNEZ, MARÍA LUZ NÓCHEZ, VÍCTOR PEÑA, NELSON RAUDA ZABLAH, DANIEL REYES MARTÍNEZ, MAURICIO SANDOVAL SORIANO, and JOSÉ LUIS SANZ,

Plaintiffs,

v.

NSO GROUP TECHNOLOGIES LTD. And Q CYBER TECHNOLOGIES LTD.,

Defendants.

Case No. 3:22-cv-07513-JD
[*The Honorable James Donato*]

**DEFENDANT NSO GROUP TECHNOLOGIES LTD. AND Q CYBER TECHNOLOGIES LTD.'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

**FILED UNDER SEAL - REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**HIGHLY CONFIDENTIAL—ATTOREYS' EYES ONLY**

Action Filed: 11/30/2022

## I. INTRODUCTION

Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited (collectively, "NSO" or "Defendants") filed their Motion to Dismiss on April 14, 2023.[1] (*See* Dkt. Nos. 42, 46.) Since that time, several significant events have occurred, all of which support NSO's argument that this litigation should be dismissed under the doctrine of *forum non conveniens*.

*First*, NSO's ability to participate in discovery—and in its own defense—has been dramatically limited by [redacted]

*Second*, U.S. export laws have created unexpected and unmanageable practical difficulties and have drastically limited NSO's ability to participate in its own defense and comply with e-discovery obligations. In 2021, the U.S. government placed NSO on a Department of Commerce "Entity List." (*See* Compl. ¶¶ 1; 47)." Among the consequences of this designation is that

[1]Defendants filed their Motion to Dismiss on April 14, 2023, (*see* Dkt No. 42), but filed their Corrected Motion to Dismiss on April 21, 2023. (*See* Dkt No. 46).

American individuals or entities are barred from transferring a wide variety of information to NSO, including "technology" information. The Entity List restriction prevents NSO's counsel of record in this litigation from communicating with NSO about even NSO's own technologies. It will also prevent counsel from disclosing any new technological information received in discovery from Plaintiffs or third parties to NSO. Moreover, as has recently become clear [REDACTED]

*Third*, Israeli export-control laws prohibit NSO from transferring any "defense know how" outside of Israel. This includes information about NSO's technologies, which are regulated under Israel's Defense Export Control Law ("DECL"). Absent an export license from the Israeli Ministry of Defense, NSO is precluded from sharing information about its technology with Plaintiffs. NSO is even precluded from sharing such information with its own U.S. litigation counsel. NSO has applied to the Israeli Ministry of Defense for export licenses, but these licenses have not been granted. NSO is thus prohibited from producing protected documents in discovery, from conveying information needed to defend itself in this lawsuit to its own U.S. litigation counsel, and from providing testimony and other evidence in United States legal proceedings about its technology.

These developments provide substantial further reasons to dismiss this matter in favor of Israeli litigation, where NSO would not be prohibited from participating in its own defense by either Israeli or U.S. export laws. NSO therefore respectfully submits this supplemental memorandum in support of its request that this lawsuit be dismissed in favor of proceedings in Israel.

## II. SUPPLEMENTAL BACKGROUND AND CONTEXT

### A. [REDACTED]

The first U.S. lawsuit against NSO was filed on October 19, 2019. (Declaration of Joseph N. Akrotirianakis ("Akro. Decl.") ¶ 2.) [REDACTED]

. (Supplemental Declaration of Roy Blecher ("Supp. Blecher Decl.") ¶ 2.) (*Id.* ¶ 3 & Exh. A.)[2] The same day, (*Id.* ¶ 4 & Exh. B.) (*Id.* Exh. B at 1.) (*Id.*) Finally, (*Id.* ¶ 5.)[3]

. (Supp. Blecher Decl. ¶ 7 & Exh. C [4]

---

2 Copies of the materials attached to Mr. Blecher's supplemental declaration were previously provided to the Court under seal on December 5, 2023. (*See* Dkt. No. 70.)

3 . (Supp. Blecher Decl. ¶ 6.)

