1   JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
    *jakro@kslaw.com*
2   AARON S. CRAIG (Bar No. 204741)
    *acraig@kslaw.com*
3   KING & SPALDING LLP
    633 West Fifth Street, Suite 1700
4   Los Angeles, CA 90071
    Telephone:     (213) 443-4355
5   Facsimile:     (213) 443-4310

6   Attorneys for Defendants NSO Group Technologies Ltd.
    and Q Cyber Technologies Ltd.
7

8                  UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11

12  CARLOS DADA, SERGIO ARAUZ,              Case No. 3:22-cv-07513-JD
    GABRIELA CÁCERES GUTIÉRREZ, JULIA       [*The Honorable James Donato*]
    GAVARRETE, ROMAN GRESSIER,
13  GABRIEL LABRADOR, ANA BEATRIZ           **RENEWED NOTICE OF MOTION AND**
    LAZO ESCOBAR, EFREN LEMUS,              **MOTION OF DEFENDANTS TO**
14  DANIEL LIZÁRRAGA, CARLOS LÓPEZ          **DISMISS FIRST AMENDED**
    SALAMANCA, CARLOS MARTÍNEZ,             **COMPLAINT [FED. R. CIV. P. 12(B)(2),**
15  ÓSCAR MARTÍNEZ, MARÍA LUZ               **(B)(6), FORUM NON CONVENIENS];**
    NÓCHEZ, VÍCTOR PEÑA, NELSON             **MEMORANDUM OF POINTS AND**
16  RAUDA ZABLAH, DANIEL REYES              **AUTHORITIES**
    MARTÍNEZ, MAURICIO SANDOVAL
17  SORIANO, and JOSÉ LUIS SANZ,            *[Filed Concurrently with [Proposed] Order]*

18                 Plaintiffs,              Date:     November 3, 2025
                                            Time:     10:00 a.m.
19           v.                             Ctrm:     11

20  NSO GROUP TECHNOLOGIES LTD.
    And Q CYBER TECHNOLOGIES LTD.,          Action Filed:   11/30/2022
21

22                 Defendants.

23

24

25

26

27

28

---

# <u>TABLE OF CONTENTS</u>

**Page(s)**

I.      BACKGROUND ..................................................................................................... 1

II.     THE COMPLAINT SHOULD BE DISMISSED FOR *FORUM NON CONVENIENS*............................................................................................................ 3

III.    NSO IS NOT SUBJECT TO PERSONAL JURISDICTION IN CALIFORNIA. ........................................................................................................ 6

IV.     THE COMPLAINT DOES NOT STATE A CLAIM AGAINST NSO. .................. 10

    A.      Plaintiffs lack statutory standing to bring a private CFAA claim.................. 10

    B.      The CFAA does not authorize aiding and abetting liability. ......................... 12

    C.      Plaintiffs cannot sue NSO under California law............................................ 13

    D.      Plaintiffs do not state a CDAFA or trespass to chattels claim...................... 14

V.      CONCLUSION..................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adv. Fluid Sys. v. Huber*,
28 F. Supp. 3d 306 (M.D. Pa. 2014) ...................................................................13

*Alhathloul v. DarkMatter Grp.*,
2023 WL 2537761 (D. Or. Mar. 16, 2023) .....................................................6, 7, 8

*Alhathloul v. DarkMatter Grp.*,
2025 WL 2320474 (D. Or. Aug. 12, 2025) ............................................................8

*Alternate Health USA Inc. v. Edalat*,
2022 WL 767573 (C.D. Cal. Mar. 14, 2022) ......................................................4, 6

*Amoco Egypt Oil Co. v. Leonis Nav. Co.*,
1 F.3d 848 (9th Cir. 1993) .....................................................................................9

*Andrews v. Sirius XM Radio Inc.*,
932 F.3d 1253 (9th Cir. 2019) .......................................................................10, 11

*Apple Inc. v. NSO Grp. Techs.*,
No. 3:21-cv-09078 (N.D. Cal. Nov. 12, 2024) .....................................................5

*Arabian v. Sony Elec. Inc.*,
2007 WL 627977 (S.D. Cal. Feb. 22, 2007) ........................................................13

*Atl. Recording Corp. v. Serrano*,
2007 WL 4612921 (S.D. Cal. Dec. 28, 2007) ......................................................15

*Bose v. Interclick, Inc.*,
2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011) .....................................................10

*Bristol-Myers Squibb Co. v. Super. Ct.*,
582 U.S. 255 (2017)................................................................................................7

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .................................................................11

*Calendar Res. LLC v. StubHub, Inc.*,
2020 WL 4390391 (C.D. Cal. May 13, 2020) ......................................................10

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.*,
334 F.3d 390 (4th Cir. 2003) .................................................................................8

*Casillas v. Berkshire Hathaway Homestate Ins. Co.*,
79 Cal. App. 5th 755 (2022) ................................................................................15

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994) ........................................................................................13

*Cigniti Techs. Inc. v. Govinsadamy*,
    2024 WL 4329021 (N.D. Tex. Aug. 7, 2024) ..........................................................13

*Contact Lumber Co. v. P.T. Moges Shipping Co.*,
    918 F.2d 1446 (9th Cir. 1990) .............................................................................6

*Corallo v. NSO Grp. Techs.*,
    2024 WL 4367924 (N.D. Cal. Sept. 4, 2024) ............................................... *passim*

*Core-Vent Corp. v. Nobel Indust. AB*,
    11 F.3d 1482 (9th Cir. 1993) ...............................................................................9

*Cottle v. Plaid Inc.*,
    536 F. Supp. 3d 461 (N.D. Cal. 2021) .................................................................14

*Creative Computing v. Getloaded.com LLC*,
    386 F.3d 930 (9th Cir. 2004) .........................................................................10, 11

*Dada v. NSO Grp. Techs.*,
    2025 WL 1879527 (9th Cir. July 8, 2025)..........................................................2, 3, 5

*Del Vecchio v. Amazon.com, Inc.*,
    2011 WL 6325910 (W.D. Wash. Dec. 1, 2011) ........................................................11

*DHI Grp. v. Kent*,
    2017 WL 1088352 (S.D. Tex. Mar. 3, 2017) ..........................................................13

*Doe I v. Google LLC*,
    741 F. Supp. 3d 828 (N.D. Cal. 2024) .................................................................15

*Doe v. Tenet Healthcare Corp.*,
    2025 WL 1635956 (E.D. Cal. June 9, 2025) ..........................................................15

*Doyle v. Taylor*,
    2010 WL 2163521 (E.D. Wash. May 24, 2010)........................................................11

*FAS Techs. v. Dainippon Screene Mfg. Co.*,
    2001 WL 1159776 (N.D. Cal. Sept. 21, 2001) ........................................................13

*Fields v. Wise Media, LLC*,
    2013 WL 5340490 (N.D. Cal. Sept. 24, 2013) ........................................................15

*Flynn v. Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP*,
    2011 WL 2847712 (D. Nev. July 15, 2011) ..........................................................13

