United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS DADA, et al.,<br>Plaintiffs,<br>v.<br>NSO GROUP TECHNOLOGIES LIMITED, et al.,<br>Defendants. | Case No. 3:22-cv-07513-JD<br><br>**ORDER RE RENEWED MOTION TO DISMISS** |

This case is about a software product called "Pegasus," which is said to be spyware used by "authoritarian governments" against journalists working for El Faro, a digital newspaper based in El Salvador. *See* Dkt. No. 31 (Amended Complaint or AC) ¶¶ 1, 4. Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited (together, NSO), who supply Pegasus, renewed a prior motion to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), and the doctrine of *forum non conveniens*. Dkt. No. 94. The parties' familiarity with the facts is assumed, and the AC is dismissed.

## DISCUSSION

### I. *FORUM NON CONVENIENS*

Dismissal on *forum non conveniens* grounds is denied. "To prevail on a motion to dismiss based upon *forum non conveniens*, a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011) (citation omitted). When, as here, plaintiffs include United States citizens and residents, the "defendant must satisfy a heavy burden of proof," and "unless the balance is strongly in favor of the defendant, the

plaintiff's choice of forum should rarely be disturbed." *Bos. Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1207 (9th Cir. 2009) (citation modified); *see also* Dkt. No. 90 at 4.

Defendants identified Israel as an adequate alternative forum "because NSO, an Israeli citizen, 'is amenable to process' there." Dkt. No. 94 at 3 (internal quotation marks omitted) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)). Plaintiffs do not disagree, *see* Dkt. No. 97 at 3-6, and so this factor is satisfied.

For the private and public interest factors, good arguments could have been made that the balance of the factors favors dismissal. But defendants did not make those arguments. Overall, defendants gave short shrift to the potential application of *forum non conveniens*, *see, e.g.,* Dkt. No. 94 at 3-6, and so failed to meet their "heavy burden." *Bos. Telecomms.*, 588 F.3d at 1207.

To start, the private interest factors for the *forum non conveniens* analysis include: "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) 'all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506). Defendants left many of these factors unaddressed, and gave anemic attention to the few they mentioned. For example, defendants suggested that "key witnesses and evidence would be located in El Salvador, Israel, and other foreign jurisdictions," Dkt. No. 94 at 3-4, but never said who those witnesses might be or why they might be "key" to the case. Defendants said in a footnote that "any potential judgment against NSO 'would be easier to enforce' in Israel," but they again offered no reason why that might be so. *Id*. at 4 n.1. Defendants left unaddressed the factors of the forum's convenience to the litigants, whether unwilling witnesses can be compelled to testify, and the cost of bringing witnesses to trial. *See id*. at 3-6.

Defendants' treatment of the public interest factors was equally superficial. These factors include: "(1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having

localized controversies decided at home; (4) the interest in having a diversity case tried in a forum familiar with the law that governs the action; [and] (5) the avoidance of unnecessary problems in conflicts of laws." *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 664 (9th Cir. 2009) (citation omitted); *see also Lueck*, 236 F.3d at 1147 (listing similar factors). For the "local interest" factor, defendants offered only the vague generalization that "[t]here is no meaningful 'local interest' in this case" because "California has no interest in foreign plaintiffs' claims against foreign defendants based on foreign conduct," while Israel "has strong national-security interests." Dkt. No. 94 at 5-6. They did not meaningfully develop this argument, or give any attention to the other public interest factors. The court congestion factor was limited to the comment that "[f]ederal district courts are generally overburdened," *id*. at 6, which was untethered to any facts, and offered without discussion of how this factor might apply to courts in Israel.

Defendants bore the burden of making a "clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) (citation modified). They did not come close to carrying this burden.

## II. PERSONAL JURISDICTION

Plaintiffs' main theory for personal jurisdiction is that specific personal jurisdiction over the defendants exists in this District because they had sufficient minimum contacts with California to comport with the Due Process Clause of the Fourteenth Amendment. *See* Dkt. No. 97 at 6-7; *see also Briskin v. Shopify, Inc.*, 135 F.4th 739, 750 (9th Cir. 2025) (en banc). Dismissal for lack of personal jurisdiction is granted.