4 . (Supp. Blecher Decl. ¶ 7 & Exh. D

**B. The United States Subjects NSO to Export Controls**

On November 4, 2021, the U.S. Department of Commerce restricted certain U.S. exports to NSO. *See* 15 C.F.R. § 744, Supp. 4. The Department's Bureau of Industry and Security ("BIS") entered the "NSO Group" on its Entity List, which prohibits any U.S. entity from exporting items subject to Export Administration Regulations ("EAR") to NSO. *See id.* Under the EAR, "items" include hardware, software, technology, and related technical information that is currently located in—or comes into—the United States. *See id.* §§ 734.3(a)(1), 772.1. BIS may grant licenses authorizing the transfer of items subject to the EAR to NSO, but it indicated that licenses pertaining to NSO would be subject to a presumption of denial. *See id.* § 744, Supp. 4.

**C. NSO, King & Spalding, [REDACTED] Have Been Unable to Obtain Licenses Under Israeli or U.S. Law**

In early 2023, NSO, King & Spalding and [REDACTED]. These efforts have been unsuccessful.

On February 21, 2023, King & Spalding applied to BIS for an export license. (Akro. Decl. ¶ 3.) The license was intended to permit King & Spalding to discuss technical information (including NSO's own technical information) with NSO, so that King & Spalding could prepare NSO's defense in this litigation. (*Id.*) The license application was returned without action on April 20, 2023. (*Id.*) Subsequent discussions with BIS have not resulted in a license being granted. (*Id.*)

Similarly, in May 2023, [REDACTED]

---

[REDACTED] As relevant here, [REDACTED]

[redacted]

On June 8, 2023, NSO applied to the Israeli Ministry of Defense ("MoD") for a license to export information relating to Pegasus to the Courts in certain United States litigation proceedings, to King & Spalding, and to plaintiffs' counsel in those proceedings. (*Id.* ¶ 5.) To date, the MoD has not granted that license. (*Id.*)

## III. SUPPLEMENTAL ARGUMENT

In its motion to dismiss, NSO (among other arguments) moved to dismiss Dada's Complaint under the doctrine of *forum non conveniens*. (Mot. at 7:14-9:6; Reply at 6:10-7:22.) That argument is now further supported by NSO's and its counsel's inability to obtain Israeli and U.S. export licenses, combined with [redacted]. Those developments cause the private and public factors to weigh even more strongly in favor of dismissal (*See* Reply at 6:14-7:22.)[5]

### A. Given Recent Developments, the Private Factors Weigh Even More Heavily in Favor of Dismissal

Discovery and trial of this matter in the United States will be essentially impossible in light of the matters described above. As discussed in NSO's initial briefing, the seven private factors favor dismissal, including "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive." (Mot. at 7:26-8:3 (quoting *Carijano v. Occidental Petrol. Corp.*, 643 F.3d 1216, 1229 (9th Cir. 2011)). The developments described above bear on several of these factors in favor of dismissal.

With respect to the ***third factor***, the parties will be deprived of access to critical evidence located in Israel should these claims proceed in California. Under the [redacted]

[5] Dada does not dispute that Israel presents an adequate alternative forum. (*See* Opp. at 9:20-26.)

[redacted] However, [redacted] by U.S. policies favoring public disclosure of court documents and trial exhibits.

Furthermore, as discussed in NSO's initial briefing, Israel's DECL expressly prohibits Israeli citizens from transferring information about its technology outside of Israel or to non-Israelis in the absence of a government license. (Reply at 7:7-10.) NSO applied for licenses under DECL so that it could participate in discovery in certain United States litigation and could produce evidence in its defense. (Akro. Decl. ¶ 5.) That license application has not been granted. This provides a separate impediment to NSO producing broad swaths of documents or witness testimony relating to its operations and to its Pegasus technologies. In the absence of an export license, this Court's and the parties' access to critical documents and witnesses in Israel will be severely curtailed, and NSO's due process right to defend itself will be impaired. These same problems would not exist in an Israeli forum, where no export license would be required for NSO,

and the [REDACTED] As a result, this factor strongly favors dismissal.

With respect to the ***fourth factor*** regarding compelling unwilling witnesses, even if Israeli witnesses were eventually compelled to appear for depositions, the lack of an export license prohibits the witnesses from testifying about matters subject to DECL. This will not be an issue if Plaintiffs are required to bring their claims in Israel, where no exporting of information will be necessary and Israeli witnesses can be compelled to testify. Moreover, [REDACTED].