*FPK Servs. LLC v. Does 1-10*,
    2020 WL 5982061 (N.D. Cal. Oct. 8, 2020)............................................................8

*Freeman v. DirecTV, Inc.*,
    457 F.3d 1001 (9th Cir. 2006) ........................................................................................13

*Garland-Sash v. Lewis*,
    2011 WL 6188712 (S.D.N.Y. Dec. 6, 2011) ..................................................................11

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
    284 F.3d 1114 (9th Cir. 2002) .........................................................................................9

*Glob. Commodities Trading Grp. v. Beneficio de Arroz Choloma, S.A.*,
    972 F.3d 1101 (9th Cir. 2020) .........................................................................................3

*Goodman v. Goodman*,
    2022 WL 17826390 (S.D.N.Y. Dec. 21, 2022) .............................................................11

*GreatFence.com v. Bailey*,
    726 F. App'x 260 (5th Cir. 2018) .....................................................................................8

*Hancock v. Cty. of Rensselaer*,
    2014 WL 12961140 (N.D.N.Y. Sept. 24, 2014) ...........................................................11

*Holland Am. Line Inc. v. Wartsila N.A., Inc.*,
    485 F.3d 450 (9th Cir. 2007) .........................................................................................10

*Hungerstation LLC v. Fast Choice LLC*,
    2020 WL 137160 (N.D. Cal. Jan. 13, 2020), *aff'd*, 857 F. App'x 349 (9th Cir.
    2021) ........................................................................................................................8, 9, 10

*Hungerstation LLC v. Fast Choice LLC*,
    857 F. App'x 349 (9th Cir. 2021) ..................................................................................8, 9

*Intel Corp. v. Hamidi*,
    30 Cal. 4th 1342 (2003) ...........................................................................................14, 15

*In re iPhone App. Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) .....................................................................11, 12

*Khashoggi v. NSO Grp. Techs.*,
    138 F.4th 152 (4th Cir. 2025) ...................................................................................6, 7, 8

*Koninklijke Philips N.V. v. Elec-Tech Int'l*,
    2015 WL 1289984 (N.D. Cal. Mar. 20, 2015)...............................................................13

*Lineberry v. AddShopper, Inc.*,
    2025 WL 551864 (N.D. Cal. Feb. 19, 2025) .................................................................13

*Lockman Found. v. Evangelical Alliance Mission*,
    930 F.2d 764 (9th Cir. 1991) ...........................................................................................3

*Lueck v. Sundstrand Corp.*,
    236 F.3d 1137 (9th Cir. 2001) .........................................................................................4

*M Seven Sys. Ltd. v. Leap Wireless Int'l, Inc.*,
  2013 WL 12072526 (S.D. Cal. June 26, 2013)..............................................13, 14

*Motu Novu, LLC v. Percival*,
  2017 WL 7243462 (N.D. Cal. Dec. 1, 2017) ........................................................7

*Mount v. PulsePoint, Inc.*,
  2016 WL 5080131 (S.D.N.Y. 2016)..................................................................15

*MSC Safety Sols. v. Trivent Safety Consulting*,
  2020 WL 7425874 (D. Colo. Dec. 18, 2020)......................................................12

*Nova for Info. Tech. & Consulting v. Envmtl. Sys. Res. Inst.*,
  2025 WL 1607592 (C.D. Cal. May 7, 2025) .......................................................5, 6

*NovelPoster v. Javitch Canfield Grp.*,
  140 F. Supp. 3d 938 (N.D. Cal. 2014) ...........................................................12, 14

*Nowak v. Xapo, Inc.*,
  2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ...................................................13, 14

*Oman v. Delta Air Lines*,
  889 F.3d 1075 (9th Cir. 2018) ........................................................................14

*Oracle Corp. v. SAG AG*,
  734 F. Supp. 2d 956 (N.D. Cal. 2010) ...............................................................13

*Paccar Int'l v. Comm. Bank of Kuwait*,
  757 F.2d 1058 (9th Cir. 1985) ..........................................................................9

*Picot v. Weston*,
  780 F.3d 1206 (9th Cir. 2015) ..........................................................................7

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981).......................................................................................3

*Podium Corp. v. Chekkit Geolocation Servs.*,
  2021 WL 5772269 (D. Utah Dec. 6, 2021)..........................................................13

*Prevail Legal, Inc., v. Gordon*,
  2021 WL 1947578 (N.D. Cal. May 14, 2021) ........................................................8

*Reflex Media, Inc. v. Chan*,
  2020 WL 6694316 (C.D. Cal. Oct. 30, 2020).........................................................7

*Sajfr v. BBG Comms.*,
  2012 WL 398991, at *4 (S.D. Cal. Jan. 10, 2012)..................................................14

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) .....................................................................6, 7, 9

*Shah v. Cap. One Fin. Corp.*,
    768 F. Supp. 3d 1033 (N.D. Cal. 2025) ...................................................................12

*Sonterra Cap. Master Fund v. Credit Suisse Grp.*,
    277 F. Supp. 3d 521 (S.D.N.Y. 2017)....................................................................10

*Sullivan v. Oracle Corp.*,
    51 Cal. 4th 1191 (2011) ........................................................................................13

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
    313 F. Supp. 3d 1056 (N.D. Cal. 2018) ............................................................10, 15

*Terpin v. AT&T Mobility, LLC*,
    399 F. Supp. 3d 1035 (C.D. Cal. 2019) ..................................................................13

*Turner v. Hubbard Sys.*,
    2016 WL 1046949 (D. Mass. Mar. 10, 2016) .........................................................11

*United Fed'n of Churches v. Johnson*,
    598 F. Supp. 3d 1084 (W.D. Wash. 2022).........................................................11, 12

*Van Buren v. United States*,
    593 U.S. 374 (2021).........................................................................................10, 11

*Vertkin v. Vertkin*,
    2007 WL 4287512 (N.D. Cal. Dec. 6, 2007) ..........................................................15

*Walsh v. Microsoft Corp.*,
    63 F. Supp. 3d 1312 (W.D. Wash. 2014) ................................................................12

*Wesch v. Yodlee, Inc.*,
    2021 WL 1399291 (N.D. Cal. Feb. 16, 2021) .........................................................12

*WhatsApp Inc. v. NSO Grp. Techs.*,
    2023 WL 7726411 (N.D. Cal. Nov. 15, 2023) ..........................................................4

*WhatsApp Inc. v. NSO Grp. Techs.*,
    2024 WL 3639375 (N.D. Cal. Aug. 1, 2024) ............................................................4

*WhatsApp Inc. v. NSO Grp. Techs.*,
    2024 WL 812014 (N.D. Cal. Feb. 23, 2024) .............................................................4

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
    472 F. Supp. 3d 649 (N.D. Cal. 2020) ....................................................3, 7, 14, 15

*WhatsApp v. NSO Grp. Techs.*,
    2024 WL 5190635 (N.D. Cal. Dec. 20, 2024) ..........................................................4

*WhatsApp v. NSO Grp. Techs.*,
    No. 19-cv-07123 (N.D. Cal. Apr. 15, 2025) .............................................................5

*X Corp. v. Bright Data Ltd.*,
    733 F. Supp. 3d 832 (N.D. Cal. 2024) .................................................................15

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
    433 F.3d 1199 (9th Cir. 2006) ......................................................................6, 7

*Yangtze Memory Techs., Inc. v. Strand Consult*,
    2025 WL 1455818 (N.D. Cal. May 20, 2025) ..............................................8

*Zellerino v. Roosen*,
    2016 WL 10988763 (C.D. Cal. Aug. 22, 2016) .............................................7

**Statutes**

Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code §
    502(e)(1) ................................................................................................14

Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ..................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 4(k)(2) ................................................................................9, 10

Fed. R. Civ. P. 12(b)(2) and 12(b)(6) ..........................................................1

**MOTION TO DISMISS**

PLEASE TAKE NOTICE that on November 3, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard, Defendants NSO Group Technologies LTD. and Q Cyber Technologies LTD. (collectively, "NSO") will, and hereby do, move the Court for an order dismissing the First Amended Complaint ("Complaint" or "FAC") for *forum non conveniens* and under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). This motion is based on this Notice, the attached Memorandum, the pleadings, papers and records on file in this case, and such oral argument as may be presented at any hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

On remand from the Ninth Circuit, this Court should adhere to its previous conclusion that the *forum non conveniens* doctrine requires dismissal of this lawsuit. As the Court found, Plaintiffs improperly ask the Court to "open the doors of the federal courts to lawsuits by foreign entities for conduct that occurred entirely outside the United States, a result that cannot be squared with our traditional understanding of due process and limited jurisdiction." (Dkt. 78 at 7.) Although the Ninth Circuit disagreed with this Court's articulation of the standards governing a motion to dismiss for *forum non conveniens*, this Court's *conclusion* remains correct—and in fact has been confirmed by developments in other lawsuits against NSO. Accordingly, this Court should again dismiss Plaintiffs' complaint for *forum non conveniens*.

Even if the Court does not rely on *forum non conveniens*, it should dismiss Plaintiffs' claims on other grounds. NSO is not subject to personal jurisdiction in this Court. Plaintiffs do not identify any case-related contacts that NSO intentionally created with California or the U.S., and they do not allege any of NSO's alleged conduct injured them in California. And even if Plaintiffs could bring their claims in this Court, they do not adequately plead any of those claims. Each of these defects independently provides a sufficient basis to dismiss the complaint with prejudice.

**I.    BACKGROUND**

NSO designs and licenses to government agencies a highly-regulated technology used to investigate terrorism and serious crimes. (Dkt. 46-2 ¶¶ 5-9; FAC ¶ 32.) The export of NSO's "Pegasus" technology is regulated under Israel's Defense Export Control Law, and the Israeli

Government determines the nations to which NSO may license its technology. (Dkt. 46-2 ¶¶ 5-6 & Exh. A.) NSO does not operate Pegasus; its government customers operate the technology and make all decisions about how to do so. (*Id.* ¶ 10.) NSO's license agreements prohibit the use of its technology against anyone who is not a suspected terrorist or criminal. (*Id.* ¶¶ 8, 10-11.)

Plaintiffs allege they are Salvadoran "journalists and others who write, produce, and publish El Faro, a digital newspaper based in El Salvador." (FAC ¶¶ 4, 14-31.) Almost every Plaintiff currently resides in El Salvador, and no Plaintiff alleges he or she has ever lived in California. (*Id.* ¶¶ 14-31.) Plaintiffs allege one of NSO's government customers used Pegasus to access their Apple devices "[b]etween June 2020 and November 2021," when all Plaintiffs were "working in and around El Salvador." (*Id.* ¶ 53.)

Plaintiffs allege they discovered the access to their Apple devices through an analysis by a third party, Citizen Lab. (*Id.* ¶¶ 41, 60-61.) The Citizen Lab report Plaintiffs incorporate into their Complaint linked the alleged access to a supposed "Pegasus customer operating almost exclusively in El Salvador," which "very likely … represents the Salvadoran government." (J. Scott-Railton *et al.*, *Project Torogoz*, Citizen Lab Research Report No. 148 at 1, 4-5 (2022), https://bit.ly/3zLUiJD; *see* FAC ¶¶ 58, 63, 73, 77, 105 (linking alleged hacking to El Salvador).) Plaintiffs do not claim El Salvador's alleged Pegasus use violated Salvadoran law or damaged their Apple devices.

This Court previously dismissed Plaintiffs' claims for *forum non conveniens*. (Dkt. 78.) The Ninth Circuit vacated the dismissal and remanded for reconsideration. *Dada v. NSO Grp. Techs.*, 2025 WL 1879527 (9th Cir. July 8, 2025). The Ninth Circuit did not reject this Court's conclusion that *forum non conveniens* bars Plaintiffs' suit. The Ninth Circuit merely disagreed with this Court's articulation of two legal standards. First, although this Court "correctly not[ed] that the strong presumption in favor of a domestic plaintiff's choice of forum 'applies with less force' when they do not sue in their home forum," the Ninth Circuit read "the order as a whole" as "incorrectly . . . apply[ing] the foreign plaintiff standard." *Id.* at *1. Second, the Ninth Circuit relied on the phrasing of several sentences in this Court's order to find that this Court "shifted the burden of proof from Defendants to Plaintiffs." *Id.* at *2. The Ninth Circuit expressed no view on the correct result under its articulation of the proper standards.

## II.    THE COMPLAINT SHOULD BE DISMISSED FOR *FORUM NON CONVENIENS*.

This Court should again dismiss Plaintiffs' complaint because, as the Court recognized, this case "belongs in a court in Israel or El Salvador, and not here." (Dkt. 78 at 7.) Nothing in the Ninth Circuit's decision, which vacated this Court's order on essentially semantic grounds, undermines this Court's ultimate finding that *forum non conveniens* requires dismissal. Dismissal remains appropriate because NSO has met its burden to show that Israel is "an adequate alternative forum" and that the "private" and "public" factors favor dismissal. *Glob. Commodities Trading Grp. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1110 (9th Cir. 2020). Indeed, that conclusion has only become stronger since the Court's prior decision. *See Corallo v. NSO Grp. Techs.*, 2024 WL 4367924, at *4 (N.D. Cal. Sept. 4, 2024) (Seeborg, J.) (dismissing claim against NSO for *forum non conveniens*).

1. This Court previously found Israel to be an adequate alternative forum (Dkt. 78 at 4). The Ninth Circuit did not upset that finding. Israel is an adequate alternative forum because NSO, an Israeli citizen, "is 'amenable to process'" there. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981); *see WhatsApp Inc. v. NSO Grp. Techs.*, 472 F. Supp. 3d 649, 677 (N.D. Cal. 2020).

2. This Court previously held that the private *forum non conveniens* factors favor dismissal (Dkt. 78 at 5), and that conclusion has only grown stronger. As this Court "correctly not[ed]," the "presumption in favor of a domestic plaintiff's choice of forum 'applies with less force'" here, where Plaintiffs "do not sue in their home forum[s]." *Dada*, 2025 WL 1879527, at *1; (Dkt. 78 at 3). Even an American "citizen's forum choice should not be given dispositive weight … [i]f the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court." *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 767 (9th Cir. 1991) (cleaned up) (quoting *Piper*, 454 U.S. at 256 n.23). That is the case here.

The burden on NSO from litigating in this forum would be great. "[N]either side was present in, or had any ties to, this District in connection with the allegations in the complaint." (Dkt. 78 at 5.) NSO has always operated solely in Israel, where "all of its material witnesses and evidence are located." (*Id.*; Shohat Decl. ¶ 4.) Plaintiffs all "lived and worked in El Salvador during the period relevant to the complaint, save for one who was located in Washington D.C." (Dkt. 78

at 5; FAC ¶¶ 14-31.) Consequently, the key witnesses and evidence would be located in El Salvador, Israel, and other foreign jurisdictions. (Dkt. 78 at 5.) Much of that evidence will be unavailable in this Court because Israeli law imposes strict limits on the information NSO and its employees may disclose outside of Israel. (Dkt. 46-1; Dkts. 70-2–8; Dkt. 73-3; Dkt. 46-2 ¶¶ 3, 5-9 & Exh. A); *see Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1147 (9th Cir. 2001) ("private interest factors weigh in favor of dismissal" when foreign evidence is not fully under parties' control). Those same restrictions would not apply if this lawsuit were litigated in Israel. The evidence and testimony would remain within Israel, and the court could structure discovery to avoid export control concerns.[1]

Indeed, these evidentiary restrictions have *already* significantly burdened NSO in the *WhatsApp* case in this District. The *WhatsApp* court limited the scope of discovery based on Israeli law but nonetheless ordered NSO to produce substantial evidence even if doing so would violate Israeli law. *WhatsApp Inc. v. NSO Grp. Techs.*, 2023 WL 7726411, at *6 (N.D. Cal. Nov. 15, 2023); *WhatsApp Inc. v. NSO Grp. Techs.*, 2024 WL 812014, at *2-3 (N.D. Cal. Feb. 23, 2024). In particular, the court ordered WhatsApp to produce "Pegasus computer code" despite Israeli "export controls and other restrictions" prohibiting that disclosure. *WhatsApp Inc. v. NSO Grp. Techs.*, 2024 WL 3639375, at *4 (N.D. Cal. Aug. 1, 2024). NSO thus made substantial efforts to produce technical information in the United States, including by receiving an unprecedented license from the Government of Israel permitting it to produce some of that information. NSO also produced portions of Pegasus code to WhatsApp's Israeli counsel of record, who are located in Israel. Despite that production, the court held that NSO had violated its order because the court intended to require production *in the United States*, which NSO's export license did not permit. *WhatsApp v. NSO Grp. Techs.*, 2024 WL 5190635, at *4-6 (N.D. Cal. Dec. 20, 2024). The court punished NSO through an "evidentiary sanction" on summary judgment, the only basis upon which the court exercised personal jurisdiction over NSO. *Id.* at *6. The court also relied on the limited scope of discovery to preclude NSO from introducing basic evidence related to its conduct and intentions at a damages trial, where NSO's motives were a central issue. Final Pretrial Order

---

[1] Moreover, any potential judgment against NSO "would be easier to enforce" in Israel, which "weighs strongly in favor of dismissal." *Edalat*, 2022 WL 767573, at *9.

at 1-8, *WhatsApp v. NSO Grp. Techs.*, No. 19-cv-07123 (N.D. Cal. Apr. 15, 2025).

The *WhatsApp* court's evidentiary rulings confirm this Court's previous finding that "[l]itigating the case in this District" would "impose significantly heavier burdens on NSO than plaintiffs." (Dkt. 78 at 5.) Israeli law will limit NSO's ability to participate in discovery and impair NSO's ability to defend itself on summary judgment and at trial. Those same burdens would not exist in Israeli court. Plaintiffs, by contrast, will not experience any meaningful convenience from litigating in California as opposed to Israel. Plaintiffs themselves have no evidence in California, where they have never lived. The only connection to California that Plaintiffs have ever identified are their allegations that NSO used Apple servers to design Pegasus. *See Dada*, 2025 WL 1879527, at *2; (FAC ¶¶ 3.) But that alleged conduct is, at best, tangential to Plaintiffs' claims, which relate exclusively to El Salvador's alleged use of Pegasus to access Plaintiffs' devices in El Salvador. Plaintiffs do not challenge any use of California Apple servers; they challenge alleged access to their devices, which undisputedly occurred entirely outside of California. (FAC ¶¶ 43-44.) Accordingly, any evidence located in California related to Apple servers will be far less important than foreign evidence. (Dkt. 78 at 5); *see Nova for Info. Tech. & Consulting v. Envmtl. Sys. Res. Inst.*, 2025 WL 1607592, at *5 (C.D. Cal. May 7, 2025) (finding private factors favored dismissal when "key" witnesses were in Kuwait despite other witnesses being in California). And there is no reason to think that such evidence—if it even exists—would be more easily obtained in this Court than in Israel. (Dkt. 78 at 5.)[2] Apple's presence in California is thus insufficient to overcome the substantial burden to NSO of litigating in California.

3. This Court also held that the public factors favor dismissal (Dkt. 78 at 6), and nothing has occurred since to change that conclusion. There is no meaningful "local interest" in this case; California has no interest in foreign plaintiffs' claims against foreign defendants based on foreign conduct. To the extent that California ever had an interest in protecting Apple (Dkt. 78, at 6), Apple itself concluded that litigation against NSO in California would not serve that interest, as a result

---

[2] Plaintiffs previously relied on Apple's lawsuit against NSO in this District (Dkt. 78 at 5), but Apple has since dismissed that case. *Apple Inc. v. NSO Grp. Techs.*, No. 3:21-cv-09078 (N.D. Cal. Nov. 12, 2024), ECF No. 103. The other cases filed against NSO in this District have also been resolved, either through trial (*WhatsApp*) or dismissal with prejudice (*Corallo*).

of which Apple voluntarily dismissed its own lawsuit against NSO. (*Apple*, No. 3:21-cv-09078, ECF No. 103.) Moreover, "Apple is not a party to this action," so "its interests cannot be considered." *Alhathloul v. DarkMatter Grp.*, 2023 WL 2537761, at *11 (D. Or. Mar. 16, 2023). Israel, in contrast, has strong national-security interests, including protecting information governed by Israel's export control laws or related to the Israeli government's decisions whether to approve particular NSO customers. (Shohat Decl. ¶¶ 5-9). For the same reason, Israel's courts would have a greater interest in and "understanding of the circumstances surrounding the dispute." *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1453 (9th Cir. 1990).

In these circumstances, the "burden on local courts and juries, and the related costs, are not justified." *Edalat*, 2022 WL 767573, at *11. "Federal district courts are generally overburdened[] and, as such, it is in the public interest to prevent court congestion by transferring cases to a more convenient forum when possible and practicable." *Nova*, 2025 WL 1607592, at *5. As this Court previously found, "[b]urdening a jury in this District with" Plaintiffs' foreign claims "makes little sense." (Dkt. 78 at 6.)

## III.    NSO IS NOT SUBJECT TO PERSONAL JURISDICTION IN CALIFORNIA.

Even if *forum non conveniens* did not bar Plaintiffs' suit, allowing Plaintiffs to sue NSO in this Court "for conduct that occurred entirely outside the United States … cannot be squared with our traditional understanding of due process and limited jurisdiction." (Dkt. 78 at 7.) Specifically, Plaintiffs' allegations do not support personal jurisdiction over NSO because they do not "arise[] out of or relate[] to" conduct through which NSO "purposefully directed its activities toward California." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). In a "tort" case like this one, Plaintiffs must allege that NSO "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 802-03. Plaintiffs have not satisfied that burden. *See Khashoggi v. NSO Grp. Techs.*, 138 F.4th 152, 161-64 (4th Cir. 2025) (dismissing claim against NSO for lack of personal jurisdiction); *Corallo*, 2024 WL 4367924, at *3-4 (same).

1. None of NSO's alleged conduct can support specific jurisdiction because Plaintiffs do not claim NSO foreseeably harmed them "in the forum state." *Yahoo! Inc. v. La Ligue Contre Le*

*Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (en banc). In the Ninth Circuit, "a jurisdictionally sufficient amount of harm" must be "suffered in the forum state." *Id.*[3] Here, however, no Plaintiff resides in California (FAC ¶¶ 14-31), and any harm Plaintiffs allegedly suffered occurred in their foreign residences. That alone precludes personal jurisdiction over NSO in California. *Alhathloul*, 2023 WL 2537761, at \*8; *Zellerino v. Roosen*, 2016 WL 10988763, at \*6-7 (C.D. Cal. Aug. 22, 2016).

In any event, Plaintiffs allege no case-related conduct that NSO "expressly aimed" at California. *Schwarzenegger*, 374 F.3d at 803. All alleged NSO conduct took place overseas and, even taking the FAC allegations as true, was directed at Plaintiffs in El Salvador. (FAC ¶ 53); *see Khashoggi*, 138 F.4th at 161 (no personal jurisdiction over NSO in Virginia when plaintiff alleged Pegasus was installed on her phone in other countries). Plaintiffs have argued that specific jurisdiction exists because NSO allegedly accessed *Apple's* servers to design its software, but that cannot support specific jurisdiction in this case.[4] Plaintiffs do not plead facts plausibly suggesting NSO *did* use Apple's California-based servers and simply assert, "[o]n information and belief," that some Apple servers are in California. (*Id.* ¶¶ 3, 41.) Allegations on "information and belief" do not support jurisdiction. *Reflex Media, Inc. v. Chan*, 2020 WL 6694316, at \*3 (C.D. Cal. Oct. 30, 2020); *Motu Novu, LLC v. Percival*, 2017 WL 7243462, at \*1 (N.D. Cal. Dec. 1, 2017); *see Corallo*, 2024 WL 4367924, at \*3 (rejecting as "speculative" allegation "NSO targeted Apple's servers").

That aside, the court in *Corallo* correctly held that allegations "that NSO targeted Apple's servers in California" are "legally insufficient to give rise to personal jurisdiction over NSO." 2024 WL 4367924, at \*3.[5] That is because personal jurisdiction is not "proper over a private foreign

---

[3] *See Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 265 (2017) (holding California lacked jurisdiction over "nonresidents" who "were not injured … in California"); *Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015) (requiring "injury" that is "tethered to California").

[4] Plaintiffs also allege that NSO received funding from "California-based companies" and marketed its technology "to law enforcement agencies across the United States" (FAC ¶¶ 34, 41), but Plaintiffs did not previously argue for personal jurisdiction on that basis. Plaintiffs' claims do not arise out of or relate to NSO's financing or marketing to U.S.-based law enforcement agencies, and NSO's California-based financing ended before any of the alleged events underlying Plaintiffs' claims. *WhatsApp*, 472 F. Supp. 3d at 675.

[5] *WhatsApp* did not "exercise[] personal jurisdiction over [NSO] based on substantially similar facts." (FAC ¶ 10.) *WhatsApp* relied on allegations that NSO "sought out specific [California-based] servers" *owned by WhatsApp*. 472 F. Supp. 3d at 671-72. The court found it "critical" that "the servers in question [were] not owned by third parties." *Id.* at 671. "By negative implication,

entity solely because that entity engaged in tortious foreign conduct from a location outside the United States by remotely accessing servers located in the United States." *Hungerstation LLC v. Fast Choice LLC*, 857 F. App'x 349 (9th Cir. 2021); *see also Alhathloul*, 2023 WL 2537761, at *5-8; *Hungerstation LLC v. Fast Choice LLC*, 2020 WL 137160, at *5 (N.D. Cal. Jan. 13, 2020).[6] In *Alhathloul*, for example, a foreign plaintiff accused a foreign defendant of using Apple "servers located in the United States" to send malware to her iPhone. *Id.* at *2, 5. The court held that could not support specific jurisdiction "because the computer manipulated to commit the tort was [the] [p]laintiff's phone, not Apple's servers." *Id.* at *5 (cleaned up). Here too, Plaintiffs allege the "messages transmitted from [NSO] to Plaintiffs contained an exploit and malware before they reached Apple's servers." *Id.* (cleaned up); (*see* FAC ¶ 43). And, like the plaintiff in *Alhathloul*, Plaintiffs do not allege NSO "commit[ted] any illegal act directly to Apple's servers." 2023 WL 2537761, at *5. Plaintiffs' claims are based on the alleged "hack" and "surveillance" of their devices, which "occurred outside of the forum state." *Id.* at *8; *see Khashoggi*, 138 F.4th at 161.[7]

    Similarly, in *Hungerstation*, the plaintiff sued the defendants under the CFAA for stealing data stored on third-party California servers. 2020 WL 137160, at *1-2. The court held the "presence of servers in California" was "insufficient to find that [d]efendants expressly aimed their conduct at California." *Id.* at *5. Because the plaintiff did "not have a server in California" and neither party controlled where "third parties located their servers," the location of those servers was "pure happenstance." *Id.* The Ninth Circuit affirmed, holding the defendants were not subject to jurisdiction *anywhere in the United States* because "the location of the servers was fortuitous." *Hungerstation*, 857 F. App'x at 351. That rule forecloses Plaintiffs' reliance on the "happenstance"

---

therefore, *WhatsApp* supports the finding that jurisdiction is absent here," where Plaintiffs do not allege NSO accessed *their* computers in California. *Corallo*, 2024 WL 4367924, at *3 n.2.

    [6] *Accord Carbone v. Kaal*, 140 F.4th 805, 811-14 (6th Cir. 2025); *GreatFence.com v. Bailey*, 726 F. App'x 260, 261 (5th Cir. 2018); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 402 (4th Cir. 2003); *Yangtze Memory Techs., Inc. v. Strand Consult*, 2025 WL 1455818, at *8 (N.D. Cal. May 20, 2025); *Prevail Legal, Inc., v. Gordon*, 2021 WL 1947578, at *5-6 (N.D. Cal. May 14, 2021); *FPK Servs. LLC v. Does 1-10*, 2020 WL 5982061, at *1-2 (N.D. Cal. Oct. 8, 2020).

    [7] After an amended complaint, the *Alhathloul* court found personal jurisdiction based on new allegations that the defendants "exfiltrat[ed] data from [p]laintiff's iPhone *while knowing she was present in the U.S.*" *Alhathloul v. DarkMatter Grp.*, 2025 WL 2320474, at *7-10 (D. Or. Aug. 12, 2025) (emphasis added). Plaintiffs make no such allegations here.

1    that Apple located some of its servers in California. *Hungerstation*, 2020 WL 137160, at *5.

2        2. In all events, exercising jurisdiction over NSO in California would be "unreasonable."

3    *Schwarzenegger*, 374 F.3d at 802. As in *Corallo*, Plaintiffs are largely "foreign citizen[s] suing

4    other foreign citizens for conduct initiated from foreign locations." 2024 WL 4367924, at *4. Such

5    a "litigation does not belong in the courts of this state." *Id.*

6        The "factors" courts consider when deciding the reasonableness of personal jurisdiction all

7    favor dismissal here. *Hungerstation*, 857 F. App'x at 352. **First**, Israel is an adequate "alternative

8    forum." *Id.* **Second**, NSO's alleged "purposeful interjection into California was negligible"

9    because Plaintiffs are "nonresident[s]." *Paccar Int'l v. Comm. Bank of Kuwait*, 757 F.2d 1058,

10   1064-65 (9th Cir. 1985). NSO's only alleged conduct in California is its "fortuitous" use of Apple

11   servers, which does not make personal jurisdiction reasonable. *Hungerstation*, 857 F. App'x at 351.

12   **Third**, the "burden on [NSO] to defend suit in California" is "great" because it "is incorporated in

13   [Israel], owns no property in the forum, and has no employees … there." *Glencore Grain*

14   *Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1125-26 (9th Cir. 2002). **Fourth**,

15   and in contrast, Plaintiffs' convenience is always an "insignificant" factor, *Core-Vent Corp. v.*

16   *Nobel Indust. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993), and is particularly trivial when no Plaintiff

17   lives in California. **Fifth**, exercising jurisdiction over Israeli corporations with no presence in

18   California conflicts with Israel's sovereignty. Whenever a "defendant is from a foreign nation

19   rather than another state, the sovereignty barrier is high and undermines the reasonableness of

20   personal jurisdiction." *Amoco Egypt Oil Co. v. Leonis Nav. Co.*, 1 F.3d 848, 852 (9th Cir. 1993).

21   That is even more true here because of Israel has a strong national-security interest in preventing

22   the disclosure of information related to NSO, which Israel's export control laws prohibit NSO

23   from disclosing without prior government approval. (Dkt. 46-2 ¶ 5 & Exh. A.) In contrast,

24   California has no interest in resolving a dispute brought by nonresident plaintiffs against foreign

25   companies related to foreign conduct. (Dkt. 78 at 6); *see Paccar*, 757 F.2d at 1065.

26       3. NSO also is not subject to nationwide jurisdiction under Rule 4(k)(2). (FAC ¶ 11.) Just

27   as Plaintiffs do not show NSO "purposefully direct[ed]" case-related activity at California, they do

28   not show NSO did so toward the United States. *Hungerstation*, 847 F. App'x at 351. *Hungerstation*

rejected Plaintiffs' theory that Rule 4(k)(2) allows jurisdiction "over a private foreign entity solely because that entity engaged in tortious conduct from a location outside of the United States by remotely accessing servers located in the United States." *Id.*; *accord Sonterra Cap. Master Fund v. Credit Suisse Grp.*, 277 F. Supp. 3d 521, 590 (S.D.N.Y. 2017). NSO's alleged U.S. marketing activities (FAC ¶ 34) do not give rise or relate to Plaintiffs' claims. Finally, Plaintiffs cannot allege their "harm" was "suffered in" the United States, *Hungerstation*, 847 F. App'x at 351, because none of them lived there when their devices were allegedly accessed. (FAC ¶ 53.) Plaintiffs thus cannot show NSO has "minimum contacts" with the United States under Rule 4(k)(2). *Id.* at 351-52; *Holland Am. Line Inc. v. Wartsila N.A., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007) (rejecting Rule 4(k)(2) jurisdiction based on "scant, fleeting, and attenuated" U.S. contacts). Moreover, exercising personal jurisdiction over NSO in the United States would be unreasonable for the same reasons it is unreasonable in California. *Hungerstation*, 847 F. App'x at 352.

## IV. THE COMPLAINT DOES NOT STATE A CLAIM AGAINST NSO.

### A. Plaintiffs lack statutory standing to bring a private CFAA claim.

A private CFAA plaintiff must *both* have "suffere[d] damage or loss" *and* establish that the defendant's "conduct involve[d]" one of five enumerated "factors." 18 U.S.C. § 1030(g). The only potentially relevant factor here applies when the plaintiffs incur a "loss … aggregating at least $5,000 in value." *Id.* § 1030(c)(4)(A)(i)(I). In a suit under that section, "[d]amages … are limited to economic damages." *Id.* § 1030(g); *Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 935 (9th Cir. 2004). "Only economic damages or loss can be used to meet the $5,000.00 threshold." *Bose v. Interclick, Inc.*, 2011 WL 4343517, at *4 (S.D.N.Y. Aug. 17, 2011).

Plaintiffs do not satisfy this provision because they do not adequately allege they suffered $5,000 in economic "damage" or "loss" under the CFAA. The CFAA's definitions of "damage" and "loss" are narrowly "[l]imit[ed]" to "technological harms—such as the corruption of files." *Van Buren v. United States*, 593 U.S. 374, 391-92 (2021); *accord Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1262-63 (9th Cir. 2019). The "mere copying of data" does not qualify. *Calendar Res. LLC v. StubHub, Inc.*, 2020 WL 4390391, at *22 (C.D. Cal. May 13, 2020); *see Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1071-72 (N.D. Cal. 2018). Neither

does the "value" of that data. *Andrews*, 932 F.3d at 1262-63; *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 130-31 (N.D. Cal. 2020).

Plaintiffs do not allege any statutory "damage" to their devices or data. The alleged "install[ation of] third-party utilities which extracted data" is not "damage" to a computer unless the computer "was actually impaired" or "its systems were otherwise harmed" by the removal of data. *Goodman v. Goodman*, 2022 WL 17826390, at *7 (S.D.N.Y. Dec. 21, 2022) (cleaned up).[8] Plaintiffs, however, do not allege NSO's technology deleted, corrupted, or impaired any data on their devices, or caused "any difference whatsoever in the performance of [their] computer[s]." *In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1066 (N.D. Cal. 2012). Plaintiffs claim "the attacks disabled certain Apple iOS features on the devices" (FAC ¶ 140), but their other allegations make clear that did not injure *Plaintiffs*. They allege "Pegasus disables crash reporting to Apple" (*id.* ¶ 40), which would have no effect on Plaintiffs' ability to use their devices or access their data.

Nor do Plaintiffs plead statutory "loss." They say they "alter[ed] how [they] use[] [their] device[s]," which "diminished the[ir] value." (*Id.* ¶ 67.) But that subjective loss of value *to Plaintiffs* is not economic loss or "technological harm[]" *to the devices*, so it does not constitute "loss." *Van Buren*, 141 S. Ct. at 1659-60.[9] Similarly, Plaintiffs' alleged "mental anguish" or medical expenses (FAC ¶¶ 71, 87), are not "loss" because they are not economic "costs actually related to computers." *Garland-Sash v. Lewis*, 2011 WL 6188712, at *4 (S.D.N.Y. Dec. 6, 2011).[10] Plaintiffs also cannot plead loss by claiming they "incurred significant costs in investigating and remediating the attacks" because they do not allege they *paid* for any investigation or remediation. (FAC ¶ 67.) They allegedly spent *time*, but they do not allege any facts from which the Court could

---

[8] *See Del Vecchio v. Amazon.com, Inc.*, 2011 WL 6325910, at *4 (W.D. Wash. Dec. 1, 2011) ("transfer of cookies" not damage or loss without noticeable "difference … in the performance of [the] computer"); *Doyle v. Taylor*, 2010 WL 2163521, at *2 (E.D. Wash. May 24, 2010) (theft of file from drive not damage or loss unless the "drive itself was somehow damaged or impaired").

[9] *See iPhone*, 844 F. Supp. 2d at 1067 (allegation that access "diminished the value of [plaintiff's] computer" did not establish loss); *United Fed'n of Churches v. Johnson*, 598 F. Supp. 3d 1084, 1097 (W.D. Wash. 2022) (plaintiff's "'lost ability to communicate' with its members" not loss).

[10] *Hancock v. Cty. of Rensselaer*, 2014 WL 12961140, at *5-6 (N.D.N.Y. Sept. 24, 2014) (same, for "emotional harm"); *Turner v. Hubbard Sys.*, 2016 WL 1046949, at *12 (D. Mass. Mar. 10, 2016) ("emotional distress"); *cf. Creative Computing*, 386 F.3d at 935 ("The statutory restriction, 'limited to economic damages,' precludes damages for … mental distress").

assign a monetary value to that time or conclude it constitutes *economic* loss. Plaintiffs thus cannot show their "lost time was a CFAA-qualifying loss." *MSC Safety Sols. v. Trivent Safety Consulting*, 2020 WL 7425874, at *9 (D. Colo. Dec. 18, 2020) (cleaned up).

At a minimum, Plaintiffs have not alleged facts establishing their alleged losses totaled $5,000. 18 U.S.C. § 1030(c)(4)(A)(i)(I). Plaintiffs "may aggregate individual damages … to meet the [$5,000] damages threshold if the [CFAA] violation can be described as 'one act.'" *iPhone*, 844 F. Supp. 2d at 1066. Here, though, Plaintiffs' claims are based on multiple alleged "attacks" against distinct Plaintiffs' distinct devices on many separate occasions over 18 months. (FAC ¶ 5.) Plaintiffs allege no facts from which the Court could conclude all those distinct actions constitute "one act." *iPhone*, 844 F. Supp. 2d at 1066.[11] Plaintiffs do not claim any *individual* Plaintiff suffered $5,000 in economic losses, so they cannot satisfy the CFAA's damages threshold.

Even if Plaintiffs could aggregate their losses, they do not adequately plead the total would equal $5,000. They assert the "costs incurred by Plaintiffs *as well as those incurred by El Faro* … exceeded $5,000." (FAC ¶ 139 (emphasis added).) But El Faro is not a plaintiff, so its alleged losses do not count toward the threshold. *Walsh v. Microsoft Corp.*, 63 F. Supp. 3d 1312, 1320 (W.D. Wash. 2014) ("Plaintiffs must meet the [$5,000] damages requirement themselves"). Plaintiffs do not claim *their* losses, separate from El Faro's, totaled $5,000.[12]

### B.    The CFAA does not authorize aiding and abetting liability.

Because NSO does not operate its technology and could not have accessed any of Plaintiffs' devices, Plaintiffs base their CFAA claim in part on an aiding and abetting theory. (FAC ¶ 149.) The CFAA, however, does not authorize aiding and abetting liability in civil actions.

Whether a federal statute creates civil aiding and abetting liability depends on the statutory

---

[11] *See Johnson*, 598 F. Supp. 3d at 1094 (holding "intrusions into the Facebook, Google, and Twitter systems must be treated as three separate violations").

[12] *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1055 (N.D. Cal. 2025) (dismissing CFAA claim "because [plaintiffs] do not allege with specificity a loss of $5,000"); *Wesch v. Yodlee, Inc.*, 2021 WL 1399291, at *7 (N.D. Cal. Feb. 16, 2021) (rejecting "conclusory" allegation plaintiff incurred $5,000 from "damage assessments [and] restoring the data"); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 949 (N.D. Cal. 2014) (dismissing complaint "'devoid of any specific details from which a factfinder could calculate an amount of loss'").

text. *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176-77, 182-83 (1994); *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004-06 (9th Cir. 2006). When Congress "impos[es] aiding and abetting liability," it "use[s] the words 'aid' and 'abet' in the statutory text." *Cent. Bank*, 511 U.S. at 177 (citing examples). Absent such an "explicit provision," a statute does not create civil aiding and abetting liability. *Freeman*, 457 F.3d at 1006.

The CFAA does not provide for civil aiding and abetting liability. The "statute's plain language sets forth who is liable": "a primary violator, a person who attempts a primary violation, and a co-conspirator of a primary violator." *Flynn v. Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP*, 2011 WL 2847712, at *3 (D. Nev. July 15, 2011); *see* 18 U.S.C. § 1030(a)-(b). That language does not encompass aiders and abettors. This Court should therefore join the many others that have held the CFAA does not create civil aiding and abetting liability.[13]

### C.    Plaintiffs cannot sue NSO under California law.

Plaintiffs' California law claims should be dismissed because "there is a presumption against California law being given extraterritorial effect." *Arabian v. Sony Elec. Inc.*, 2007 WL 627977, at *9 (S.D. Cal. Feb. 22, 2007). California law "does not apply to out-of-state conduct that does not cause injury in California." *Oracle Corp. v. SAG AG*, 734 F. Supp. 2d 956, 968 (N.D. Cal. 2010).

This prohibition applies to Plaintiffs' CDAFA and tort claims. California statutes cannot apply "to occurrences outside the state" unless a contrary intent is "clearly expressed or reasonably to be inferred from the language of the act." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) (cleaned up). Because CDAFA contains no such "clear[] express[ion]," it cannot apply to conduct outside of California. *Lineberry v. AddShopper, Inc.*, 2025 WL 551864, at *3 (N.D. Cal. Feb. 19, 2025).[14] The same rule applies to Plaintiffs' tort claims. *Oracle*, 734 F. Supp. 2d at 967-68; *FAS*

---

[13] *E.g.*, *Cigniti Techs. Inc. v. Govinsadamy*, 2024 WL 4329021, at *16 (N.D. Tex. Aug. 7, 2024); *Podium Corp. v. Chekkit Geolocation Servs.*, 2021 WL 5772269, at *8-9 (D. Utah Dec. 6, 2021); *DHI Grp. v. Kent*, 2017 WL 1088352, at *7 (S.D. Tex. Mar. 3, 2017); *Koninklijke Philips N.V. v. Elec-Tech Int'l*, 2015 WL 1289984, at *4 (N.D. Cal. Mar. 20, 2015); *Adv. Fluid Sys. v. Huber*, 28 F. Supp. 3d 306, 328 (M.D. Pa. 2014); *Flynn*, 2011 WL 2847712, at *3.

[14] *Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *6 (N.D. Cal. Nov. 20, 2020); *Terpin v. AT&T Mobility, LLC*, 399 F. Supp. 3d 1035, 1047-48 (C.D. Cal. 2019); *M Seven Sys. Ltd. v. Leap Wireless Int'l, Inc.*, 2013 WL 12072526, at *3 (S.D. Cal. June 26, 2013).

1    *Techs. v. Dainippon Screene Mfg. Co.*, 2001 WL 1159776, at *2 (N.D. Cal. Sept. 21, 2001).

2         Plaintiffs' claims require an impermissible extraterritorial application of California law

3    because NSO's alleged "conduct occur[rred] outside of California." *Oman v. Delta Air Lines*, 889

4    F.3d 1075, 1079 (9th Cir. 2018). Plaintiffs do not reside—and thus suffered no injury—in California.

5    (FAC ¶¶ 14-31.) NSO's alleged conduct occurred entirely in Israel. (*Id.* ¶¶ 32-33.) And El Salvador's

6    alleged use of NSO's technology to investigate Plaintiffs occurred in El Salvador or other foreign

7    countries. (*Id.* ¶ 53.) California law does not reach such foreign "acts of citizens of a foreign

8    jurisdiction." *M. Seven*, 2013 WL 12072526, at *3. NSO's alleged use of some California Apple

9    servers (FAC ¶ 3) does not change this conclusion. Plaintiffs do not claim that any use of Apple

10   servers was illegal, and such trivial, incidental contact with California would not "show a sufficient

11   nexus between California and [NSO's] alleged wrongful conduct" to apply California law. *Nowak*,

12   2020 WL 6822888, at *6 (CDAFA did not apply to hacking of foreign plaintiff's California Bitcoin

13   account); *see Sajfr v. BBG Comms.*, 2012 WL 398991, at *4 (S.D. Cal. Jan. 10, 2012) (California

14   law did not apply to foreign "telephone calls" that were "rated and billed from San Diego").

15        **D.    Plaintiffs do not state a CDAFA or trespass to chattels claim.**

16        Plaintiffs also do not plead the elements of their California claims.

17        ***First***, Plaintiffs' CDAFA claim fails for the same reason as their CFAA claim: they do not

18   plead any statutory "damage" or "loss." CDAFA, like the CFAA, requires Plaintiffs to plead

19   "damage or loss." Cal. Penal Code § 502(e)(1). Courts have imported into CDAFA the CFAA's

20   treatment of those terms. *NovelPoster*, 140 F. Supp. 3d at 950-51; *Cottle v. Plaid Inc.*, 536 F. Supp.

21   3d 461, 487-88 (N.D. Cal. 2021); *Nowak*, 2020 WL 6822888, at *5. Because Plaintiffs do not plead

22   "damage" or "loss" under the CFAA, they also do not plead "damage" or "loss" under CDAFA.

23        ***Second***, Plaintiffs' claim for trespass to chattels should be dismissed because Plaintiffs do

24   not plead NSO's conduct "damage[d] the recipient computer system" or "interfere[d] with the

25   intended functioning of the system, [such] as by significantly reducing its available memory" or

26   preventing Plaintiffs "from using [their] computers for any measurable length of time." *Intel Corp.*

27   *v. Hamidi*, 30 Cal. 4th 1342, 1347 (2003). *WhatsApp* dismissed a trespass to chattels claim against

28   NSO for that exact reason, 472 F. Supp. 3d at 684-85, and this Court should do the same.

Plaintiffs do not allege NSO's technology "damage[d], slow[ed], or impair[ed]" their devices. *Id*. They allege "the attacks disabled certain Apple iOS features" (FAC ¶ 161), but they cannot plausibly claim "disabl[ing] crash reporting to Apple" (*id.* ¶ 40) impaired Plaintiffs' ability to use their devices. *Cf. Mount v. PulsePoint, Inc.*, 2016 WL 5080131, at *10 (S.D.N.Y. 2016) (holding "one feature of a particular software application" is not a "chattel"). They do not allege the "spyware" allegedly installed on their devices (FAC ¶ 161) "impaired the physical functioning" of their devices. *WhatsApp*, 472 F. Supp. 3d at 684; *see Fields v. Wise Media, LLC*, 2013 WL 5340490, at *5 (N.D. Cal. Sept. 24, 2013) (dismissing trespass claim "absent actual physical harm or impairment"). Plaintiffs do not allege their devices could no longer make phone calls, store data, or perform any of the devices' other "basic function[s]." *Hamidi*, 30 Cal. 4th at 1355. Instead, they claim they became less comfortable using their devices for secure communications. (FAC ¶ 161.) But "trespass to chattels [does] not lie to protect interests in privacy," *Casillas v. Berkshire Hathaway Homestate Ins. Co.*, 79 Cal. App. 5th 755, 765 (2022), and "the decision not to use one's computer to communicate with a specific entity is not the same as actually being deprived of the ability to use one's computer," *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 846 (N.D. Cal. 2024).[15]

Finally, Plaintiffs' alleged "costs incurred investigating and remediating the attacks, loss of professional goodwill, medical expenses and emotional distress" (FAC ¶ 162) cannot support their claim. *E.g.*, *Hamidi*, 30 Cal. 4th at 1347, 1359; *X Corp. v. Bright Data Ltd.*, 733 F. Supp. 3d 832, 843 (N.D. Cal. 2024); *WhatsApp*, 472 F. Supp. 3d at 685; *Atl. Recording Corp. v. Serrano*, 2007 WL 4612921, at *5 (S.D. Cal. Dec. 28, 2007).

## V.    CONCLUSION

The Court should again dismiss the FAC with prejudice.

DATED: September 11, 2025

KING & SPALDING LLP

By: */s/ Joseph N. Akrotirianakis*

JOSEPH N. AKROTIRIANAKIS
Attorneys for Defendants NSO Group Techs.
Ltd. and Q Cyber Techs. Ltd.

---

[15] *Doe v. Tenet Healthcare Corp.*, 2025 WL 1635956, at *24-25 (E.D. Cal. June 9, 2025); *Synopsys*, 313 F. Supp. 3d at 1080; *Vertkin v. Vertkin*, 2007 WL 4287512, at *3 (N.D. Cal. Dec. 6, 2007).