When a defendant raises a challenge to personal jurisdiction, the burden falls on plaintiffs to demonstrate that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). When, as here, the question of jurisdiction is raised solely in written materials, "these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The "plaintiff is 'obligated to come

forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citation omitted). "Although the plaintiff cannot 'simply rest on the bare allegations of its complaint,' uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger*, 374 F.3d at 800 (citations omitted). Factual conflicts in the parties' affidavits are to be resolved in favor of the party asserting jurisdiction, namely, the plaintiffs. *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1177 (9th Cir. 2004); *Gevorkyan v. Bitmain Techs. Ltd.*, No. 18-cv-07004-JD, 2022 WL 3702093, at *1 (N.D. Cal. Aug. 26, 2022).

Specific jurisdiction focuses on the defendant's contacts with the forum state for the claims at issue. *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014); *see also Daramola v. Oracle Am., Inc.*, No. 19-cv-07910-JD, 2020 WL 5577146, at *1-2 (N.D. Cal. Sept. 16, 2020). This is "case-linked" jurisdiction, and it looks to whether the defendant undertook a claim-related activity in the forum state "and is therefore subject to the State's regulation." *Walden*, 571 U.S. at 283 n.6 (citation modified). It is the defendant's "suit-related conduct" that "must create a substantial connection with the forum State." *Id.* at 284. The claims must relate to the defendant's contacts "with the *forum*" for specific personal jurisdiction to arise. *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017) (internal quotation marks omitted) (emphasis in original); *see also Sharpe v. Puritan's Pride, Inc.*, No. 16-cv-06717-JD, 2019 WL 188658, at *4 (N.D. Cal. Jan. 14, 2019).

In our circuit, specific personal jurisdiction is analyzed under a three-part test: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Briskin*, 135 F.4th at 750-51 (quoting *Schwarzenegger*, 374 F.3d at 802). "The plaintiff bears the burden on the first two prongs," but once both are established, "the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not

United States District Court
Northern District of California

be reasonable." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) (quoting *Boschetto*, 539 F.3d at 1016).

Plaintiffs say the first two prongs are satisfied in this case because "[d]efendants carried out tortious conduct in California." Dkt. No. 97 at 7-10 (citing, *inter alia*, *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 603 (9th Cir. 2018); *Paccar Int'l, Inc. v. Com. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1064 (9th Cir. 1985)). There is no question that "the commission of an intentional tort in a state is a purposeful act that will satisfy the first two requirements of the minimum contacts test." *Freestream*, 905 F.3d at 604 (citation modified) (quoting *Paccar*, 757 F.2d at 1064). But this path to satisfying the first two prongs is not available to plaintiffs on the record they presented.

The reasons for this conclusion are straightforward. The gravamen of plaintiffs' claims is that NSO supplied spyware to an unnamed government outside the United States to access the Apple iPhones of plaintiffs working for a newspaper in El Salvador. None of this has anything to do with California. The AC expressly alleged that NSO is a company "incorporated in Israel." Dkt. No. 31 ¶ 32. NSO stated in a declaration, without dispute by plaintiffs, that it has "no presence in any other country" and that "[a]ll of Defendant's employees with knowledge relevant to this lawsuit reside in Israel." Dkt. No. 46-2 (Shohat Decl.) ¶ 4. The devices that were targeted and accessed were iPhones owned by plaintiffs, all of whom appear to have been living in El Salvador at the time of the attacks. *See infra* at pp.9-10.

The only potential connection to California is the allegation, made "[o]n information and belief," that "the Pegasus attacks against Plaintiffs required Defendants to interact extensively with Apple's U.S.-based servers, many of which are in California." Dkt. No. 31 ¶ 41. Defendants are said to have interacted with Apple's servers when they "us[ed] Apple ID accounts to send malicious data through Apple's iMessage service," and "[i]n the case of at least [the zero-click exploit known as] FORCEDENTRY, the Pegasus file was stored temporarily, in encrypted form, on one of Apple's iCloud servers before delivery to a target's iPhone." *Id.* ¶ 43.

None of this plausibly demonstrates tortious conduct by NSO in California for purposes of specific jurisdiction. It is certainly true, as the AC alleged, that Apple is a "company based in

Cupertino, California," *id*. ¶ 3, but that is not enough to establish personal jurisdiction over NSO in California. The conduct challenged in the complaint was the unauthorized access of plaintiffs' devices through Pegasus, which was launched remotely outside of California and affected devices located outside California. Defendants' dealings with Apple's servers that may have been located in California do not constitute the conduct or claim for which plaintiffs seek redress. The AC does not allege that defendants hacked plaintiffs' data stored in servers in California, or otherwise committed a tort in the state. Plaintiffs offer only the vague and conclusory allegation that "[o]n information and belief, some of the Apple servers that Defendants abused to facilitate the delivery and operation of Pegasus in this case are located in California." *Id*.

A comparison of the jurisdictional allegations here with the ones in *Freestream* underscores the shortcomings of plaintiffs' theory. In *Freestream*, plaintiffs alleged that "[d]efendants committed the intentional tort of defamation while present in the forum state," and personal jurisdiction was properly exercised by the District Court for the District of Nevada because the defendant had "travel[ed] to Nevada" and "made defamatory statements about Freestream at an aviation industry conference in Nevada." *Freestream*, 905 F.3d at 601-03. The allegations here are markedly different. Plaintiffs' main claims concern the unauthorized access of their devices by defendants and unnamed clients via Pegasus. *See*, *e.g.*, Dkt. No. 31 ¶¶ 63, 137, 150, 159, 163, 166. A connection to California is not at all apparent in these core claims, and it certainly is not stated with the specificity that *Freestream* turned on.

Because plaintiffs have not adequately alleged tortious conduct committed by NSO in the forum state, they cannot satisfy the first and second prongs of the specific personal jurisdiction test in one fell swoop. Consequently, the Court turns to the traditional analysis that applies to the first prong for out-of-forum tortfeasors. To recap, this prong requires plaintiffs to establish that "[t]he non-resident defendant . . . purposefully direct[ed] his activities or consummate[d] some transaction with the forum or resident thereof; or perform[ed] some act by which he purposefully avail[ed] himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Briskin*, 135 F.4th at 750-51. Where, as here, plaintiffs' claims "sound[] in tort," courts "most often employ a purposeful direction analysis" for this prong,

and to analyze whether a tort was purposefully directed to the forum state, courts employ "the '*Calder* effects' test." *Id*. at 751 (citation omitted). This test is "drawn from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984)," and it "requires that the defendant '(1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state.'" *Id*. (citation omitted).

Plaintiffs say, without challenge by NSO, that there was an intentional act in satisfaction of the first factor of *Calder*. *See* Dkt. No. 97 at 10; Dkt. No. 102. The other *Calder* factors do not play out in plaintiffs' favor. Plaintiffs say that "Defendants expressly aimed their conduct at California by 'purposefully target[ing]' Apple and its California-based servers in developing and using exploits to deliver Pegasus to Plaintiffs' iPhones." Dkt. No. 97 at 10 (citation omitted). But even if this alleged targeting were enough, which is a doubtful proposition, it is inconsistent with the allegations in the AC. As discussed, the AC alleges only "[o]n information and belief" that "some of the Apple servers that Defendants abused to facilitate the delivery and operation of Pegasus in this case are located in California." Dkt. No. 31 ¶ 3. This is too slender a reed to support a finding that plaintiffs have carried their burden of establishing that defendants "expressly aimed" an intentional act "at the forum state," causing harm that "the defendant knows will be suffered in the forum state." *Briskin*, 135 F.4th at 751. Plaintiffs did not squarely allege that the servers were, as a matter of fact, located in California. Plaintiffs also did not allege that NSO knew the servers were located in California and expressly aimed its conduct here.

Plaintiffs' heavy reliance on *Briskin*, 135 F.4th 739, *see*, *e.g.*, Dkt. No. 97 at 7-10, does not save the day for them. The plaintiff in *Briskin* was a resident of California and alleged that defendant Shopify installed "cookies" on his device "while knowing that the device Briskin was using to shop was located in California." *Briskin*, 135 F.4th at 746. Our circuit concluded that Briskin had made a "prima facie showing of jurisdictional facts sufficient to establish that Shopify purposely directed its conduct toward California" where, "[a]s a part of its regular course of business, Shopify [was] alleged to target California consumers" to "obtain valuable personal data about California consumers for its own commercial gain." *Id*. at 755-56. Critically for present

purposes, "Shopify allegedly knew the location of consumers like Briskin either prior to or shortly after installing its initial tracking software onto their devices." *Id*. at 756.

The contrast with the circumstances alleged here is telling. NSO is not said to have knowingly targeted conduct toward devices located in California. The targeted devices here are alleged to have been located in El Salvador. *See* Dkt. No. 31 ¶¶ 63-136; 14-31. The facts in this case are a continent away from those in *Briskin*. *See Briskin*, 135 F.4th at 756 ("Pre-internet, there would be no doubt that the California courts would have specific personal jurisdiction over a third party who physically entered a Californian's home by deceptive means to take personal information from the Californian's files for its own commercial gain.").

Overall, plaintiffs did not establish that defendants purposefully directed any tortious act to California, and so they did not carry their burden of demonstrating that the first and second prongs of the test for specific personal jurisdiction are satisfied. Because of this shortfall, the burden never shifted to defendants to show that the exercise of jurisdiction would not be reasonable, and the Court need not reach that question.

Plaintiffs' alternative suggestion that the Court may exercise personal jurisdiction under the federal long-arm statute, Dkt. No. 97 at 12-13, is misdirected. To establish jurisdiction under Federal Rule of Civil Procedure 4(k)(2), three elements are required. "First, the claim against the defendant must arise under federal law. Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006) (citations omitted). The due process analysis under this rule is "nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between [the defendant] and the forum state, [the Court] consider[s] contacts with the nation as a whole." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1072 (9th Cir. 2017) (internal quotation marks omitted). While Rule 4(k)(2) is "not disfavored in this Circuit," it is fair to say that "courts have rarely exercised jurisdiction under 4(k)(2)" because "situations where a defendant has the requisite contacts with the United States but not with any one state are unusual." *Ayla*, 11 F.4th at 978 n.1; *see also Holland Am. Line, Inc. v. Wartsila N.*

*Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007) ("Indeed, in the fourteen years since Rule 4(k)(2) was enacted, none of our cases has countenanced jurisdiction under the rule.").

The first and second elements have been met. The claims against NSO arise under federal law, and NSO is not subject to the personal jurisdiction of any state court of general jurisdiction. What is missing is the third element of sufficient contacts between NSO and the United States as a whole such that the Court's exercise of personal jurisdiction would comport with due process. Defendants' interaction with a third-party server located somewhere in the United States "does not amount to meaningful contact sufficient to find that Defendants have purposefully availed themselves of the jurisdiction of the United States." *Hungerstation LLC v. Fast Choice LLC*, No. 19-cv-05861-HSG, 2020 WL 137160, at *7 (N.D. Cal. Jan. 13, 2020), *aff'd*, 857 F. App'x. 349 (9th Cir. 2021). This is not a case in which NSO "purposefully directed its activities toward and availed itself of the protections and benefits of the United States." *Ayla*, 11 F.4th at 983. Rather, its contacts with the United States were "random, isolated, or fortuitous." *Id*. at 981 (internal quotation marks omitted) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).

The ties of three plaintiffs to the United States does not change this conclusion. Plaintiff Roman Gressier is a "reporter for El Faro" and a "dual citizen of the United States and France" whose iPhone was "hacked . . . at least four times between May and June 2021." Dkt. No. 31 ¶¶ 18, 80-81. The AC did not allege that Gressier resided in the United States or that his phone was hacked while he was in the United States. The fact that he was working as a reporter for El Faro at the time of the alleged hacking suggests that it took place while he was in El Salvador. Plaintiff Nelson Rauda Zablah "currently lives in New York City while pursuing a master's degree at Columbia Journalism School," and he "worked as a reporter and hosted a twice-weekly radio show for El Faro from 2015 to August 2022." *Id*. ¶ 28. His phone is said to have been hacked "at least six times between April and September 2021," during which time he worked for El Faro and presumably resided in El Salvador. *Id*. ¶¶ 120-21. The AC did not allege otherwise. Plaintiff Jose Luis Sanz "was the director of El Faro from 2014 to December 2020," and he "currently lives in Washington, D.C." as El Faro's Washington correspondent. *Id*. ¶ 31. His phone was hacked



United States District Court
Northern District of California

United States District Court
Northern District of California

"at least thirteen times between July and December 2020," during which time he was the director of El Faro and presumably lived in El Salvador. *Id.* ¶¶ 132-33. The AC again did not say otherwise. Overall, nothing in the record indicated that any of these plaintiffs' phones were compromised while in the United States.

**CONCLUSION**

Plaintiffs have not met their burden of establishing that jurisdiction over defendants is proper, *see Boschetto*, 539 F.3d at 1015, and so defendants' motion to dismiss for lack of personal jurisdiction is granted. Plaintiffs' complaint, Dkt. No. 31, is dismissed without prejudice.

Plaintiffs did not ask for additional leave to amend. In light of the ample opportunity plaintiffs have enjoyed to demonstrate personal jurisdiction over NSO, aided by prior decisions here and in related actions, further amendment is not warranted. Judgment will be entered against plaintiffs.

**IT IS SO ORDERED.**

Dated: September 30, 2026

JAMES DONATO
United States District Judge