With respect to the "practical problems" ***seventh factor***, two new "practical" concerns favor trial in Israel. [REDACTED] (*See* Akro Decl. ¶ 4.) In this age of electronic discovery, document review and production of the type anticipated by the Federal Rules of Civil Procedure are all but impossible without e-discovery software. Accordingly, if this litigation were to proceed in the United States, NSO would have to attempt to respond to Plaintiffs' discovery requests without the benefit of the e-discovery discovery software that is universally used to review and produce materials in U.S. litigation on the scale that Plaintiffs will inevitably demand. This concern would be dramatically reduced if the proceedings were moved to Israel, where no e-discovery technology would need to be transferred from the United States in order to comply with Israel's less-burdensome e-discovery requirements, which could be met with non-U.S.-based technology solutions available to NSO.

Second, NSO was placed on the Department of Commerce's BIS Entity List in late 2021. *See* 15 C.F.R. § 744, Supp. 4. As a result, all persons—in particular, individuals and entities in the United States—are prohibited from exporting, re-exporting, or transferring various items to

NSO. *See id.* § 744.11(a). This includes information about NSO's own proprietary technology. Indeed, the list of prohibited items includes both "software" and "technology" that currently are located in, or could come into, the United States. *Id.* §§ 772.1, 734.3(a)(1). "Technology" is defined broadly to include any "[i]nformation necessary for the 'development,' 'production,' 'use,' operation, installation, maintenance, repair, overhaul, or refurbishing . . . of an item." *Id.* § 772.1. There is no exception for technology created and owned by NSO itself. The practical effect of these regulations is that NSO's U.S. litigation counsel cannot communicate with NSO regarding any of NSO's own technology—the core subject matter of this litigation—or share with NSO any technical discovery received from Plaintiffs or from third parties. Exports could be permitted with a license, *id.* § 744.11(a), but King & Spalding's February 21, 2023 application for a license so that it can effectively defend NSO in this litigation has not been granted. (*See* Akro. Decl. ¶ 3.)

In sum, the lack of export licenses and the [REDACTED] cause the private factors to weigh even more heavily in favor of dismissal. Litigating this matter in the United States would effectively prohibit NSO from producing critical evidence (both documents and witnesses) and from assisting its U.S. defense counsel in preparing its defense. This matter should therefore be dismissed and brought in Israel, an adequate alternative forum, to avoid disproportionate "oppressiveness and vexation" to NSO. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007).

### B. Given Recent Developments, the Public Factors Also Weigh More Strongly in Favor of Dismissal

The issues raised above also cause the public factors to weigh more strongly in favor of dismissal. The public factors to be considered include "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." (Mot. at 8:23-26 (quoting *Carijano*, 643 F.3d at 1232).)

Here, the [REDACTED] speak directly to the ***first factor***. Israel's interest in this lawsuit far outweighs that of California. NSO's conduct is closely regulated by the Israeli government. [REDACTED]

[REDACTED] The [REDACTED] Israel's substantial interest in this lawsuit [REDACTED] (*See* Opp. at 10:18-20.) Dada cites no [REDACTED] statements or actions by California or by the United States concerning these specific lawsuits. Accordingly, "the local courts in [Israel] would likely have a greater understanding of the circumstances surrounding the dispute" and a greater interest in the action. *See Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1453 (9th Cir. 1990).

Furthermore, under the ***third factor***, the inability of NSO, King & Spalding and NSO's market-leading e-discovery vendor to obtain export licenses, combined with [REDACTED], render the suit extraordinarily burdensome to try—particularly given the sensitivity of the documents, the complications involved in managing discovery under potentially conflicting Israeli and U.S. legal regimes, and California's relatively limited and generic interest in this lawsuit compared to [REDACTED] interest.

## IV. CONCLUSION

For the reasons stated in NSO's initial briefing, and in this supplemental memorandum, the Court should dismiss these proceedings in favor of Israeli litigation under the doctrine of *forum non conveniens*.

DATED: January 5, 2024

KING & SPALDING LLP

By: */s/ Joseph N. Akrotirianakis*
JOSEPH N. AKROTIRIANAKIS
AARON S. CRAIG

Attorneys for Defendants NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED